UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ENZO BIOCHEM, INC. and ENZO LIFE SCIENCES, INC., | ) ) ) |
| Plaintiffs, | ) CIVIL ACTION NO. 03cv3817 (JES) ) |
| v. | ) ) ) |
| PERKINELMER, INC., and PERKINELMER LIFE SCIENCES, INC., | ) ) ) ) ) |
| Defendants, | ) ) |
| and YALE UNIVERSITY, | ) ) |
| Nominal Defendant. | ) ) |

**REPLY MEMORANDUM IN SUPPORT OF PERKINELMER, INC. AND PERKINELMER LIFE SCIENCES, INC.'S MOTION FOR SUMMARY JUDGMENT**

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................. i

I.    ARGUMENT .......................................................................................................................1

A.    PerkinElmer Is Not Liable For Any Breach Of The Research Restrictions ........................1

        1.    *The Research Restrictions Do Not Prohibit The Sale Of Products To Specific Classes Of Customers* ................................................................................1

        2.    *There Is No Evidence Of Any Breach Based On PerkinElmer's Sales To Its Distributors* ..............................................................................................................2

        3.    *The Research Restrictions Are Unenforceable Against Non-Infringing Products* ...................................................................................................................4

B.    PerkinElmer Properly Calculated The Incentive Discount ..................................................4

C.    PerkinElmer's Payment Defense Disposes Of The Remaining Patent Claims....................5

D.    The Court Should Not Consider Enzo's Unpled Claims .....................................................6

        1.    *There Is No Evidence Of Any Breach Of Good Faith With Respect To Kits (Unpled)* ................................................................................................................6

        2.    *PerkinElmer Did Not "Improperly Manufacture" Products (Unpled)* .......7

        3.    *PerkinElmer Did Not Breach The "Best Efforts" Provision (Unpled)*........7

        4.    *PerkinElmer Is Not Liable For "High Prices" Charged By Its Distributors (Unpled)* ................................................................................................................8

        5.    *The Distributorship Agreement Terminated In 2004 (Unpled)* ...................9

        6.    *Enzo Has No Proof Of Fraud (Unpled)*........................................................9

## **TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*Boart Longyear Ltd. v. Alliance Indus., Inc.*,
   869 F. Supp. 2d 407 (S.D.N.Y. 2012) .................................................................................... 6

*Brulotte v. Thys Co.*,
   379 U.S. 29 (1964) .................................................................................................................. 4

*Compania Embottelladora Del Pacifico, S.A. v. Pepsi Cola Co.*,
   650 F. Supp. 2d 314 (S.D.N.Y. 2009) .................................................................................... 2

*Constr. Tech., Inc. v. Cybermation, Inc.*,
   No. 91 Civ. 7474, 1996 WL 44430 (S.D.N.Y. Feb 2, 1996) .................................................. 4

*Frolow v. Wilson Sporting Goods Co.*,
   710 F.3d 1303 (Fed. Cir. 2013) .............................................................................................. 5

*Inside Out Prods., Inc. v. Scholastic, Inc.*,
   No. 90 Civ. 7233, 1995 WL 375927 (S.D.N.Y. June 23, 1995) ............................................ 8

*Paul T. Freund Corp. v. Commonwealth Packing Co.*,
   288 F. Supp. 2d 357 (W.D.N.Y. 2003) .................................................................................. 3

*Schaffer ex rel. Schaffer v. Weast*,
   546 U.S. 49 (2005) .................................................................................................................. 5

*Veltman v. Norton Simon, Inc.*,
   425 F.Supp. 774 (S.D.N.Y. 1977) .......................................................................................... 4

**RULES**

Fed. R. Civ. P. 9 ............................................................................................................................ 10

PerkinElmer submits this reply memorandum in support of its motion for summary judgment. Enzo's opposition ("Enzo Br.") expressly abandons two claims,[1] while raising new claims never pled in the complaint. The plethora of claims lodged by Enzo is calculated to create an illusion of substance behind Enzo's case when there is none. Enzo's untimely claims should not be considered by the Court at all and, in any event, lack merit. *See, infra*, at 6-10. All of the claims remaining in the case should be disposed of by summary judgment.

I.   **ARGUMENT**

   A.   **PerkinElmer Is Not Liable For Any Breach Of The Research Restrictions**

      1.   *The Research Restrictions Do Not Prohibit The Sale Of Products To Specific Classes Of Customers*

Enzo contends the Distributorship Agreement (the "Agreement") not only limited how customers could use products covered by the Agreement, but also prohibited the sale of products at all to "commercial" customers.[2] Rather than demonstrating the use of products for non-research purposes, Enzo then seeks to meet its burden of proof merely by showing that PerkinElmer sold to commercial entities such as pharmaceutical companies. (Enzo Br. at 14). Enzo never advanced such an argument in its complaint, its answers to interrogatories or even in the summary judgment briefing before Judge Sprizzo, and with good reason. Section 1(i) of the Agreement expressly acknowledges that sales to commercial customers were authorized. (Ex. 1, § 1(i)).[3]

---

[1] Enzo withdraws its unfair competition and Lanham Act claims. In addition, Enzo effectively withdraws its tortious interference claim by devoting only a footnote to the claim and failing, among other things, to cite any evidence in rebuttal to PerkinElmer's showing that Li-Cor ended its relationship with Enzo for reasons unrelated to PerkinElmer. *See* Enzo Br. at fn. 24.

[2] Enzo also attempts to show that the Research Restrictions apply to all the products listed on Exhibit C, not just those covered by Enzo patents. (Enzo Br. at 7-9). For the purposes of this motion, PerkinElmer does not dispute the point. It argues only that the restrictions cannot lawfully apply to non-infringing products and that the Agreement is therefore unenforceable with respect to those products or should be held not to cover them. *See* PE Br. at fn. 10; *infra*, at 4.

[3] Exhibits 1-19 refer to the 12/21/2012 Declaration of Omar Khan. Exhibit 20 refers to the

Enzo acknowledges this unambiguous provision, but argues it should be understood as only permitting PerkinElmer to sell to *some* commercial entities -- those performing fee-based research services for research entities -- but not to drug companies or others involved in product development. (Enzo Br. at 12-13). But there is no textual support for such an unusual interpretation of the words the parties actually chose, and the evidence extrinsic to the Agreement on which Enzo relies is irrelevant to the issue.[4]

Enzo's contention that the Agreement should be interpreted to preclude sales to commercial customers engaged in product development also makes no sense in light of the overall wording of the Research Restrictions. For example, if there could be no sales *at all* to companies making diagnostic or therapeutic products, there would have been no need to label products stating they were only to be used for research and not as diagnostic or therapeutic products themselves. However, because the Agreement permits the sale of products to *commercial* entities for research purposes, restrictive labeling was required. In short, it is Enzo's interpretation of the Agreement, not PerkinElmer's, that would render portions of the Agreement superfluous. (Enzo Br. at 13-14).

### 2. *There Is No Evidence Of Any Breach Based On PerkinElmer's Sales To Its Distributors*

In addition to its incorrect argument that PerkinElmer was precluded per se from selling to drug companies and similar commercial entities, Enzo relies on purported violations of the

---

Supplemental Declaration of Mr. Khan filed contemporaneously herewith.

[4] For example, Enzo relies on the testimony of its executives, Dr. Rabbani and Dr. Engelhardt (Enzo Br. at 11), but the subjective understanding of a party is irrelevant to contract interpretation. *Compania Embottelladora Del Pacifico, S.A. v. Pepsi Cola Co.*, 650 F. Supp. 2d 314, 323 (S.D.N.Y. 2009). The Roche and Affymetrix Agreements cited by Enzo (Enzo Br. at 12) have nothing to do with PerkinElmer. That there can be a distinction between basic and applied research is true (Enzo Br. at 11), but irrelevant as the Agreement makes no such distinction. Finally, the draft agreement cited by Enzo (Enzo Br. at fn. 12) does not appear to speak to the issue at all.

Research Restrictions by PerkinElmer's distributors, Orchid, MPI and Amersham. Enzo does not discuss these alleged distributor violations in the memorandum filed in opposition to PerkinElmer's motion, and it is not clear what portions of the briefs filed in the related actions are meant to be relevant to PerkinElmer's motion. (Enzo Br. at 15). What is clear is that Enzo's attempt to tie the other defendants' conduct to PerkinElmer is unsupported by fact or logic.

First, Enzo contends that PerkinElmer's distributors were agents of PerkinElmer and that PerkinElmer is therefore vicariously liable for any wrongful acts committed by them. Enzo never asserted this theory in either its complaint or in its answers to contention interrogatories, and it offers no facts from which such liability could be inferred. In particular, Enzo does not show that the distributors (each of them significant corporations) agreed to act under PerkinElmer's control, the key indicia of an agency relationship.[5] *See Paul T. Freund Corp. v. Commonwealth Packing Co.*, 288 F. Supp. 2d 357, 374 (W.D.N.Y. 2003). Second, Enzo relies on a "best efforts" clause in the Agreement stating that PerkinElmer would use its best efforts to prevent others from violating the Research Restrictions. The existence of a best efforts obligation, however, only proves that PerkinElmer did not guarantee an absence of violations. In its brief, Enzo does not indicate either what would constitute best efforts or how PerkinElmer failed to exercise them.

Finally, although irrelevant to PerkinElmer's motion, the allegations against the other defendants should be equally disregarded to the extent that they are unpled and unmentioned in Enzo's complaint and answers to PerkinElmer's interrogatories. Notably, in its interrogatory answers, Enzo did not even mention purported violations of the Research Restrictions by Amersham, and at least its allegations regarding MPI bear no resemblance to the allegations set forth in the brief filed in the action against MPI. (Ex. 11, Enzo Resp. No. 7). Further, as shown in

---

[5] The Agreement specifically identifies PerkinElmer sales agents, which are a separate category of entities from its distributors. *See* Ex. 1, p. 2-3.

the briefs filed in the related actions and in PerkinElmer's reply to Enzo's Rule 56.1 Response, Enzo has failed to show violations of the Research Restrictions by any of the other defendants.

### 3. *The Research Restrictions Are Unenforceable Against Non-Infringing Products*

Notably, Enzo does not appear to assert (and has cited no evidence for an assertion) that any of the Exhibit C products sold to the distributors survived the Court's summary judgment patent ruling. Thus, the issue of enforceability is dispositive of the Research Restriction issues.

Instead, Enzo incorrectly asserts that an expert declaration or some other proof is necessary to demonstrate that the Research Restrictions are unenforceable for non-infringing products, citing *Constr. Tech., Inc. v. Cybermation, Inc.,* No. 91 Civ. 7474, 1996 WL 44430 (S.D.N.Y. Feb 2, 1996). But, unlike the issue in *Cybermation,* PerkinElmer's motion does not present the issue of whether PerkinElmer is entitled to recover the millions of dollars it paid to Enzo under the Agreement for the sale of products that the Court has found non-infringing. PerkinElmer's motion presents only the issue of whether a restrictive covenant, unsupported by valid intellectual property rights, is enforceable such that Enzo can seek to recover still additional money based on the alleged violation of the Research Restrictions. Courts routinely hold such naked restraints of trade unenforceable. *See Brulotte v. Thys Co.*, 379 U.S. 29, 33-34 (1964); *Veltman v. Norton Simon, Inc.*, 425 F. Supp. 774, 776 (S.D.N.Y. 1977).

### B. PerkinElmer Properly Calculated The Incentive Discount

The sole accounting issue pled in the amended complaint or identified in Enzo's answers to contention interrogatories concerned the method of calculating incentive discounts. While a dispute surely exists over which of the competing methods is consistent with the provisions of the Agreement, that does not mean the dispute cannot be resolved by summary judgment where, as

here, the contract unambiguously supports PerkinElmer's position.[6]

### C.   PerkinElmer's Payment Defense Disposes Of The Remaining Patent Claims

Enzo's sole argument on the remaining patent claims against PerkinElmer and PerkinElmer's payment defense is that PerkinElmer has to "*affirmatively* show that its sales of remaining infringing products fell within the Research Restrictions." (Enzo Br. at 22). Enzo is wrong on the law,[7] but the point is academic.

Whether one of the hundreds of customers who bought products from PerkinElmer used them for a non-research purpose is not the issue. Enzo might have a patent claim against such a customer, but PerkinElmer's patent infringement liability depends on whether it complied with the Agreement. PerkinElmer has put on affirmative proof that it complied with the labeling and notice requirements of the Agreement. *See* Ex. 10, ¶ 5; Ex. 2, ¶ 7. With respect to the small number of indirectly labeled products still subject to patent claims, Enzo has not offered any evidence to contradict PerkinElmer's proof.[8] Thus, regardless of where the burden of proof lies, the factual record is undisputed and summary judgment may therefore enter on the remaining patent claims.

---

[6] The only parol evidence is that the issue was expressly discussed prior to signing the agreement and Enzo agreed with PerkinElmer's understanding of the terms. (Ex. 17, Levitt Dep. 145:2-148:10, 157:1-19).

[7] None of the cases Enzo cites stand for the illogical proposition that Enzo could (1) lose on its claim that PerkinElmer breached the contract yet (2) prevail on the claim PerkinElmer is liable for damages even for products for which Enzo has been paid because of an absence of proof that every single one of PerkinElmer's hundreds of customers complied with the Agreement. Indeed, "[p]erhaps the broadest and most accepted idea is that the person who seeks court action should justify the request, which means that the plaintiffs bear the burdens on the elements in their claims." *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 56 (2005). Here, the undisputed facts show that PerkinElmer labeled the products as required and paid Enzo for products sold under the Agreement. Enzo was therefore required to come forward with evidence justifying its claim, whether couched as breach of contract or as patent infringement. *See Frolow v. Wilson Sporting Goods Co.*, 710 F.3d 1303, 1312 (Fed. Cir. 2013).

[8] Enzo cites various documents suggesting PerkinElmer may have sold biotin labeled acycloterminators. Any such sales are irrelevant to any issue in the case, as Enzo has never identified these products as products accused of infringement.

### D. The Court Should Not Consider Enzo's Unpled Claims

Enzo's opposition includes no fewer than six claims (discussed below) which are not adequately pled in its complaint against PerkinElmer.[9] Because they were never in the complaint, discovery directed to the claims was never undertaken, and the factual record is necessarily incomplete. Given the age of the case and the Court's well-founded desire to resolve the actions, Enzo's unpled claims should be disregarded as untimely. Nonetheless, the lack of merit to each of the claims, which is apparent on their face, is addressed below.

#### 1. *There Is No Evidence Of Any Breach Of Good Faith With Respect To Kits (Unpled)*

Although Enzo originally pled that PerkinElmer failed to properly account for the sale of kits, it has apparently recognized it has no facts to support such a claim under the terms of the Agreement. Accordingly, it now resorts to a new theory, never pled or mentioned in its answers to interrogatories. According to Enzo, PerkinElmer breached the obligation of good faith and fair dealing by splitting "kits" on which it would have been obligated to pay Enzo under Exhibit C into separate components, some of which would have required payment and some of which would not. Enzo recognizes this theory has not been pled, but seeks to excuse that fact by citation to a wholly irrelevant case. (Enzo Br. at 20, citing *Boart Longyear Ltd. v. Alliance Indus., Inc.*, 869 F. Supp. 2d 407, 413 (S.D.N.Y. 2012)).

Obviously, it is unfair to expect PerkinElmer to defend against a claim involving implied

---

[9] Although Enzo pled a best efforts claim based on PerkinElmer's alleged lack of best efforts in policing infringement, no claim was made that PerkinElmer did not use best efforts to sell products. That claim was first identified in answers to interrogatories filed after the close of discovery. (Ex. 11, Enzo Resp. Nos. 8, 9). Enzo's argument that Enzo terminated PerkinElmer's "Interim Manufacturing" rights, and the claim that the Agreement did not expire until 2005 were first raised in the summary judgment proceeding before Judge Sprizzo. Enzo's presently articulated fraud claim is completely new, as is the claim that PerkinElmer was required to pay a "transfer fee" based on the revenues of its distributors and the claim that PerkinElmer violated the obligation of good faith and fair dealing with respect to the sale of kits.

obligations that have never been part of the case. But even if the Court were to consider the claim, it has no foundation. Enzo rests its allegations solely on four email chains, unaccompanied by any deposition testimony, that Enzo apparently selected because they include the words "kit" and "Enzo" in the same document. On their face, none of these emails address any specific products identified in Exhibit C and they therefore provide no support for any allegations regarding PerkinElmer's payments to Enzo for kits listed on Exhibit C.[10]

### 2. *PerkinElmer Did Not "Improperly Manufacture" Products (Unpled)*

Still another unpled theory is that PerkinElmer lost the right to manufacture products listed on Exhibit C because Enzo purported to terminate that right in 2000 and 2001. In addition to being bizarre on its face (Enzo proceeded to accept millions of dollars in payments from PerkinElmer over the next four years without ever seeking to terminate the Agreement), the Distributorship Agreement makes clear that the so-called "interim" manufacturing rights received by PerkinElmer were for the entire term of the Agreement, including extensions. (Ex. 1, § 5). The six month notice period in the contract, referred to in Enzo's brief at page 15, is notice of Enzo's intent to also make products itself, not notice to terminate PerkinElmer's rights.

### 3. *PerkinElmer Did Not Breach The "Best Efforts" Provision (Unpled)*

Enzo's complaint does not allege any breach by PerkinElmer of the best efforts provision of the contract. Enzo admits as much in arguing that "[t]he Court can consider even unpleaded theories when there exists a basis of recovery." (Enzo Br. at fn. 18). In the procedural context of this case, Enzo's request that the Court permit it to proceed on a theory never mentioned in the

---

[10] One email involves a conversation among unidentified people concerning unspecified products about whether splitting nucleotides from the kit was necessary "given your understanding of [the] Enzo negotiation." (Enzo Ex. 39). Two of the emails appear to involve the development of second generation products, *i.e.*, products not listed on Exhibit C at all. (Enzo Exs. 40 and 41). The fourth appears to involve discussions with a third party that was apparently interested in the possibility of **the third party** selling kits using PerkinElmer's nucleotides. (Enzo Ex. 42).

7

complaint or subject to discovery should be rejected.

As presently articulated, the best efforts claims are limited to the claim that "PE breached its best efforts obligation by selling acycloNTP's instead of comparable [*e.g.*, Exhibit C] PRODUCTS." (Enzo Br. at 16). It is no accident that Enzo did not plead this claim as the whole thrust of its complaint is that PerkinElmer sold *too* much Exhibit C product (to unauthorized customers), not too little. Indeed, Enzo's brief in opposition reveals that it has no facts to support its best efforts allegations. A review of the documents relied on by Enzo for this contention shows instead that PerkinElmer was seeking to market the acycloterminators for applications that Enzo claimed were not permitted by the Agreement. Enzo cannot logically accuse PerkinElmer of a best efforts violation due to its desire to sell acycloterminators instead of the products under the Agreement that Enzo claimed it had no right to sell. Enzo's suggestion that PerkinElmer's positions are contradictory ("either PE is admitting that those sales of ddNTPs were unauthorized . . . or the sale of acycloNTPs violated the best efforts provision") is mistaken. (Enzo Br. at 17). First, the syllogism is legally incorrect. Even if PerkinElmer did sell products in competition with the Enzo products, that is not sufficient to show a best efforts violation. *See Inside Out Prods., Inc. v. Scholastic, Inc.*, No. 90 Civ. 7233, 1995 WL 375927, at *5 (S.D.N.Y. June 23, 1995). Second, there is nothing contradictory in PerkinElmer disagreeing with Enzo's repeated claims that PerkinElmer was breaching the Agreement by selling products to unauthorized customers while still seeking to avoid conflict with Enzo by selling acycloterminators to those customers.

4. **_PerkinElmer Is Not Liable For "High Prices" Charged By Its Distributors (Unpled)_**

At page 19 of its brief, Enzo asserts an accounting claim that is wholly new. Citing only paragraph 5 of the Agreement, Enzo asserts that "PE also failed to calculate and pay to Enzo the transfer fee arising from the additional sales price charged by PE's Sub-Distributors to their

8

customers in excess of the prices that PE agreed with Enzo that the PRODUCTS would be sold." Without any citations at all, Enzo then asserts that MPI is the "primary example" of this behavior.

The only role of the prices listed in Exhibit C, however, is to establish the "transfer fee." The pricing provisions for Schedule C products has nothing to do with actual prices charged to customers, either by PerkinElmer or its distributors. The prices at which PerkinElmer's distributors sold products is therefore irrelevant to PerkinElmer's obligations under the Agreement.

5.   *The Distributorship Agreement Terminated In 2004 (Unpled)*

Enzo's final unpled contract claim is that PerkinElmer did not give notice when the Agreement expired at the end of 2004, and that the Agreement therefore continued for six additional months. (Enzo Br. at 21). Under paragraph 15, the initial term of the Agreement was for four years, that is, until January 1, 2003. (Ex. 1, § 15). Thereafter, it continued for "successive renewal terms of one (1) year each." *Id.* The parties continued to operate under the Agreement for all of 2004. However, when the Ward patents expired in December 2004, PerkinElmer chose not to renew the Agreement, as was its right. *See* Ex. 10, ¶11.

Enzo states that "[t]ermination could be effected by either party only by giving 'notice in writing at least six (6) months in advance,'" but Enzo misreads the Agreement. The notice provision is only applicable to terminations made "without cause at any time." The decision to allow the Agreement to expire at the end of the one year renewal term was not a termination without cause that required special notice and therefore the Agreement terminated by its own terms at the end of the year when PerkinElmer chose not to renew it.

6.   *Enzo Has No Proof Of Fraud (Unpled)*

In its complaint, Enzo clearly, if ineffectively, pled a fraud claim based on PerkinElmer's alleged misrepresentation that, when it entered into the Agreement, it would "cease all

9

unauthorized activities that would otherwise infringe Enzo's patents." (Ex. 19, ¶96). In its opening brief, PerkinElmer demonstrated that Enzo's claim was nothing more than a claim that PerkinElmer entered into the Agreement not intending to perform and that such a claim does not lie under well-established New York law. Further, the fraud claim as pled was utterly derivative of Enzo's infringement claims and therefore necessarily fails with those claims.

Unable to respond to either argument, Enzo complains that PerkinElmer "misses the crux of Enzo's claim" and spins a new theory never pled in the complaint, much less with the particularity required by Fed. R. Civ. P. 9. Somehow, according to Enzo, by making certain stipulations relating to infringement and validity with respect to the acycloterminators, PerkinElmer made factual misrepresentations on which Enzo relied. (Enzo Br. at 22-25). This theory is facially defective on at least two grounds. First, by the express terms of the Distributorship Agreement, the stipulations became null and void when the Agreement terminated. (Ex. 1, § 15). They cannot be used to support any claim. Second, as Enzo itself describes its claim, Enzo did not rely on any factual statements made by PerkinElmer about whether Enzo's own patents were infringed or valid. The alleged reliance is that Enzo "rightfully assumed" (Enzo Br. at 24) that PerkinElmer would seek Enzo's permission to add the acycloterminators to the Agreement, *i.e.*, that Enzo "assumed" PerkinElmer intended to perform under the contract. Of course, PerkinElmer disputes that any such performance was called for by the Agreement, but that dispute cannot be turned into a claim of fraud because it is simply an allegation that Enzo relied on a purportedly false statement of PerkinElmer's intent to perform.

Dated:  May 15, 2013

/s/ Omar Khan

WILMER CUTLER PICKERING
HALE AND DORR LLP

Attorneys for PerkinElmer, Inc. and
PerkinElmer Life Sciences, Inc.

<u>Of Counsel:</u>

William G. McElwain (admitted *pro hac vice*)
WILMER CUTLER PICKERING
HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC  20006
(202) 663-6300