Jeffrey R. Mann
Tel (212) 801-2111
Fax (212) 224-6125
mannj@gtlaw.com

January 22, 2014

**BY E-MAIL (sullivannysdchambers@nysd.uscourts.gov)**

Honorable Richard J. Sullivan
United States District Court
Southern District of New York
500 Pearl St., Room 615
New York, NY 10007

Re:   *Enzo Biochem, Inc. et al. v. PerkinElmer, Inc. et al.*, No. 03 Civ. 3817 (RJS)

Dear Judge Sullivan:

Pursuant to the Court's Individual Practices § 1.D and 2.G, Plaintiffs and Counterclaim Defendants Enzo Biochem, Inc. and Enzo Life Sciences, Inc. (collectively, "Enzo") write to request a hearing to address a brief adjournment of one month for all dates in the current schedule in the above-captioned action. Omar Khan, counsel for PerkinElmer, informed us over several telephonic meet and confer conferences lasting approximately 30 minutes on January 15 and 16 that PerkinElmer opposed this request. We are proceeding by joint letter because several of the problems we raise arise in the context of discovery issues between the parties.

As the Court is aware, in mid-November the "Schedule for Damages and Expert Discovery and Pretrial Submissions" was So-Ordered, providing for trial and jury selection to commence on March 18, 2014. Deadlines for party damages discovery, non-party discovery, expert reports, rebuttal expert reports, the pretrial order, voir dire questions, verdict form, jury instructions, and motions *in limine* and motions to exclude expert testimony were set in a condensed timeframe, one immediately following another, to accommodate that trial schedule.

Unfortunately, and despite Enzo's best efforts, Enzo cannot reasonably complete damages discovery and third-party discovery prior to the January 27 deadline set forth in the current schedule due to PerkinElmer's and numerous subpoena recipients' delay and recalcitrance, as described below. Relatedly, Enzo cannot complete its expert reports, due on January 24, until it (as nearly as possible) completes discovery. Enzo therefore respectfully requests a month's adjournment of all dates pending in the current schedule.[1]

Following the Court's summary judgment Memorandum & Order on October 28, 2013, Enzo and PerkinElmer understood that they faced an enormous amount of work to prepare this action for trial. Unlike most other cases, and despite the length of time this case has been pending, there had been no discovery pertaining to damages (including damages discovery from

---

[1] Enzo also requests that the deadlines for the completion of discovery and the submission of opening expert reports be reversed, to ensure that the experts have access to all discovery available prior to submitting their reports. A proposed Revised Scheduling Order is attached to this letter as Exhibit A. After initially setting a trial date of January 13, the Court invited Enzo and PerkinElmer to jointly submit a pretrial schedule. In that schedule, the parties jointly suggested a trial date in March. No request has been made to adjourn that date.

third parties, *i.e.*, PerkinElmer customers) or work on expert reports until after the Court's summary judgment ruling. This resulted from the Court's 2003 stay of damages discovery which the defendants, including PerkinElmer, vigorously invoked. Beginning around Thanksgiving, 2013, Enzo has diligently sought to complete discovery, but the length of time since the complained-of actions took place, and the prevalence during that time of paper documents, rather than electronic records, have made delays inevitable.

In particular, despite investigating the documents in its possession relating to damages prior to a meet-and-confer on November 26, 2013, PerkinElmer recently discovered three separate sources of damages documents, about which it first informed us on December 18, 2013. Following additional investigation, PerkinElmer produced one set of those documents on January 15, 2014 (nine days prior to the opening expert report deadline), and allowed us to inspect nearly 30 boxes of previously unidentified invoices and related documents on the same day. Unfortunately, the vast majority of the documents made available to us were unresponsive to the issues in this action, and we await PerkinElmer's further investigation of its over 10-year old paper records to supplement their production with more relevant material. We are also waiting for the results of similar investigations by PerkinElmer of other potentially relevant documents, particularly relating to a recently-discovered PowerPoint presentation relevant to Enzo's claims.

Discovery from third parties has also been delayed due to the length of time since the relevant products were sold and used. In November, 2013, Enzo retained the firm of Cousins Chipman & Brown, LLP to carry out third party discovery in order to avoid potential conflicts between Greenberg Traurig, Enzo's trial counsel, and the third parties. Cousins Chipman & Brown has since subpoenaed 46 companies, including related entities, and is currently meeting and conferring with 30 of those companies to ensure adequate responses to Enzo's subpoenas.

Not surprisingly, many of the third parties have vigorously resisted producing documents and making witnesses available for depositions until after the January 27, 2014 discovery deadline. They claim that they cannot review and produce paper documents from over 10 years ago until late January or early February. In particular, Amersham, the largest customer of PerkinElmer for Enzo products whose data are key to Enzo's damages analysis, has recently said that its witness is not available to testify in a deposition until January 30 or February 5, after the January 27 discovery deadline. Amersham also informed us last week that one of the departments that purchased PerkinElmer products was spun off several years ago into a new company, necessitating a new subpoena and attendant delays. Similarly, many of PerkinElmer's customers from 1999-2004 have since been sold, merged, or dissolved, requiring further rounds of subpoenas to obtain relevant documents. And the relevant documents are not easy to search for or compile; they consist of paper purchase and sales records, of which many third parties have informed us will take some time to review and produce.

Orchid Biosciences, for example, another subpoena recipient and large customer of PerkinElmer's, informed us that due to "the age of the case," it intends to produce documents "by the close of this month," notwithstanding the discovery deadline. MPI, like Orchid a large PerkinElmer customer that Enzo subpoenaed in early December, informed us on January 16 that it had 500 boxes of documents in a facility in Oregon that it would make available for inspection. Enzo was prepared to review the documents on Monday, January 20, but MPI's counsel (a different law firm than the one that represented MPI in Enzo's lawsuit against it) made the

document review subject to onerous and unprecedented conditions late on the Friday before Enzo's anticipated review. These conditions include a post-hoc review and approval of all documents Enzo determines are responsive to its subpoena; restricting the reviewers to a single Enzo attorney and single paralegal; and not permitting the reviewers to make telephone calls or take notes during the review. Enzo expects to bring a motion to compel against MPI shortly.

The third party discovery Enzo is currently engaged in (including Amersham) is crucial for its damages analysis. PerkinElmer has produced a sales spreadsheet detailing what it asserts were its sales of Enzo Products during the relevant time period, but recent information provided by third parties, as well as a close review of the spreadsheet itself, has put PerkinElmer's sales records into question. Third parties are informally reporting that they purchased more products than PerkinElmer reports having sold. Moreover, PerkinElmer reports millions of dollars of sales of "custom" products, but cannot directly identify what those products were. That information, therefore, is most reliably obtained from third parties. Enzo can only be ready for trial following a realistic damages investigation, and there is simply not enough time under the current schedule to carry one out. Further, the current schedule was entered into under the optimistic view that there would not be material discrepancies between PerkinElmer's sales information and third parties' purchase information. Now that these issues have come to light, a brief adjournment, limited to one additional month in an over-ten year litigation, is necessary.

**PerkinElmer's Position**

Enzo's second request for a continuance of the trial date and an extension of related deadlines should be denied.[2] Enzo's purported need for further discovery simply confirms that it has no evidence to support its claims. Its desire to drag the case out further will cause PerkinElmer additional prejudice in defending against claims that should never have been brought and which, even if they had merit, could not conceivably generate a damages claim proportionate to the scope of discovery that Enzo seeks. Notably, Enzo's service of almost fifty third party subpoenas during the limited discovery period has already multiplied the costs to PerkinElmer while producing virtually nothing relevant to the issue of damages. In seeking an adjournment of the trial schedule, Enzo seeks only to extend its fishing expeditions in the hope that it will come up with some evidence to support some claim, whether pled or not.

The Court will recall there are only a handful of claims left in the case, chiefly: 1) a claim that PerkinElmer improperly sold products for non-research purposes; 2) a claim that PerkinElmer only paid Enzo a transfer fee for the nucleotide portion of kits that PerkinElmer sold; and 3) a claim involving the calculation of the discount provision of the Agreement. *See* Dkt. No. 119. Importantly, none of these claims involve any significant potential damages, or should merit extensive discovery. For example, the majority of PerkinElmer's sales under the Agreement cannot credibly be challenged as being for non-research purposes as they involve sales to, *e.g.*, universities, research centers or similar institutions. On all of its sales, PerkinElmer paid Enzo a transfer fee, *i.e.*, royalty, of 32.5% and a dollar amount of more than $17 million. Thus, with respect to the research use claim, *if* Enzo were able to prove any "commercial" sales for which PerkinElmer should be liable, it would still be required to prove that it should have

---

[2] Enzo initially sought a continuance of the January 13, 2014 trial date to March 1, 2014, a request that PerkinElmer agreed to. Dkt. No. 120 at 1-2. The Court granted Enzo's request but set the trial date for March 18. *Id.* at 2.

been paid *more* than what it was already paid under the Agreement. Any such recovery would be nominal at best.

Given these stakes, PerkinElmer and Enzo agreed that the limited damages discovery necessary could be done in three months in anticipation of a trial in March 2014. The Court endorsed the parties' schedule on November 11, 2013, while also continuing the trial from its originally scheduled date in January.

However, less than a week before the close of fact discovery and two months before the scheduled trial date, Enzo seeks to extend *all* of the case deadlines that the parties agreed upon and jointly submitted to the Court. In order to justify its extraordinary request, Enzo has manufactured a number of "discovery issues" that should be disregarded entirely because they have not been presented as discovery disputes in need of resolution by the Court. Enzo does not seek the Court's intervention with respect to any "discovery issues" relating to PerkinElmer. And with respect to third party discovery, Enzo merely cites a litany of "issues" without properly raising them as discovery disputes and without providing any of the relevant third parties an opportunity to respond to Enzo's conclusory and self-serving assertions regarding the state of their discovery responses. The Court should reject Enzo's effort to obtain an extension by raising a host of "discovery issues" that it has not attempted to resolve by way of a timely motion to compel. *See Enzo v. Orchid*, 03 Civ. 3819 (RJS), Dkt. No. 87 at 1 (S.D.N.Y. April 16, 2013) (denying motion to compel and discovery extension where dispute was not timely raised).

Further, to the extent that Enzo has been unable to complete damages discovery during the allotted period, that is a problem of Enzo's own making. Instead of seeking focused discovery appropriate to the claims that remain in the case, Enzo has focused its efforts on conducting additional liability discovery while formulating untimely damages theories.[3]

In particular, and notwithstanding the provisions of Fed. R. Civ. P. 30(a)(2) limiting a party to ten depositions, Enzo served nearly fifty subpoenas on PerkinElmer's customers. In large measure, these subpoenas seek evidence to support Enzo's claim that products were used for non-research purposes, evidence which Enzo does not have under any interpretation of the research-use restrictions. For example, documents and testimony is sought on topics such as "[t]he contractual research use only restrictions applicable to Products sold by PerkinElmer," "[t]he meaning of the terms 'research Products market,' 'research market,' 'research use,' 'diagnostic or therapeutic use,' and 'commercially exploit' as used by You and/or as in the customs and practices,' 'actual or contemplated use or sale of Products purchased from PerkinElmer including without limitation PerkinElmer's knowledge of your actual or contemplated use or sale of such Products.'" *See, e.g.*, Ex. B, Enzo Subpoena to MPI. These are subjects calculated to prove *liability* issues, *e.g.*, the customers' understanding of the terms of the Agreement and whether the research use restrictions were violated, and *not* any damages associated with such violations. Enzo seeks this discovery because it has not and cannot prove

---

[3] Enzo has now had three opportunities to conduct liability discovery in this nearly 11-year old case that was commenced in 2003. *See* 1/25/2012 Co-Defendants' Letter to the Court at 1-2 (describing procedural history); Jan. 29, 2012 Hearing Tr. at 7, 12 (reopening discovery for a third time to allow Enzo opportunity to seek "surgical and focused" discovery); Dkt. No. 196 (02-cv-8448) at 1. Following the Court's October 29, 2013 ruling on PerkinElmer's summary judgment motion, the parties jointly submitted a pre-trial schedule that required the parties to be focused in their efforts to complete any damages discovery and position the case for trial in March.

Honorable Judge Richard J. Sullivan
January 22, 2014
Page 5

non-research uses of PerkinElmer's products, which are by their nature research tools.

Enzo also acknowledges that its subpoenas sought third party sales information in order to identify "discrepancies" between PerkinElmer's records and those of its customers (and asserts without any support that is has learned of discrepancies "informally" from unidentified third parties). Almost fifteen years after the fact, it would not be surprising if whatever records retained by customers did not perfectly match those of PerkinElmer, but even if such discrepancies exist, they have no bearing on the issues in the case. The three breach of contract claims as to which the Court found a material issue of triable fact do not provide Enzo with a basis for pursuing a general accounting claim. Dkt. No. 119; *see also* Complaint at 58(d).

Finally, Enzo refers to a "recently-discovered PowerPoint presentation directly relevant to Enzo's claims," but omits any mention of the facts that (a) PerkinElmer produced PowerPoint presentations with nearly identical content during discovery in 2003; and (b) the PowerPoint presentation at issue is irrelevant because Enzo appears to be using it to support an unpled theory that PerkinElmer's sales representatives encouraged customers to purchase certain third party kits that were *not* sold by or through PerkinElmer. *See* Dkt. No. 119 at 6 (limiting Enzo to its claim that "**PerkinElmer** sold individual Enzo Product components accompanied by **PerkinElmer's** own products, thereby creating an ersatz kit."); *see also* Complaint at 58(d).

Enzo also inaccurately suggests that PerkinElmer somehow delayed in satisfying its discovery obligations. During the parties' November 26 meet and confer, PerkinElmer made clear that certain requested business records had been archived and/or were located on legacy systems that are difficult (if not impossible) to restore. PerkinElmer reiterated that fact in a December 18 letter accompanying its production of damages-related documents, and offered to meet-and-confer to discuss the issue. Enzo first responded to that offer on January 2 and asked to meet and confer on January 6, which PerkinElmer did. During that meet and confer, Enzo for the first time asked PerkinElmer to produce the records at issue, despite PerkinElmer's warning that many of these documents were irrelevant and/or duplicative of other documents it had already produced. Nonetheless, PerkinElmer expended considerable time and effort and produced any available documents to Enzo the following week. None of those documents were "recently discovered," as Enzo claims. Enzo was on clear notice of the availability of those documents, but failed to pursue them in a timely fashion. And Enzo now agrees that "the vast majority of the documents . . . were unresponsive," as PerkinElmer told Enzo all along.

Enzo also states that it is awaiting "further investigation" from PerkinElmer and/or additional discovery from certain third parties. With respect to PerkinElmer, there is no "further investigation" to conduct because, as Enzo has been repeatedly told, PerkinElmer has already conducted a reasonably diligent search and produced all available information responsive to Enzo's damages discovery requests. With respect to third parties, setting aside that the Court has not heard from any of the relevant third parties about the alleged "discovery issues" raised by Enzo, the fact remains that the Court-ordered schedule only allowed for a limited damages discovery period that necessarily required Enzo to be focused in its approach with respect to the remaining claims in the case. Having instead embarked on a far-reaching discovery effort in support of new liability and damages theories, Enzo cannot be heard to complain that it was unable to complete discovery within the Court-ordered timeframe, nor can Enzo be allowed to continue its effort to expand the scope of the case after nearly eleven years of litigation.

Honorable Judge Richard J. Sullivan
January 22, 2014
Page 6

Respectfully submitted,

| | |
|---|---|
| /s/ Jeffrey R. Mann_____ | /s/ William G. McElwain_____ |
| Jeffrey R. Mann | William G. McElwain |
| GREENBERG TAURIG, LLP | WILMER CUTLER PICKERING HALE |
| 200 Park Ave. | AND DORR LLP |
| New York, New York 10010 | 1875 Pennsylvania Avenue NW |
| | Washington, DC 20006 |

cc:  All Counsel of Record