UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x
ENZO BIOCHEM, INC. and                                  :
ENZO LIFE SCIENCES, INC.                                :
                                                        :
                    Plaintiffs,                         :
            v.                                          :    No. 03-CV-3817 (RJS)
                                                        :
PERKINELMER, INC. and                                   :
PERKINELMER LIFE SCIENCES, INC.,                        :
                                                        :
                    Defendants.                         :
                                                        :
------------------------------------------------------------------------x

**PLAINTIFFS' ENZO BIOCHEM, INC. AND ENZO LIFE SCIENCES, INC.'S
MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO COMPEL**

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................. 1

FACTUAL BACKGROUND .......................................................................................................  3

ARGUMENT .................................................................................................................................  5

I.    THE SCOPE OF PERMITTED DISCOVERY FROM A NON-PARTY IS
      BROAD ............................................................................................................................. 5

II.   THE REQUESTS AT ISSUE SEEK RELEVANT INFORMATION AND ARE
      NOT UNDULY BURDENSOME ..................................................................................... 6

      A.    Request No. 3:  Documents Reflecting Purchases and Sales of
            Products ................................................................................................................. 7

      B.    Request No. 4:  Documents Sufficient to Show MPI's Purchases of
            Products ................................................................................................................. 9

      C.    Request No. 6:  Documents Sufficient to Show MPI's Purchases of
            Products ................................................................................................................. 9

      D.    Request No. 10:  Documents Concerning the Research Use Only
            Restrictions .......................................................................................................... 10

CONCLUSION ............................................................................................................................ 11

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*BSN Medical, Inc. v. Parker Medical Assocs., LLC*,
　No. 10 Misc. 15, 2011 WL 197217 (S.D.N.Y. Jan. 19, 2011) ......................................8, 10

*Cohen v. City of New York*,
　255 F.R.D. 110 (S.D.N.Y. 2008) ......................................................................................6

*First Am. Corp. v. Price Waterhouse LLP*,
　154 F.3d 16, 21 (2d Cir. 1998) .........................................................................................6

*Ireh v. Nassau Univ. Med. Ctr.*,
　No. CV 06-09, 2008 WL 4283344 (E.D.N.Y. Sept. 17, 2008) ..........................................6

*Klein v. AIG Trading Grp. Inc.*,
　228 F.R.D. 418 (D. Conn. 2005) ...................................................................................6, 9

**Rules**

Fed. R. Evid. 902 ..................................................................................................................3

Fed. R. Civ. P. 26 .................................................................................................................6

Fed. R. Civ. P. 34 .................................................................................................................6

**Other Authorities**

9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2459 (3d ed.
　2008) .................................................................................................................................6

**PRELIMINARY STATEMENT**

Plaintiffs Enzo Biochem, Inc. and Enzo Life Sciences, Inc. (collectively, "Enzo") seek to compel non-party Molecular Probes, Inc. ("MPI") to comply with a Rule 45 Subpoena to Testify At A Deposition In A Civil Action (the "Subpoena") initially served on December 6, 2013. MPI was named an "NEN Distributor" under the Enzo Diagnostics, Inc. – NEN Life Science Products, Inc. Distributorship Agreement (the "Agreement") and was a significant purchaser of Products[1] from Defendant PerkinElmer, Inc. and PerkinElmer Life Sciences, Inc. (collectively, "PerkinElmer"). Indeed, MPI is no stranger to this litigation. It was named as a defendant along with PerkinElmer in the original lawsuit filed by Enzo in this Court, and was then sued by Enzo in a successor lawsuit, which remains pending.

Given MPI's significant purchases and sales of Products, Enzo served its Subpoena on MPI to obtain documents that would help establish the damages on its contract claims against PerkinElmer. The Subpoena seeks documents regarding MPI's purchases of Products from PerkinElmer, MPI's sales of Products to its customers, communications regarding its actual or contemplated use or sale of Products (including PerkinElmer's knowledge), and documents and communications concerning the contractual research use only restrictions applicable to the Products. As the Court knows, Enzo claims that PerkinElmer, in concert with MPI and its other NEN Distributors, sold and permitted the use and sale of Products for non-research uses, in violation of, among other provisions, its agreement to exert its best efforts to prevent such

---

[1] For purposes of the Motion and the Subpoena, "Products" means "(i) any Product identified in [Exhibits B and C of the Distributorship Agreement] that [MPI] purchased from PerkinElmer, (ii) any custom labeled Product that [MPI] purchased from PerkinElmer, and (iii) any Product made, used, sold, or offered for sale by [MPI] that constitutes or incorporates any of the Products described in (i) or (ii) above." (Subpoena To Testify At A Deposition In A Civil Action, dated January 9, 2014, a copy of which is attached to the Declaration of Lauren B. Grassotti, dated January 27, 2014 as Exhibit A, at 3). *See also* Grassotti Decl., Exs. I & J.

commercial exploitation and development.  There is no serious question that the documents at issue are relevant to Enzo's claims against PerkinElmer.  This Court expressly held that the issue of whether PerkinElmer's "sub-distributors [such as MPI] used or sold Products for purposes tied to commerce," specifically citing to testimony by MPI's corporate representative of such sales, is a genuine issue of material fact for the jury. (Dkt. No. 119 at 4).

MPI, though, has resisted the subpoena served upon it in connection with the damages discovery phase of this action.  Despite numerous meet and confer sessions over a number of weeks, MPI has produced only one document.  This production is woefully insufficient.  Its offer to make available 100 boxes of documents at MPI's Eugene, Oregon facilities at first seemed a positive development.  Although members of Enzo's legal team would be required to travel from New York to Oregon, at significant expense, given the relevance of the documents – later determined to amount to 500 boxes – to establishing damages against PerkinElmer, Enzo was prepared to do so.  But then MPI imposed a number of untenable conditions to its "making available for inspection" the 500 boxes of documents.  The most egregious was the requirement that, after Enzo's legal team members pore through the contents of 500 boxes and mark the ones they want to copy, MPI be able to block the production of any documents it determines, *post hoc*, are not responsive.

Nor can MPI contend that production will be unduly burdensome.  As a defendant in another action that is among several consolidated with this action for discovery, MPI has long been under an obligation to preserve its documents and has known that it would be called upon to produce documents to establish damages on these contract claims against PerkinElmer.  The

requested documents are highly relevant, if not crucial, to Enzo's damages case against PerkinElmer. MPI cannot be permitted to block discovery into this significant issue.[2]

## FACTUAL BACKGROUND

Pursuant to a Distributorship Agreement (the "Agreement"), PerkinElmer agreed to "sell and distribute certain products covered by Enzo patents and listed in Exhibits B and C to the Distribution Agreement, and PerkinElmer would pay Enzo a portion of the revenues from those sales and distributions." (Memorandum and Order, dated October 28, 2013 (the "Order"), at 2) (Dkt. No. 119). The Agreement restricted PerkinElmer's sales of Products "to the Research Market for use by the Research End-User," (*id.* (citing Agreement at §§ 1, 13)), and permitted PerkinElmer to appoint sub-distributors of the Products whose sales were also subject to the Agreement's use restrictions. PerkinElmer appointed MPI as such a sub-distributor.

Enzo alleges that PerkinElmer, individually and through its sub-distributors, breached the Agreement by selling Products outside the Research Market and/or for use by others than the Research-End User. (Order at 4). In its Order, the Court denied PerkinElmer's motion for summary judgment with respect to this claim, (*id.* at 5, 13), and the parties are now preparing for trial which is set to commence on March 18, 2014. Although this case has been pending for more than a decade, there had been no discovery pertaining to damages (including damages discovery from third parties, *i.e.,* PerkinElmer customers) as of the date of the Order.

A crucial aspect of Enzo's damages analysis requires documents and information concerning purchases of Products from PerkinElmer by its customers and sub-distributors, and any subsequent sales of Products to third parties. This information is necessary to, among, other

---

[2] To facilitate their admission at trial, Enzo also seeks an order compelling MPI to provide a certification for the documents that are the subject of this Motion pursuant to Federal Rule of Evidence 902(11) and/or (12).

things, allow Enzo to calculate the payments PerkinElmer received from sales made in breach of the Agreement, which will inform the calculation and amount of damages due Enzo associated with such sales. To ensure that it obtains this relevant and important information, Enzo must subpoena PerkinElmer's customers and sub-distributors.

Accordingly, on December 17, 2013,[3] Enzo served a Subpoena to Testify At a Deposition In A Civil Action on counsel for MPI who agreed to accept service. On December 18, 2013, counsel for MPI agreed to accept service of the Subpoena. On that same day, Enzo was served with MPI's eight pages of objections to the Subpoena. (Grassotti Decl. Exh. E). Since that time, MPI has engaged in a course of conduct that has frustrated Enzo's legitimate discovery efforts. When, in the spirit of compromise, Enzo contacted MPI's counsel on January 26th to initiate discussions regarding MPI's concerns, Enzo was told that MPI's counsel was not available until January 2, 2014. Enzo was eventually able to initiate contact on January 6, 2014. A phone conference took place between Enzo's and MPI's counsel which led to over two days of communications whereby MPI repeatedly demanded a new subpoena be issued specifying compliance within 100 miles of MPI's Eugene, Oregon offices. During this delay, Enzo repeatedly assured MPI that there was no real disagreement and any depositions and production would take place in Oregon, within 100 miles of MPI's offices.

---

[3] Counsel for MPI originally agreed to accept service of the Subpoena on December 3, 2013. (*See* Dec. 3, 2013 email from E. Jaegers, Esq. to R. Lefton, Esq., Grassotti Decl. Exh. B). On December 9, 2013, Enzo served an amended schedule to the Subpoena to correct a typographical error. (*See* Dec. 9, 2013 email from L. Grassotti, Esq. to E. Jaegers, Esq., *id.* at Exh. C). On December 17, 2013, MPI objected to the Subpoena because it did not specify a court of issuance or enforcement, and designated Sacramento, California as the location for compliance. (*See* MPI's Objections To Third Party Subpoena To Testify At Deposition In A Civil, *id.* at Exh. D). After conferring with counsel for MPI, Enzo issued the Subpoena which specified the Southern District of New York as the court of issuance and the place for compliance, and was otherwise identical to the earlier version served by Enzo and incorporated the amended schedule. (*See* Dec. 17, 2013 email from L. Grassotti, Esq. to K. Johnson, Grassotti Decl. Exh. F; Jan. 7, 2014 ltr. from R. Lefton, Esq. to K. Johnson, Esq., Grassotti Decl. Exh. G).

4

In order to further demonstrate its good faith, Enzo, on January 9th, offered to send its own personnel to MPI in Oregon in order to look through over 500 boxes of MPI's hard copy potentially responsive documents.[4]  The subsequent negotiations centered around Enzo's offer to greatly ease MPI's production burden by Enzo's counsel conducting the review continued from January 9th until January 17th, when, after an agreement had seemingly been reached,[5] MPI sent a last minute proposal, after business hours on a Friday, to Enzo containing terms that were plainly unacceptable, such as MPI insisting on a veto power over any document Enzo deemed responsive. (Grassotti Decl., Ex. H).  MPI insisted upon such conditions despite the fact that Enzo was under no obligation to conduct this review for MPI and had offered to do so only out of a desire to compromise.  As a result of MPI's last minute demands to which Enzo could not agree, Enzo was forced to cancel the Oregon trip on the very day that Enzo's counsel's flight was to depart.  As a result of the January 17th actions, MPI's latest tactic in a series of delays stretching back to mid-December, Enzo is forced to make this motion to compel production in accordance with the terms set forth in the Subpoena.

## ARGUMENT

**I.    THE SCOPE OF PERMITTED DISCOVERY FROM A NON-PARTY IS BROAD**

Under Federal Rule of Civil Procedure 45, "[t]he non-party witness is subject to the same scope of discovery under this rule as that person would be as a party to whom a request is addressed pursuant to Rule 34." *First Am. Corp. v. Price Waterhouse LLP*, 154 F.3d 16, 21 (2d

---

[4] Enzo agreed to focus on certain of its requests in negotiations mainly in response to MPI's objections, however, Enzo has not abandoned any of its requests, nor has MPI excused its duties to comply with those requests merely by producing one of the documents focused on during negotiations.

[5] Enzo counsel's employees booked flights, hotel, and rental car for the multiple day trip to Eugene, OR starting on January 18th.

Cir. 1998). *See also* Fed. R. Civ. P. 34(c) ("[A] nonparty may be compelled to produce documents and tangible things or to permit an inspection."). Enzo is thus entitled to MPI's documents if they are relevant under Fed. R. Civ. P. 26(b)(1), which "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Ireh v. Nassau Univ. Med. Ctr.*, No. CV 06-09, 2008 WL 4283344, *5 (E.D.N.Y. Sept. 17, 2008). *See also* 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2459 (3d ed. 2008).

A non-party may only object to a discovery request if the request is irrelevant, overbroad, or unduly burdensome. *Klein v. AIG Trading Grp. Inc.*, 228 F.R.D. 418, 422 (D. Conn. 2005) (collecting cases). The objecting non-party bears the burden of enunciating how each specific request, "not relevant or how each question is overly broad, unduly burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden." *Id*. (internal citations omitted). Mere statements that discovery requests are burdensome are not enough to prevail on objection to a motion to compel. *See id*. Whether a subpoena produces an undue burden depends upon multiple factors considered by the Court, including "relevance, the need of the party for the documents, the breadth of the document request, the time period covered, and the particularity with which the documents are described." *Cohen v. City of New York*, 255 F.R.D. 110, 117-18 (S.D.N.Y. 2008).

## II. THE REQUESTS AT ISSUE SEEK RELEVANT INFORMATION AND ARE NOT UNDULY BURDENSOME

The Subpoena sets forth document requests and deposition topics that go to the heart of Enzo's breach of contract claims against PerkinElmer. This Court expressly held that the issue of whether PerkinElmer's "sub-distributors [such as MPI] used or sold Products for purposes tied to commerce" is a genuine issue of material fact for the jury, and specifically cited to testimony

6

by MPI's corporate representative, Dr. Victoria Singer, acknowledge sales for drug development. (Order at 4). As a major PerkinElmer customer, MPI is in a unique position to provide Enzo with insight into actual sales of Products, terms of use of Products purchased from PerkinElmer, and communications between MPI and PerkinElmer that bear on Enzo's claims. MPI is the best, if not only, source of documents concerning its sale of Products and its communications with customers pertaining to the use restrictions placed upon those Products, as to which PerkinElmer undertook best efforts to ensure their compliance. (*Id.* (quoting Agreement §§ 1, 13)).

As mentioned above, Enzo narrows the scope of its motion to compel to only Request Nos. 3, 4, 6, and 10. Each of these requests seeks the production of documents crucial to Enzo's ability to prove damages at trial, and responding to them will not be unduly burdensome for MPI. Indeed, the Court should take with a grain of salt any assertions by MPI of undue burden. MPI is no ordinary non-party, nor is it a stranger to this litigation. MPI was originally a co-defendant of PerkinElmer's in a predecessor lawsuit asserting the same claims, (C.A. 02-cv-08448), and was named as a defendant concerning the same Distributorship Agreement on the same date this action was filed. (C.A. 03-cv-03816). That action is still pending. With discovery in those cases proceeding on a consolidated basis and damages discovery having been bifurcated, MPI knew it had an obligation to preserve documents related to damages and would likely be called upon to produce them (whether as a defendant or non-party) in Enzo's case against PerkinElmer.

    **A.**    **Request No. 3: Documents Reflecting Purchases and Sales of Products**

Request No. 3 requests MPI's "invoices, purchase orders, sales orders, shipping documents, receipts, compilations, and summaries" for each purchase of a Product by MPI from PerkinElmer or sale of a Product by MPI. (Grassotti Decl., Ex. A). Given MPI's offer, although heavily-conditioned, to make 500 boxes containing said documents available to Enzo for its

7

inspection, there can be no real debate as to these documents' relevance to Enzo's claims against PerkinElmer. Even absent that concession, the requested documents are clearly relevant as they corroborate (i) the sales of Products PerkinElmer made to MPI; and (ii) identify the downstream uses or sales by MPI of Products (including products incorporating an Enzo product) that may exceed the use restrictions in the Distributorship Agreement.

In this latter connection, MPI was only a Distributor of Products, and its use of the Products was limited to internal research and redistribution. It could not "commercially exploit" the Products, such as by modifying them or incorporating them into a new product. Any such unrestricted sales or uses would be in violation of the Distributorship Agreement, and would implicate PerkinElmer's undertaking to exercise its best efforts to prevent any such improper use. The production of the requested documents will therefore permit Enzo to identify the unauthorized uses or sales and provide a basis for the application of damages against PerkinElmer for said uses or sales. *Cf. BSN Medical, Inc. v. Parker Medical Assocs., LLC*, No. 10 Misc. 15, 2011 WL 197217, *3 (S.D.N.Y. Jan. 19, 2011) (denying motion to quash subpoena, finding documents regarding non-party's sales of products it purchased from defendant were relevant to plaintiff's damages proof).

Any assertion of undue burden would also be baseless. MPI already agreed to make available for inspection approximately 500 boxes containing the requested documents (presumably because it had preserved said documents for years). Enzo was prepared to send members of its legal team to MPI's offices in Eugene, Oregon at its expense to review those boxes, with someone from MPI simply manning the facilities. Once MPI made the documents available for inspection, any burden associated with "producing" the documents vanished.

8

The only seeming dispute between the parties is whether the conditions MPI imposed upon the review are tenable.  While a number of the conditions were unreasonable, MPI's insistence that it review for responsiveness, *post hoc*, any documents Enzo marked for copying is untenable.  Such a condition would give MPI veto power and renders the offer illusory in that it denies Enzo the ability "to inspect [and] copy" the requested documents.  Fed. R. Civ. P. 34(a)(1).  Proceeding in this fashion would not have avoided any debate over what documents are responsive, but would have engendered several and likely necessitated a motion to compel.

### B. Request No. 4: Documents Sufficient to Show MPI's Purchases of Products

Request No. 4 largely overlaps with Request No. 3.  In this regard, it requests, "[t]o the extent not produced in response to Request No. 3," documents sufficient to show, for purchases of a Product from PerkinElmer, the purchased Product's identity, quantity purchased, date of purchase, and purchase price.  (Grassotti Decl., Ex. A).  Accordingly, the requested documents are relevant for the same reasons as apply to the documents sought by Request No. 3.

As for burden, MPI has never articulated any specific basis other than a makeweight assertion that it will be difficult to locate hardcopy documents sufficient to show the requested information.  But mere statements that discovery requests are burdensome are not enough to prevail on objection to a motion to compel.  *See Klein*, 228 F.R.D. at 422.  And MPI's statements of burden should carry less weight given that it has been a defendant in a related litigation for over a decade.

### C. Request No. 6: Documents Sufficient to Show MPI's Purchases of Products

Request No. 6 requests all communications regarding MPI's "actual or contemplated use or sale of Products purchased from PerkinElmer," including PerkinElmer's knowledge thereof.  (Grassotti Decl., Ex. A).  Along the lines of the discussion with the above requests, the

9

production of these documents will permit Enzo to identify unauthorized uses or sales of Products. Documents reflecting PerkinElmer's knowledge of any such unauthorized uses or sales, and any steps it may have taken (or not taken) in response, are directly relevant to PerkinElmer's agreement to "exert its best efforts to comply with the [use-restrictions] and to prevent commercial development or exploitation of the PRODUCTS sold and shipped to others, and to give ENZO timely notice of any" deviations from the use restrictions. (Dkt. No. 119 at 4 (quoting Agreement § 13)). Thus, those unauthorized uses or sales provide a basis for the application of damages against PerkinElmer. *Cf. BSN Medical*, 2011 WL 197217 at *3.

MPI has not produced any documents in response to this request. After extensive meet and confer sessions, counsel for MPI stated only that it would take this request under advisement and inform us whether MPI would produce the requested documents. It has never done so. Nor has it identified any specific undue burden. Again, given MPI's status as a party in a related litigation, as to which discovery was consolidated with this action and others, any assertion of undue burden should be viewed skeptically and be deemed insufficient.

D.    Request No. 10:  Documents Concerning the Research Use Only Restrictions

Request No. 10 requests all "documents and communications concerning the contractual research use only restrictions applicable to Products sold by PerkinElmer." (Grassotti Decl., Ex. A). As with the other requests, this request seeks information that would inform PerkinElmer's compliance with its obligation to exert its best efforts "to prevent commercial development or exploitation of the PRODUCTS sold and shipped to others . . . ." (Dkt. No. 119 at 4 (quoting Agreement § 13)). MPI is the best, if not only, source of documents concerning its sale of Products and its communications with customers pertaining to the use restrictions placed upon those Products. And, certainly, any of its communications on this subject with PerkinElmer go

directly to PerkinElmer's best efforts obligation. Both sets of documents would thus be relevant to proving Enzo's damages from any such breach.

As with documents responsive to Request No. 6, MPI has not produced any documents in response to this request. After extensive meet and confer sessions, counsel for MPI stated only that it would take this request under advisement and inform us whether MPI would produce the requested documents. It has never done so. Nor has it identified any specific undue burden. Under the circumstances, no assertion of undue burden can be deemed plausible.

## CONCLUSION

For the foregoing reasons, Enzo respectfully requests that the Court grant this Motion to Compel and issue an order (a) directing MPI to (i) produce documents in response to Request Nos. 3, 4, 6, and 10; (ii) provide a certification sufficient to permit admission of any such produced documents pursuant to Federal Rule of Evidence 902(11) and/or (12); and (b) granting Enzo such other relief the Court may deem appropriate.

Dated: January 27, 2014

　　　　　　　　__/s/ Lauren B. Grassotti_____
　　　　　　　　Michael Burrows
　　　　　　　　Jeffrey R. Mann
　　　　　　　　Ronald D. Lefton
　　　　　　　　Lauren B. Grassotti
　　　　　　　　GREENBERG TAURIG, LLP
　　　　　　　　200 Park Avenue
　　　　　　　　New York, NY 10166
　　　　　　　　(212) 801-9200

　　　　　　　　*Attorneys for Plaintiffs Enzo Biochem, Inc. and Enzo Life Sciences, Inc.*