**Grassotti, Lauren B. (Assoc-NY-LT)**

| | |
|---|---|
| **From:** | Grassotti, Lauren B. (Assoc-NY-LT) |
| **Sent:** | Monday, December 09, 2013 7:07 PM |
| **To:** | Jaegers, Eric M. |
| **Cc:** | Lefton, Ronald D. (Shld-NY-LT) |
| **Subject:** | RE: Subpoena |
| **Attachments:** | MPI amended Schedule B.pdf |

Attached please find the amended Schedule B to the subpoena.

**Lauren B. Grassotti**
Associate
Greenberg Traurig, LLP | MetLife Building | 200 Park Avenue | New York, NY 10166
Tel 212.801.6765 | Fax 212.801.6400 | Cell 917.763.8053
grassottil@gtlaw.com | www.gtlaw.com

GT GreenbergTraurig

**From:** Lefton, Ronald D. (Shld-NY-LT)
**Sent:** Monday, December 09, 2013 7:04 PM
**To:** Jaegers, Eric M.
**Cc:** Grassotti, Lauren B. (Assoc-NY-LT)
**Subject:** RE: Subpoena

That was the final subpoena but an amended schedule is coming to you shortly from Lauren Grassotti. Are you not accepting service?  We can obviously discuss dates and locations etc.

**From:** Jaegers, Eric M. [mailto:Eric.Jaegers@troutmansanders.com]
**Sent:** Monday, December 09, 2013 7:01 PM
**To:** Lefton, Ronald D. (Shld-NY-LT)
**Subject:** RE: Subpoena

Ron – our client asked me to reach out regarding the subpoena to MPI in the PE case.  Could you send me the final/formal subpoena (or were you waiting to have a call to discuss suitable dates/locations for production and testimony before serving it)?

Thanks.  Eric

**From:** LeftonR@gtlaw.com [mailto:LeftonR@gtlaw.com]
**Sent:** Tuesday, December 03, 2013 3:55 PM
**To:** Jaegers, Eric M.
**Subject:** Re: Subpoena

Thanks. Talk soon. Ron

-------------------------
Ronald Lefton
Sent from my BlackBerry Wireless Handheld (www.BlackBerry.net)

**From**: Jaegers, Eric M. [mailto:Eric.Jaegers@troutmansanders.com]
**Sent**: Tuesday, December 03, 2013 06:47 PM Eastern Standard Time
**To**: Lefton, Ronald D. (Shld-NY-LT)
**Subject**: RE: Subpoena

Ron – we will accept service of the subpoena without waiver of or prejudice to any objections that MPI might have (other than to service of the subpoena itself).  Thanks.  Eric

**From:** LeftonR@gtlaw.com [mailto:LeftonR@gtlaw.com]
**Sent:** Tuesday, December 03, 2013 2:37 PM
**To:** Jaegers, Eric M.
**Subject:** Subpoena

Eric:  As we discussed, attached is a subpoena to MPI.  We can talk about dates and content.  It is for both production and testimony.  I assure you I am not looking for a trip out west if I can avoid it.  Please confirm that you will accept service on behalf of MPI without waiver of or prejudice to any objections you might have other than to service itself.  Ron

**Ronald D. Lefton**
Shareholder
Greenberg Traurig, LLP | MetLife Building | 200 Park Avenue | New York, NY 10166
Tel 212.801.3159 | Fax 212.224.6116
LeftonR@gtlaw.com | www.gtlaw.com



If you are not an intended recipient of confidential and privileged information in this email, please delete it, notify us immediately at postmaster@gtlaw.com, and do not use or disseminate such information. Pursuant to IRS Circular 230, any tax advice in this email may not be used to avoid tax penalties or to promote, market or recommend any matter herein.

IRS Circular 230 disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any tax advice that may be contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding any penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction(s) or tax-related matter(s) that may be addressed herein.

This e-mail communication (including any attachments) may contain legally privileged and confidential information intended solely for the use of the intended recipient. If you are not the intended recipient, you should immediately stop reading this message and delete it from your system. Any unauthorized reading, distribution, copying or other use of this communication (or its attachments) is strictly prohibited.

IRS Circular 230 disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any tax advice that may be contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the

purpose of (i) avoiding any penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction(s) or tax-related matter(s) that may be addressed herein.

This e-mail communication (including any attachments) may contain legally privileged and confidential information intended solely for the use of the intended recipient. If you are not the intended recipient, you should immediately stop reading this message and delete it from your system. Any unauthorized reading, distribution, copying or other use of this communication (or its attachments) is strictly prohibited.

## AMENDED SCHEDULE B

## DEPOSITION TOPICS

1. Your purchase of any Product from PerkinElmer, including without limitation:

    (i) any written or oral agreement for any such purchase, including the negotiation of the terms of such agreement,

    (ii) communications regarding any Product or actual or potential purchase thereof,

    (iii) identification of the Product purchased,

    (iv) the quantity of the Product purchased,

    (v) the date of the purchase,

    (vi) Your purchase price, including any price differential based on Your anticipated use or sale of any such Product or discount offered to You by PerkinElmer or otherwise applicable to such purchase, and

    (vii) any labels and Product inserts that were provided to You in connection with the purchase of the Product.

2. Your sale of any Product, including without limitation:

    (i) any written or oral agreement for any such sale, including the negotiation of the terms of such agreement,

    (ii) communications regarding any Product or actual or potential sale thereof,

    (iii) identification of the Product sold,

    (iv) the quantity of the Product sold,

    (v) the date of the sale,

    (vi) the identity of the purchaser,

       (vii)    the sale price, and

       (viii)   any labels and Product inserts that were provided to the purchaser in connection with Your sale of the Product.

3.     Your actual or contemplated use or sale of Products purchased from PerkinElmer, including without limitation:

       (i)     PerkinElmer's knowledge of your actual or contemplated use or sale of such Products,

       (ii)    the manufacture or development of any Product by You, and

       (iii)   the value to You of any such use, including any value related to increased sales and/or reduced costs.

4.     Any Product made, used, sold, or offered for sale by You for diagnostic, therapeutic, or commercial purposes, including without limitation:

       (i)     communications with any third party regarding any such Product or actual or potential sale thereof,

       (ii)    internal communications regarding any such Product or actual or potential sale thereof,

       (iii)   identification of the Product sold,

       (iv)   the quantity of the Product sold,

       (v)    the components of the Product sold,

       (vi)   the date of the sale,

       (vii)   the identity of the purchaser,

       (viii)  the sale price,

       (ix)   the development timeline for any such Product made by You,

   (x) any written or oral agreement for the sale of any such Product, including the negotiation of the terms of such agreement.

5. Marketing, advertising, sales or promotional efforts for Products sold by You.

6. The contractual research use only restrictions applicable to Products sold by PerkinElmer.

7. The meaning of the terms "research Products market," "research market," "research use," "diagnostic or therapeutic use," and "commercially exploit" as used by You and/or as in the customs and practices in the particular industry or markets in which the Products are sold.

8. The commercial market for Products, including but not limited to existing or potential industry participants, the actual share or segment occupied by each such participant, uses and sales of Product in the commercial market and end-users of Products.

9. The research market for Products, including but not limited to existing or potential industry participants, the actual share or segment occupied by each such participant, uses and sales of Product in the commercial market and end-users of Products.

## DEFINITIONS

a. As used in this Schedule B of Deposition Topics, the term "Product" means (i) any Product identified in Exhibit A that You purchased from PerkinElmer, (ii) any custom labeled Product that You purchased from PerkinElmer, and (iii) any Product made, used, sold, or offered for sale by You that constitutes or incorporates any of the Products described in (i) or (ii) above.

b. As used in this Schedule B of Deposition Topics, "PerkinElmer" means PerkinElmer, Inc. and any of its employees, attorneys, agents, representatives, affiliates,

subsidiaries, associates, distributors, sub-distributors (including, but not limited to, Orchid Biosciences, Inc. and Molecular Probes, Inc.), distributors under the Distributorship Agreement, or any persons (as defined herein) acting or purporting to act on its or their behalf.

 c. As used in this Schedule B of Deposition Topics, "You" or "Your" means Molecular Probes, Inc. and any of its employees, attorneys, agents, representatives, affiliates, subsidiaries, parents, associates, divisions and corporate predecessors, successors, whether owned wholly or partially, or any persons (as defined herein) acting or purporting to act on its or their behalf.

 d. As used in this Schedule B of Deposition Topics, "Distributorship Agreement" means the distributorship agreement entered into between Enzo Diagnostics Inc. and NEN Life Science Products, Inc., effective January 1, 1999.

 e. The term "communication" shall mean all inquiries, discussions, conversations, negotiations, agreements, understandings, meetings, telephone conversations, emails, letters, notes, telegrams, advertisements, correspondence, memoranda, or other forms of verbal, written or electronic intercourse or communication, including drafts, facsimiles, and copies, as well as originals.

 f. The use of the singular form of any word includes the plural and vice versa; the use of the masculine includes the feminine, and the use of the feminine includes the masculine.

 g. The use of a verb in any tense shall be construed as the use of the verb in all other tenses, whenever necessary to bring within the scope of the specification all responses that might otherwise be construed to be outside its scope.