UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| ENZO BIOCHEM, INC. and ENZO LIFE SCIENCES, INC. | * * * | No. 03-CV-3817 (RJS) |
| Plaintiffs, | * * |  |
| v. | * * |  |
| PERKINELMER, INC. and PERKINELMER LIFE SCIENCES, INC. | * * * |  |
| Defendants. | * |  |

**MOLECULAR PROBES, INC.'S MEMORANDUM IN OPPOSITION
TO MOTION TO COMPEL AND IN SUPPORT OF CROSS-MOTION
FOR AWARD OF COSTS**

Pursuant to Federal Rule of Civil Procedure 45, third-party Molecular Probes, Inc. ("MPI"), files this Memorandum in Opposition to Enzo Biochem, Inc. and Enzo Life Sciences, Inc. ("Enzo")'s Motion to Compel (Dkt. # 138), and in support of its Cross-Motion for an Award of Costs.

4834-1983-2600.1

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

FACTUAL BACKGROUND ............................................................................................... 2

I.     ENZO'S DELAYS IN SERVING A PROPER SUBPOENA .......................................... 2

II.    DOCUMENTS PRODUCED BY MPI ............................................................................ 5

ARGUMENT ........................................................................................................................ 8

I.     ENZO'S MOTION SHOULD BE DENIED PURSUANT TO RULE 45. ....................... 8

    A.    Enzo Delayed and Ultimately Failed to Serve a Proper Subpoena or a Proper Motion to Compel, Requiring Denial of Its Motion. ..................................8

    B.    Despite the Lack of a Proper Subpoena, MPI Voluntarily Produced Significant Documentation in the Enzo/MPI Litigation and in Response to the Subpoena. ................................................................................................10

CONCLUSION & REQUEST FOR RELIEF ........................................................................... 14

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Brown, M.D. v. Hendler*,
   2011 WL 321139, Civil No. 09 CIV 4486 (RLE) (S.D.N.Y., Jan. 31, 2011) ...........................8

*CF & I Steel Corp. v. Mitsui & Co. (U.S.A.), Inc.*,
   713 F.2d 494 (9th Cir. 1983) ......................................................................................................8

*In re Dennis*,
   330 F.3d 696 (5th Cir. 2003) .....................................................................................................8

*Phillips & Cohen, LLP v. Thorpe*,
   __ F.R.D. ___, 2013 WL 6234510, Case No. 13-405 (D.D.C., Nov. 19, 2013)................11, 12

*Simon v. FIA Card Services, N.A.*,
   732 F.3d 259 (3rd Cir. 2013) ......................................................................................................8

**OTHER AUTHORITIES**

9A Wright & Miller, Fed. Prac. & Proc. § 2454 (3d ed.) ................................................................8

Fed.R.Civ.P. 45 .................................................................................................................1-5; 8-11

## INTRODUCTION

Enzo's efforts to obtain information from MPI via the third-party discovery process have been fraught with procedural errors and misuse of the process set forth by Rule 45. Indeed, this motion is in violation of Fed.R.Civ.P. 45(d)(2)(B)(i), which requires motions to compel enforcement of a subpoena to be brought in the district where compliance is required; here, the District of Oregon. Enzo's motion either glosses over or overlooks these errors, and also omits any discussion of MPI's extensive efforts to comply, to the extent possible, with an overly broad and procedurally improper subpoena.

Not until January 9, 2014 did Enzo first serve MPI with a Subpoena Duces Tecum for production of documents and testimony that partially complied with Rule 45, at least with respect to the issuing court and location of compliance. That Subpoena still violated Rule 45 because: (1) Enzo never tendered fees and mileage to MPI pursuant to subsection (b); and (2) the document requests and requests for testimony contained therein were overly broad and unduly burdensome in violation of subsection (d)(1). For these reasons, even that January 9 Subpoena was procedurally improper and thus imposed no obligation upon MPI.

However, despite the lack of a proper Subpoena, MPI worked diligently to locate and produce to Enzo certain documents which represented the specific updates Enzo requested to three specific categories of documents previously produced in the related matter pending before this Court, *Enzo Biochem, Inc. and Enzo Life Sciences, Inc.*, No. 03-CV-3816 (RJS) ("Enzo/MPI litigation").[1] Contrary to Enzo's statement that MPI has only produced "one document" pursuant

---

[1] Documents in the categories specified by Enzo pertained primarily to updates to MPI's electronic sales data (representing sales to third parties) or hard copy documents evidencing MPI's purchases of products from PerkinElmer. While these categories of information arguably

to the subpoena (Enzo Memo. at 2), MPI in fact produced approximately 11,000 lines of summary electronic sales data containing multiple categories of information for MPI's product sales, by "sku" number, for a four-year period. MPI also advised Enzo that certain documents Enzo specifically requested had been produced in the Enzo/MPI litigation, and provided the identifying Bates numbers.

Accordingly, much of the information now sought by Enzo already has been produced, specifically that pertaining to MPI's purchases of certain products from PerkinElmer, and its sales of such products, notwithstanding Enzo's repeated and unremedied failures to comply with Rule 45. The remaining categories of information sought are either cumulative or in violation of this Court's directive that discovery in this phase of the Enzo/PerkinElmer litigation be limited to damages. For these reasons, Enzo's motion should be denied.

## FACTUAL BACKGROUND

### I.   ENZO'S DELAYS IN SERVING A PROPER SUBPOENA

On December 3, 2013, Enzo requested that MPI accept service of a third-party Subpoena Duces Tecum pursuant to Fed.R.Civ.P. 45 in the Enzo/PerkinElmer matter. MPI asked to see a copy of the subpoena before agreeing to accept service. In response, Enzo forwarded what appeared to be a draft Subpoena. Dkt. # 140-2 at 2. That draft Subpoena had a number of procedural defects; foremost, it did not specify the issuing Court. Dkt. # 140-9 at 1. Accordingly, MPI advised Enzo that the Subpoena appeared to be a draft, and asked whether Enzo would be sending a final version. Dkt. # 140-2 at 1. Rather than serve a corrected

---

fall within the ambit of Requests Nos. 3 & 4, at issue in Enzo's motion, Request Nos. 6 & 10, also at issue, seek different information entirely. Enzo did not press for this information.

Subpoena, counsel for Enzo merely served an "amended Schedule" regarding the Notice of Deposition.  Dkt. # 140-3 at 1.

MPI consequently prepared its Objections and Motion to Quash the Subpoena.  Those Objections included the fact that the Subpoena:  (i) violated Fed.R.Civ.P. 45(a)(1)(A)(i) because it failed to specify the court from which it issued; (ii) violated Fed.R.Civ.P. 45(c)(1)(A) and (B) and (c)(2)(A) because it purported to require MPI, an Oregon corporation with a principal place of business in Eugene, Oregon, to produce documents and appear at a deposition in Sacramento, California; (iii) violated Fed.R.Civ.P. 45(b) because Enzo did not tender fees and mileage; and (iv) violated Fed.R.Civ.P. 45(d)(1) because it imposed undue burden and expense on MPI.  MPI also objected to specific requests (including those which are at issue in Enzo's motion), primarily because those requests sought information that:  (1) was potentially relevant only to liability, not damages, in the Enzo/PerkinElmer matter and thus were improper pursuant to an Order of this Court; (2) already had been produced in the Enzo/MPI litigation; (3) was overly broad and unduly burdensome.  Objections and Motion to Quash attached to Declaration of Kristine E. Johnson ("Johnson Dec.") as Exh. A.  For example, Enzo's Request No. 3 sought "all invoices, purchase orders, sales orders, shipping documents, receipts, compilations, and summaries related to" each defined product "purchased or sold" by MPI.  Request Nos. 4 and 5 similarly sought documents sufficient to show the "identification" and "quantity" of each such product, as well as the date, identity of purchaser, and purchase or sale price.  Request No. 12 sought "[a]ll documents that describe, define, discuss, refer or relate to the terms "research Products market," "research market," "research field," "research use," "diagnostic or therapeutic use," and

"commercially exploit" as used by You and/or in custom and usage in the industry or markets in which the Products are sold." *Id.*

On December 17, 2013, Enzo contacted MPI and requested that MPI refrain from filing its Motion to Quash in the United States District Court for the Eastern District of California, the district where compliance was required. Enzo indicated that it would serve a new Subpoena. *See* 12/17/2013 email attached Johnson Decl. as Exh. B. Accordingly, MPI served a copy but did not file MPI's Objections and Motion to Quash that day. *Id.* Also on December 17, Enzo forwarded a new Subpoena to MPI. That Subpoena was identical to the first Subpoena, but specified the United States District Court for the Southern District of New York as the issuing court, and purported to require compliance in New York, New York. Dkt. # 140-6. No fees or mileage were tendered.

On December 18, MPI served its Objections to the December 17 Subpoena. These Objections omitted the Rule 45(a)(1)(A)(i) objection (as the new Subpoena issued from the Southern District of New York), and objected to the place of compliance in New York, but were otherwise identical to the prior objections. Dkt. # 140-5. In its email cover letter serving those objections, MPI indicated that it was available to discuss the objections the following day. 12/18/2013 email attached to Johnson Decl. as Exh. C. MPI received no response from Enzo until December 26. MPI suggested a call on January 2, after the holiday, but Enzo was unable to speak until January 6. Dkt. # 139 at 4.

During the January 6 call, MPI reiterated its objections but indicated that, ***even though MPI had yet to receive a valid subpoena***, it nonetheless was willing to investigate whether it had

4834-1983-2600.1                                    4

certain specific categories of documents identified by Enzo (which documents were later produced, *see* section II, *infra*).  1/8/2014 letter attached to Johnson Decl. as Exh. D.

Finally, on January 9, Enzo provided MPI with a Subpoena reflecting a location of compliance in Eugene, Oregon.  Dkt. # 140-1.  However, Enzo still failed to tender witness and mileage fees pursuant to Fed.R.Civ.P. 45(b)(1), and its requested categories contained the same defects noted in MPI's earlier Motion to Quash and Objections.  Nonetheless, pursuant to the discussions of counsel, Enzo recognized that MPI would use its best efforts to provide updates to ***three specifically delineated categories*** of documents pertaining to MPI's purchases from PerkinElmer and MPI's product sales.  1/9/2014 letter attached to Johnson Decl. as Exh. E.  Enzo was able to specify those categories by Bates range because MPI had already produced responsive documents in the Enzo/MPI litigation, and Enzo sought updates to that information.  *See* Johnson Decl., Exhs. D & E.  Enzo also recognized that, as it had been informed by MPI, MPI maintained a large number of hard copy documents that may contain updates to one of those delineated categories, but that those documents would be time-consuming and difficult to search, so the parties were attempting to find a resolution.  *Id.*[2]

## II. DOCUMENTS PRODUCED BY MPI

As it had agreed to do, MPI produced responsive documents to Enzo on January 17, 2014.  That production consisted of an excel spreadsheet containing 11,043 lines of data representing MPI's sales of specified products from 1999 to 2003 (as requested by Enzo as an update to a previously produced document) and including the following information: (i) invoice

---

[2]  Regarding Enzo's Notice of Deposition, MPI informed Enzo that it would be willing to consider providing a records custodian certificate regarding the authenticity of the documents produced by MPI.  Enzo declined, however, to cancel the noticed deposition.

5

date; (ii) invoice number; (iii) order number; (iv) item number; (v) sku; (vi) quantity; (vii) amount; (viii) customer number and customer name; and (ix) dollar amount.  *See* cover email dated 1/17/2013 attached to Johnson Decl. as Exh. F.[3]  MPI further informed Enzo that documents responsive to one of the additional categories requested by Enzo had been produced in the Enzo/MPI litigation, and identified those documents by Bates number.  1/22/2104 email attached to Johnson Decl. as Exh. G.

Accordingly, the only remaining category of documents that MPI agreed to produce, if they could be readily located, were invoices or purchase orders representing MPI's purchases from PerkinElmer for the years 2002-2005 (to supplement MPI's early production in the Enzo/MPI litigation).  *See, e.g.,* Johnson Decl., Exh. E.  Those documents were believed to be maintained in hard copy form in a warehouse in Eugene, Oregon.  After consulting with Enzo, MPI agreed to send an associate and a paralegal to Eugene to perform a preliminary review of those boxes on January 15 and 16 to determine what types of documents they may contain.  1/20/2014 email attached to Johnson Decl. as Exh. H.

Upon completion of that review on January 16, MPI advised Enzo that the approximately 500 boxes did not appear to contain documents representing MPI's purchases from PerkinElmer, as previously believed, but consisted of invoices and purchases orders representing MPI's sales to its own customers.  Because that information was merely back-up to the extensive spreadsheet documentation ***already produced to Enzo*** in the Enzo/MPI litigation and updated by MPI on

---

[3]  Because of the size of that electronic file, and because the information contained therein is highly confidential, MPI has not attached the document itself to this filing.  Should the Court wish to review a copy of the file, MPI will provide a copy directly to the Court.

January 17, Enzo first informed MPI that it likely would not travel to Eugene to review the documents. Johnson Decl., Exh. H.

Then, on the afternoon of Friday January 17, Enzo changed its mind and informed MPI that it would begin the inspection the morning of Monday, January 20, a holiday. *Id*. MPI immediately took steps to ensure that the facility would be open and that Enzo would be allowed access. Counsel for MPI also arranged for a paralegal from its offices in Salt Lake City, Utah, to travel to Eugene on the evening of Sunday, January 19, to provide Enzo with access to the facility and oversee the review. *Id*. That same day, MPI provided Enzo with the address of the facility, and also provided Enzo with a proposed agreement regarding the terms of the inspection, including non-waiver of any applicable privilege and an agreement that Enzo's attorneys would tag any documents that Enzo wanted produced, which MPI would then review and, if responsive and non-privileged, produce to Enzo. Dkt. # 140-8 at 1 & 2. This restriction, of which MPI had informed Enzo earlier that week (Johnson Decl., Exh. H), was intended only to ensure that those documents actually produced to Enzo would be responsive and non-privileged. Given that the number of boxes in the storage facility totaled over 500, MPI's counsel could not ensure that each and every document contained therein met those qualifications, and accordingly requested a reasonable agreement from Enzo in that regard.

Rather than respond to MPI with any concerns, Enzo ignored MPI's email of January 17, and follow-up email of January 18, and waited until the evening of Sunday, January 19 to inform MPI that it would not agree to the conditions and was cancelling the inspection. Johnson Decl., Exh. H. By that time, MPI had already sent a paralegal to Eugene, and the time and expense associated with her travel were wasted. Johnson Decl., Exh. H. Given that Enzo's attorneys

were planning to travel to Eugene from New York, MPI could only conclude that Enzo had concluded much earlier in the weekend not to make the trip, but simply chose not to inform MPI, thus forcing MPI to incur needless expense.

## ARGUMENT

I.     **ENZO'S MOTION SHOULD BE DENIED PURSUANT TO RULE 45.**

    A.     **Enzo Delayed and Ultimately Failed to Serve a Proper Subpoena or a Proper Motion to Compel, Requiring Denial of Its Motion.**

Pursuant to Rule 45, Enzo was required to issue a third-party subpoena that complied with the procedural requirements of Rule 45, including the location of production, specifying the issuing court and tendering of appropriate fees. *Simon v. FIA Card Services, N.A.*, 732 F.3d 259, 279 (3rd Cir. 2013) ("To be valid, a subpoena must comply with Civil Rule 45's requirements."). Enzo also was required to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed.R.Civ.P. 45(c)(1).

Despite these requirements, Enzo waited until January 9, 2014, to finally issue a Subpoena that partially conformed with Rule 45. That Subpoena did not, however, comply with Rule 45(b)(1), because the required fee was not tendered. This failure alone renders the Subpoena invalid and unenforceable. *Brown, M.D. v. Hendler*, 2011 WL 321139, Civil No. 09 CIV 4486 (RLE) (S.D.N.Y., Jan. 31, 2011) (plaintiff's "failure to tender travel and witness fees" provided a basis for quashing subpoena); *CF & I Steel Corp. v. Mitsui & Co. (U.S.A.), Inc.*, 713 F.2d 494, 496 (9th Cir. 1983) (subpoenas held invalid where no witness fees or mileage allowances were tendered when subpoenas were served); *In re Dennis*, 330 F.3d 696, 705 (5th Cir. 2003) ("a court does not abuse its discretion by quashing a subpoena where the subpoenaing party tendered no mileage allowance whatsoever with the subpoena."); *see* 9A Wright & Miller,

Fed. Prac. & Proc. § 2454 (3d ed.) ("[s]ervice of the subpoena must be accompanied by tendering to the witness the fees for one day's attendance and the mileage allowed by law, unless the subpoena is issued on behalf of the United States or an agency or office thereof, in which case fees and mileage need not be tendered. Failure to tender the appropriate sums at the time the subpoena is served invalidates the subpoena.").

Furthermore, as fully set forth in MPI's Objections, the Subpoena was overly broad and unduly burdensome in violation of Rule 45. Enzo sought documents responsive to twelve separate categories of documents, requiring MPI to search for and produce "all" documents that contained information evidencing every purchase and sale made by MPI of certain products over a seven year period (beginning fifteen years ago, in 1999). In that Subpoena, Enzo made no attempt to limit its requests to documents *not* previously produced by MPI. And, the requests pertaining to the research use restriction were not only untimely, as discussed below, but impermissibly broad as they imposed upon MPI the burden of searching for documents containing such commonly-used terms as "research market" and "research use," as those terms are used in the industry. The breadth and general nature of this request renders it virtually impossible to even compile an electronic search that would yield meaningful results. In short, Enzo has failed to serve a proper subpoena that complies with *all* of the requirements of Rule 45, and MPI accordingly has no obligations pursuant to the Subpoena.

Nor has Enzo complied with the requirements of Rule 45 regarding this motion. Rule 45(d)(2)(B)(i) provides that the party serving a subpoena "may move the court for the district where compliance is required for an order compelling production or inspection." Thus, Enzo's motion should have been filed in the District of Oregon since Enzo is seeking to enforce the

January 9 Subpoena requiring compliance in Eugene, Oregon.[4]  Enzo's failure to comply with the requirements of Rule 45 regarding the Subpoena itself, as well as the filing of this motion, requires denial of the motion.

>    B.   **Despite the Lack of a Proper Subpoena, MPI Voluntarily Produced Significant Documentation in the Enzo/MPI Litigation and in Response to the Subpoena.**

Despite Enzo's failure to comply with the requirements of Rule 45, MPI nonetheless endeavored to comply with Enzo's requests to the extent reasonably possible.  Enzo's Motion fails to adequately address these efforts, which were extensive.  In fact, much of the information which Enzo now seeks already has been produced, either in the MPI/Enzo litigation, or pursuant to the Subpoena.  As set forth below, those Requests which are the subject of Enzo's motion seek either information which already has been produced, or are in violation of prior Orders entered by this Court and/or are nonresponsive.

Request Nos. 3 & 4:  These requests seek documents regarding MPI's purchases and sales of certain specified products (*i.e.*, MPI's purchases from PerkinElmer and subsequent sales to third parties).  Enzo argues that such documents are relevant (Enzo Memo. at 7-9), but fails to acknowledge the extensive documentation responsive to these categories that MPI *already has produced*.  First, as set forth above, MPI produced an 11,043 line spreadsheet to Enzo on January 17, 2014.  This spreadsheet contained ten categories of information regarding MPI's sales of specified products over a four-year period, from 1999 to 2003.  Indeed, it contained far more

---

[4]  Furthermore, Enzo's motion was untimely.  Discovery in the Enzo/PerkinElmer matter closed on January 27, but Enzo did not file its Memorandum in Support of its Motion to Compel and supporting Declaration, until January 28.  Dkt. #'s 139 & 140.  And, this Court recently denied Enzo's request for an adjournment of the discovery cut-off in this matter, which Enzo claimed it needed to complete third-party discovery.  Dkt. #'s 134 & 137.

detail than Enzo requested.  This document represents the completion of MPI's document production regarding its sales, as similar information for the years 2003 to 2005 had been produced in the Enzo/MPI litigation.[5]

Consequently, Enzo already had extensive data for the sales made by MPI in the damages period.  As Enzo itself implicitly acknowledged by initially indicating that it did not intend to travel to Eugene, the hard copy invoices and purchase orders in the Eugene facility merely represent back-up to this information.  *See* Johnson Decl., Exh. H.  Requiring MPI to devote hours of time reviewing each and every document in hundreds of boxes to obtain this back-up information would constitute an undue burden, particularly when weighed against the cumulative nature of the documents.  *See Phillips & Cohen, LLP v. Thorpe*, __ F.R.D. ___, 2013 WL 6234510 at * 2, Case No. 13-405 (JEB/DAR) (D.D.C., Nov. 19, 2013) (noting that, in assessing whether subpoena poses an undue burden under Rule 45, courts may consider "whether the discovery is unreasonably cumulative or duplicative", among other things).  The fact that MPI is "not a stranger" to the Enzo litigation generally (Enzo Memo. at 7) does not change this fact.  And, MPI has not refused to produce this information.  Had Enzo simply agreed to MPI's reasonable request that it be allowed to view the documents flagged by Enzo before production, this motion may have been avoided.[6]

---

[5]  MPI previously indicated to Enzo that it will consider requests by Enzo to allow specifically-identified documents produced in the Enzo/MPI litigation to be used in the PerkinElmer litigation, assuming they are subject to appropriate protections.  Dkt. # 140-4 at 4-5.

[6]  Finally, Enzo's assertion that the hard copy invoices and purchase orders may "identify the downstream uses" of products sold by MPI is incorrect.  Enzo Memo. at 8.  MPI, as a seller, had no means of determining the uses its customers would make of its products.  And, MPI already submitted undisputed evidence in the Enzo/MPI litigation that MPI complied with the research

Similarly, MPI already produced documents evidencing its purchases from PerkinElmer in the Enzo/MPI litigation. The documents to which Enzo requested updates for specified years (MPO21689-21847 and MPO21973-022130) (*see* Johnson Decl., Exh. E) contain just that information. Under its agreement to search for those specified years, MPI conducted an internal investigation, and it initially believed that those updates may be contained in the hard copy documents located in Eugene. But that proved not to be the case. *See* Johnson Decl., Exh. H. MPI has, to date, been unable to locate such information, much of which is over thirteen years old. In any event, Enzo has not established that it has sought such information *from PerkinElmer, a party to the underlying litigation* who presumably created many of the documents sought. *See Phillips*, 2013 WL 6234510 at * 2 (in assessing burden, court also may consider "whether the discovery sought is obtainable from some other source that is more convenient, less burdensome, or less expensive.").

Request No. 6: This request seeks "communications" regarding MPI's "actual or contemplated use or sale of products purchased from PerkinElmer, including . . . .documents concerning PerkinElmer's knowledge of Your actual or contemplated use or sale of such Products." Enzo acknowledges that these documents "are directly relevant [to PerkinElmer's obligations under its agreement with Enzo]." Enzo Memo. at 10. Admittedly, then, these documents are pertinent to Enzo's *liability* claims against PerkinElmer, not to damages. These requests are in direct violation of the Court's Memorandum and Order dated October 28, 2013, directing that further discovery by PerkinElmer and Enzo must be limited to damages and expert discovery. Dkt. # 119. The requests thus are untimely, as Enzo should have sought any such

---

use restriction as it was requested to do by PerkinElmer. Dkt. # 88 in Civil No. 03-CV-3816 at 7-9.

information much earlier, either during the general discovery phase of the Enzo/PerkinElmer litigation. Indeed, the Court precluded Enzo's efforts to obtain similar information from Orchid in its Order dated April 18, 2013. *See* Dkt. # 87 (denying Enzo's request for additional discovery prior to renewal of summary judgment motions on non-patent issues).

Furthermore, these requests are cumulative and unduly burdensome because MPI's witness Dr. Victoria Singer was deposed by Enzo three times already on this topic: September 11 and 12, 2006 and April 9, 2013. MPI also produced documents in response to this category in the Enzo/MPI matter, many of which were utilized in Dr. Singer's depositions. MPI should not be required to conduct yet another search in response to this untimely request, particularly since the request at least in part seeks documents pertaining to "PerkinElmer's knowledge," which is uniquely in the possession of PerkinElmer, not MPI.

Request No. 10: Similar to Request No. 6, this request seeks "documents and communications concerning the contractual research use only restrictions applicable to Products sold by PerkinElmer." Enzo insists that these documents are relevant because "MPI is the best, if not the only, source of documents concerning its sale of Products and its communications with customers pertaining to the use restrictions placed upon those Products . . . ." Enzo Memo. at 7, 10. But, Enzo misses the point. As set forth above, documents regarding the research use restriction are pertinent to *liability*, not damages, and should have been sought last spring, if not years before. Further, Enzo seeks information about "Products sold by PerkinElmer." The best source of that information is PerkinElmer, not MPI. To the extent Enzo meant MPI products, MPI already produced extensive testimony and documentary evidence on this issue. Undertaking another search would be unduly burdensome, particularly given the breadth of the

request. Indeed, the request is not limited to communications between MPI and PerkinElmer, and incorporates such commonly-used terms that any search is highly unlikely to yield any useful results.

## **CONCLUSION & REQUEST FOR RELIEF**

For the foregoing reasons, Enzo's Motion should be denied. Furthermore, as noted above, Enzo's delay in notifying MPI that it was cancelling the January 20 document inspection in Eugene caused MPI to incur unnecessary expense as it had already sent a paralegal from Salt Lake City to Eugene for that inspection. MPI seeks an award of all costs associated with that unnecessary and avoidable travel.

Dated: February 7, 2014.

Respectfully submitted,

*/s/ Kristine E. Johnson*
FRANCIS M. WIKSTROM (admitted *pro hac vice*
in Civil No. 03-CV-3816(RJS))
Utah State Bar No. 3462
KRISTINE E. JOHNSON (admitted *pro hac vice*)
in Civil No. 03-CV-3816(RJS))
Utah State Bar No. 7190
PARSONS BEHLE & LATIMER
201 South Main Street, Suite 1800
Salt Lake City, UT 84111
Ph. (801) 532-1234
fwikstrom@parsonsbehle.com
kjohnson@parsonsbehle.com

KATHERINE  NOLAN-STEVAUX  (admitted *pro hac vice* in Civil No. 03-CV-3816(RJS))
Cal. State Bar No. 244950
LIFE TECHNOLOGIES CORPORATION
1149 Chess Drive
Foster City, CA
Ph.  (650) 554-3584
katherine.nolan-stevaux@lifetech.com

*Attorneys for Third-Party Molecular Probes, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who have appeared and are deemed to have consented to electronic service are being served with a copy of the foregoing document via the Court's CM/ECF system per Local Civil Rule 5.2 on February 7, 2014.  Any other counsel of record will be served with a true and correct copy of the foregoing by first-class mail or E-mail.

*/s/ Kristine E. Johnson*