UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2-11-14
```

ENZO BIOCHEM, INC., *et al.*,

                Plaintiffs,

-v-

PERKINELMER, INC., *et al.*,

                Defendants.

No. 03 Civ. 3817 (RJS)
ORDER

RICHARD J. SULLIVAN, District Judge:

    The Court is in receipt of the attached letter from Defendants, dated February 2, 2014, requesting a pre-motion conference regarding its contemplated motion to strike and/or preclude certain aspects of Plaintiffs' expert report. The Court is also in receipt of the attached response from Plaintiffs, dated February 5, 2014. Defendants' contemplated motion is predicated on the fact that Plaintiffs' expert report leaves room for supplementation upon the receipt of allegedly outstanding discovery by Plaintiffs and their expert. However, Plaintiffs have not yet supplemented the expert report. Therefore, Defendants' motion is premature. Accordingly, IT IS HEREBY ORDERED THAT Defendants' motion is deemed made and denied without prejudice to renewal.

SO ORDERED.

DATED:    February 11, 2014
                New York, New York

                                          RICHARD J. SULLIVAN
                                          UNITED STATES DISTRICT JUDGE

# WILMERHALE

February 2, 2014

**By Email**

Robert J. Gunther, Jr.

+1 212 230 8830 (t)
+1 212 230 8888 (f)
robert.gunther@wilmerhale.com

Honorable Richard J. Sullivan
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

Re: *Enzo Biochem, Inc. v. PerkinElmer, Inc.*, No. 03 Civ. 3817 (RJS)

Dear Judge Sullivan:

Pursuant to Section 2.A of the Court's Individual Practices, PerkinElmer requests a pre-motion conference regarding its contemplated motion to strike and/or preclude certain aspects of the expert report of Enzo's damages expert, Gregory Bell, as not in compliance with the scheduling order in the case and contrary to the Court's orders rejecting Enzo's repeated requests to modify that scheduling order.

The procedural history of the case was discussed in two joint letters filed with the Court during the week of January 20. Last November, the parties agreed to expedited damages discovery to prepare the case for trial, now set for March 18, 2014. The Court endorsed the parties' schedule on November 11, 2013, while also continuing the trial from its originally scheduled date in January. Pursuant to the agreed schedule, Enzo's expert reports were initially due on January 24, 2014. On January 22, Enzo requested an "adjournment" of all deadlines as well as the scheduled trial date. The Court denied that request. On January 24, Enzo requested that the close of fact discovery be extended to February 5 and that the time to file its initial expert reports be extended to January 30. In its request, Enzo represented to the Court that its "request leaves undisturbed any other pretrial scheduling." On January 24, the Court denied Enzo's second request, but gave Enzo an additional two business days to file opening expert reports, while also permitting two depositions to be taken after the close of fact discovery.

Enzo served three expert reports on January 28. With respect to the expert report of Enzo's damages expert, Mr. Bell, it is clear that Enzo is attempting to grant itself a further extension, contrary to the Court's orders. Mr. Bell's report provides nothing of substance concerning Enzo's "research use" claim, and clearly indicates Enzo is intending to file a supplemental report on that claim at some unspecified time in the future. Although Mr. Bell's report provides somewhat greater detail with respect to the "kit" claim in the case, it likewise appears to contemplate a supplemental report at a later date. Finally, Mr. Bell promises an additional report on a fourth claim that has never been in the case, either in pleadings, interrogatory responses or on summary judgment, regarding so-called "custom products." However, no details about that claim are provided either.

For example, with respect to Enzo's claim that PerkinElmer exceeded the "research use" limitations in the Agreement, Mr. Bell proposes three different "methodologies" for calculating Enzo's damages, but does not actually offer *any* opinion about what Enzo's damages would be under any of those theories (*i.e.*, he does not quantify Enzo's damages, identify the sales Enzo

WILMERHALE

contends were made in violation of the Agreement, and/or describe what the amounts of those sales were). Instead, he writes only that he "reserve[s] the right to provide an opinion" (Ex. 1, Bell Rpt. ¶¶ 32, 39, 44) "once discovery is complete concerning the amount, Products, customer, and date of the alleged lost sales," that "I understand that discovery is ongoing…[,] I am unable to complete this aspect of my analysis [, and] I reserve the right to supplement my opinion and analysis once this information becomes available." (*Id.*) To be sure, Mr. Bell by his own admission has the information necessary to conduct parts of his analysis, but has chosen not to disclose even that. (*See, e.g., id.* at ¶ 32 ("I have obtained information regarding step (c) above from Enzo, but…it is not practical for me to provide [this information] to the Court…when only some of those Products may represent alleged lost sales.")). Likewise, for Enzo's "kit" claim, Mr. Bell "reserve[s] the right to provide an opinion," and claims that "there is discovery ongoing" that apparently prevents him from quantifying any damages. (*Id.* at ¶¶ 49, 52.) Mr. Bell similarly "reserve[s] the right to provide an opinion" regarding Enzo's newly-added "custom product" claim, and does not offer a single example of any alleged violation. (*Id.* at ¶¶ 54-56.)

The fact is that whatever discovery may be "ongoing" in Enzo's view, with a few small exceptions, discovery is complete.[1] Enzo has not brought any timely motion to compel additional discovery from PerkinElmer. No depositions are scheduled of PerkinElmer that might provide Enzo with facts to support its various theories. No depositions are scheduled of any of PerkinElmer's end user customers, such as the pharmaceutical companies, that Enzo contends may have improperly used products for "commercial" purposes. Amersham produced the documents sought by Enzo with its subpoena prior to the time that Enzo's expert reports were due. Enzo cannot credibly contend that the out-of-time deposition of Amersham allowed by the Court will provide critical information it needs to quantify its purported damages. To the extent Enzo is allowed to seek any form of lost profits, Enzo itself is the custodian of its own cost and profit information, but Mr. Bell has provided no opinions purporting to calculate Enzo's profits. In short, this is not a situation where Enzo can plausibly suggest that it is only planning to discretely supplement its report because it is waiting for one or two items of discovery. This is a wholesale refusal to provide any substance about the damages opinions that Enzo intends to offer

---

[1] Both parties have made a modest supplemental document productions this week. Enzo produced cost and margin information for its products, but that information is not relied upon by Mr. Bell. Enzo made additional requests for documents at the depositions of PerkinElmer occurring last Friday and Saturday. In response to Enzo's requests, PerkinElmer produced additional detail in its databases about certain "custom" products. That information pertains to less than approximately 5% of the orders PerkinElmer received for the products Enzo contends are covered by the Agreement.

With respect to third party discovery, the Court granted an extension for the limited purpose of conducting a deposition of Amersham on February 5. Enzo has filed an untimely motion to compel certain discovery from MPI. Ex. 2, Enzo's Motion to Compel Discovery from MPI; *cf. Enzo v. Orchid*, 03 Civ. 3819 (RJS), Dkt. No. 87 at 1 (S.D.N.Y. April 16, 2013) (denying motion to compel and discovery extension where dispute was not timely raised). Life Technologies has filed a motion to quash Enzo's subpoena, and that motion is likely to be transferred to this district. *See* Ex. 3, Life's Motion to Quash; Ex. 4, Stipulation Regarding Transfer. As noted above, Enzo has ***not even attempted*** to include any damages claim or theory based on the documents and discovery that it has already received from Amersham and MPI. And, for the hundreds of other PerkinElmer customers, there is no further discovery to conduct because the Court was clear that all "adjournment requests are DENIED. The parties shall otherwise adhere to the schedule set forth in the Court's Order dated November 11, 2013."

WILMERHALE

Honorable Richard J. Sullivan
February 2, 2014
Page 3

at trial.

The prejudice to PerkinElmer from Enzo's conduct is manifest. Specifically, it is entirely unclear how the pre-trial schedule can be maintained if Enzo is allowed to supplement Mr. Bell's report sometime in the future. After Enzo received its two business day extension for expert reports, PerkinElmer sought, and the Court granted, two additional business days to respond to Enzo's report. PerkinElmer's reports are therefore due in less than three weeks on February 18. Expert depositions must be completed by February 21, and then motions *in limine* and *Daubert* motions must be filed by March 4. It is certain that PerkinElmer will challenge Enzo's expert reports *in limine* and therefore any delay in the expert discovery schedule will severely impact its ability to bring those motions and the Court's ability to decide them before trial.

As PerkinElmer has previously argued to the Court, the fundamental problem – as revealed by Mr. Bell's report and as evidenced by Enzo's attempt to serve nearly fifty third-party subpoenas on most of PerkinElmer's customers – is that Enzo has never had any proof on the liability issue of whether PerkinElmer's customers violated the research use limitations in the Agreement. And, even now after the close of discovery, Enzo cannot identify the sales that it contends constituted improper "commercial" uses. The same is true for the alleged improper sale of "kits" and the new claim involving custom products. PerkinElmer's sales represent tens of thousands of transactions to hundreds of customers. For PerkinElmer to not know what sales and what customers Enzo claims to be at issue a *mere six weeks before trial* severely compromises PerkinElmer's ability to defend against Enzo's claims.

PerkinElmer emphasizes that there are many other flaws in Enzo's reports which, even if they were complete, should preclude Enzo's experts from testifying in accordance with them.[2] PerkinElmer intends to raise those issues in due course. However, it is unclear how or when expert discovery could conclude given the utter lack of damages opinions in Mr. Bell's report. Because Mr. Bell's expert report with respect to all claims other than the "discount claim" (Ex. 1, Bell Rpt. ¶¶ 19 to 22) are not in compliance with the Court's scheduling orders, PerkinElmer asks that they be stricken and that Enzo be precluded from asserting any damages theories on any claim other than the "discount" claim.

---

[2] Among other things, Enzo's reports raise at least four theories that were not timely disclosed and/or are not properly part of the case. The first is an argument regarding the termination date of the Agreement that the Court has already precluded. *See* Dkt. No. 119 at 8, 9. The second and third are liability theories that were neither pled in the Complaint nor addressed on summary judgment. These include a claim that PerkinElmer allegedly underpaid Enzo by mischaracterizing its sales of certain products as "custom" products (a claim first disclosed in Mr. Bell's report), and a claim that PerkinElmer is somehow liable under Enzo's kit claim theory for selling nucleotides to customers who also purchased a kit made and sold by a different company. *See* Ex. 1, Bell Rpt. at ¶¶ 53, 47-48; *compare* Dkt. No. 119 at 6 (describing Enzo's kit claim as alleging "*PerkinElmer* sold individual Enzo Product components accompanied by *PerkinElmer's* own products, thereby creating an ersatz kit"). Lastly, Mr. Bell's report describes a theory of "lost profits" that Enzo did not disclose in its statement of damages theories as required by the Court's November 11 schedule. Indeed, Enzo did not disclose that theory until January 10, just two weeks before the close of fact discovery and well after the deadlines for the exchange of discovery requests and responses. This disclosure was belated in the extreme and prejudiced PerkinElmer's discovery efforts, and PerkinElmer will therefore separately move to exclude it to the extent necessary.

WILMERHALE

Honorable Richard J. Sullivan
February 2, 2014
Page 4


Respectfully submitted,

By: /s/ Robert J. Gunther, Jr.

Robert J. Gunther, Jr.
WILMERHALE LLP
250 Greenwich Street
New York, NY 10007
T: 212-230-8830
robert.gunther@wilmerhale.com


cc: Counsel of Record



Jeffrey R. Mann
Tel (212) 801-2111
Fax (212) 224-6125
mannj@gtlaw.com

February 5, 2014

**BY E-MAIL (sullivannysdchambers@nysd.uscourts.gov)**

Honorable Richard J. Sullivan
United States District Court
Southern District of New York
500 Pearl St., Room 615
New York, NY 10007

Re: *Enzo Biochem, Inc. et al. v. PerkinElmer, Inc. et al.*, No. 03 Civ. 3817 (RJS)

Dear Judge Sullivan:

We write in response to Mr. Gunther's letter of February 2, 2014 seeking a conference, pursuant to the Court's Individual Practices Rule § 2.A, on PerkinElmer's contemplated motion to strike and/or preclude certain aspects of the expert report of Dr. Gregory Bell. Dr. Bell's expert report properly lays out his damages methodology and supplementation is appropriate given the outstanding discovery from PerkinElmer and non-parties.

### Supplementation of Expert Reports Is Permitted, and Preclusion is "Extraordinary"

Contrary to the Court's Individual Practices, PerkinElmer offers no authority for its position. Supplementation is expressly permitted under Federal Rule of Civil Procedure 26(e). Indeed, Rule 26(e)(2) specifically provides that with respect to supplementation of an expert witness's report, "[a]ny additions or changes to the information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due," which should be the case here.

PerkinElmer ignores that preclusion of evidence is an "extraordinary" and "extreme sanction." *Outley v. City of New York*, 837 F.2d 587, 591 (2d Cir. 1988). Courts often permit supplementation of expert reports, particularly when the supplemented information was unavailable, is important to the case, and the opposing side suffers little or no prejudice. *See, e.g.*, *Bath and Body Works Brand Mgmt., Inc. v. Summit Entertainment, LLC*, No. 11 Civ. 1594(GBD)(JLC), 2012 WL 5278528 (S.D.N.Y. Oct. 23, 2012) (permitting supplementation of expert discovery on basis of later-produced discovery); *Papyrus Tech. Corp. v. N.Y. Stock Exchange, LLC*, 257 F.R.D. 39 (S.D.N.Y. 2009); *Arnold Chevrolet LLC v. Tribune Co.*, No. CV 04-3097(DRH)(WDW), 2007 WL 4565031 (E.D.N.Y. Dec. 21, 2007).

### Dr. Bell's Report

Dr. Bell's report opines on the damages sustained by Enzo as a result of PerkinElmer's numerous breaches of the Distributorship Agreement. As Dr. Bell noted, "if the data required to conduct such damages assessment in an efficient manner have not yet been produced, [I have been asked to] describe the methodology that I expect to implement upon receipt of the necessary information." (Ex. 1 to Gunther Letter ("Bell Report"), ¶ 5). Dr. Bell's report discusses four types of damages Enzo sustained as a result of PerkinElmer's breaches: (a)

Honorable Richard J. Sullivan
February 5, 2014
Page 2

"insufficient payment, due to PerkinElmer applying improperly incentive discounts regarding transfer prices;" (b) "the inappropriate sale and distribution . . . of Products in violation of the Distributorship Agreement's research use only by a Research End-user in the Research Market provisions and related inadequate supervision of its customers' use of Products"; (c) "the inappropriate piecemeal sales of kits such that PerkinElmer evaded the higher transfer price due to Enzo applicable to kits by selling separately the components of a kit so as to achieve the sale of an ersatz kit;" and (d) "PerkinElmer's inappropriate use of 'custom' product designations to provide bulk discounts and reduce transfer price payments to Enzo . . . ." (*Id. at* ¶ 18).[1]

Dr. Bell opines on the amount of damages for what PerkinElmer refers to as Enzo's "discount" claim – $3.3 million (plus appropriate prejudgment interest), (*id.* at ¶ 7(a)) – but states that because the "necessary information for an efficient assessment of damages sustained by Enzo due to PerkinElmer's three other types of breaches . . . is not yet available in the production of documents, . . . . I will provide an estimate of these types of damages when the necessary discovery information becomes available." (*Id.* at ¶ 7(b)). Even as to these latter set of damages theories, Dr. Bell's report articulates the methodologies by which he will determine the amounts of Enzo's damages. (*Id.* at ¶¶ 23-56).

### The Outstanding Discovery and Its Importance

The outstanding discovery is from a number of non-party customers or distributors of PerkinElmer, as well as PerkinElmer itself. As the Court knows, no damages discovery was permitted to take place prior to the Court's resolution of PerkinElmer's motion for summary judgment in an order entered on October 28, 2013. At the Rule 30(b)(6) depositions of PerkinElmer's designees on damages issues on January 24 and 25, 2014, it became apparent that there are additional documents that PerkinElmer has not produced. In particular, documents relevant to damages have been lost because of a decision in 2012, during the pendency of this lawsuit, to change information systems. Further, PerkinElmer is able to produce documents identifying Exhibit C Products designated as "custom" for approximately 600 sales, an astoundingly low number given the thousands of such sales. Enzo is currently contemplating a motion to compel and/or for sanctions against PerkinElmer.

Enzo has also subpoenaed dozens of non-parties for damages-related discovery. Negotiations with these non-parties were often contentious, and to avoid burdening the Court with significant motion practice, Enzo took the time to resolve compliance with the subpoenas. Several have agreed to provide documents, some of which is still forthcoming.[2]

---

[1] PerkinElmer mistakenly contends that these last two theories – (c) and (d) – were neither pleaded nor addressed in summary judgment. They are theories of damages on claims that were expressly pleaded and addressed by the Court on summary judgment. (Dkt. No. 1 at ¶¶ 58(d)(ii), (f); Dkt. No. 119 at 6-7, 4-5). Enzo contends that PerkinElmer mischaracterized bulk sales as "custom" products to permit the commercial exploitation of Enzo Products in violation of the research use only restrictions.

[2] To the extent PerkinElmer suggests discovery obtained after the cut-off is not useable, it offers no basis. Indeed, PerkinElmer deposed an Enzo corporate designee after the discovery cut-off.

Honorable Richard J. Sullivan
February 5, 2014
Page 3

Nonetheless, as PerkinElmer noted, Enzo has moved to compel Molecular Probes, Inc. ("MPI") to comply with a subpoena, and a motion to quash filed by Life Technologies Corp. ("Life Technologies") is likely to be transferred to the Court. MPI was one of PerkinElmer's largest customers, and the materiality of the documents requested in the subpoena has been addressed in Enzo's papers on its motion to compel. (Dkt. No. 139).[3] Life Technologies is the parent company of the firm that, in concert with PerkinElmer, sold Ambion kits in conjunction with Enzo Products in violation of the Distributorship Agreement, and thus possesses highly material documents required to determine the amount of damages on Enzo's ersatz "kit" claim.

Moreover, Enzo will be taking the deposition of Amersham on February 5, 2014, permitted by the Court's order dated January 24, 2014 (Dkt. No. 137), regarding the purchases (from PerkinElmer) and sales of Enzo Products that it and its numerous Motorola and General Electric-affiliated entities made. It is unclear how PerkinElmer can argue that this deposition will not "provide critical information [Enzo] needs to quantify its purported damages." PerkinElmer's own documents show that these affiliated entities accounted for more than 32% (almost $22 million) of PerkinElmer's sales of Exhibit C Products.

### PerkinElmer's Lack of Prejudice

In addition to this discovery being highly material to Enzo's damages case, PerkinElmer cannot show any prejudice it would suffer from such supplementation. PerkinElmer does not dispute that Dr. Bell's report provides the methodologies he will employ in determining the damages Enzo sustained. PerkinElmer thus is not prevented from filing a *Daubert* motion, as "[t]he focus" of a *Daubert* motion, "of course, must be solely on principles and methodology, not on the conclusions that they generate." *Daubert v. Merrell Dow Pharmas., Inc.*, 509 U.S. 579, 595 (1993). Moreover, PerkinElmer has not yet deposed Dr. Bell and will be able to challenge his damages methodologies (if not the determined damages amounts) in its rebuttal report as well. *Cf. Arnold Chevrolet*, 2007 WL 4565031 at *2.[4] As PerkinElmer's request for a pre-motion conference has no basis, Enzo requests that the Court deny the request.

Respectfully submitted,

/s/ Jeffrey R. Mann
Jeffrey R. Mann
GREENBERG TRAURIG, LLP
200 Park Avenue
New York, New York 10166

---

[3] Enzo disputes PerkinElmer's gratuitous comment that the motion to compel, to which the Court directed MPI to respond by February 7, 2014, is untimely. PerkinElmer has no standing to make that assertion and is improperly trying to prejudice the Court's decision on that motion.

[4] In this connection, PerkinElmer's assertion that Enzo's theory of lost profits is "belated in the extreme and prejudiced PerkinElmer's discovery efforts" is baseless. As PerkinElmer avers this is not a basis for its presently contemplated motion, Enzo limits its response to note only two items: (1) Enzo long ago asserted a demand for lost profits for breach of contract in the Complaint in 2002, (Dkt. No. 1 at 34; *see also id.* at ¶ 63); and (2) PerkinElmer obtained discovery on lost profits through its document requests and by two Rule 30(b)(6) depositions.

Honorable Richard J. Sullivan
February 5, 2014
Page 4


cc: All Counsel of Record