UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ENZO BIOCHEM, INC., *et al*

        Plaintiffs,

-v-

PERKINELMER, INC., *et al.*,

        Defendants.

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2-26-14

No. 03 Civ. 3817 (RJS)

ORDER

RICHARD J. SULLIVAN, District Judge:

The Court is in receipt of the attached letter, dated February 21, 2014, submitted by PerkinElmer, Inc. and PerkinElmer Life Sciences, Inc. (collectively, "PerkinElmer"), and the attached letter in response, dated February 23, 2014, submitted by Enzo Biochem, Inc. and Enzo Life Sciences, Inc. (collectively, "Enzo").

At the outset, the Court notes that PerkinElmer's submission is styled as a letter seeking "guidance" pursuant to Rule 2.D of the Court's Individual Practices. In fact, Rule 2.D concerns courtesy copies for the Court. Because the underlying issue in PerkinElmer's letter relates to what amounts to a discovery dispute, it should have been raised in compliance with the joint letter requirement in Rule 2.G of the Court's Individual Practices. For this reason alone, the Court will take no action with respect to PerkinElmer's request.

Moreover, although PerkinElmer's letter purports to seek "guidance" concerning the scheduling of depositions for the parties' damages experts, it appears that PerkinElmer is really asking the Court to reconsider its February 11 Order (Doc. No. 151), in which the Court denied PerkinElmer's "contemplated motion" to strike Enzo's anticipated supplemental expert report.

(*Id.*) As explained in the February 11 Order, the Court denied the motion as "premature" because Enzo had yet to supplement the expert report. (*Id.*) The parties' attached letters indicate that Enzo's expert has still not yet supplemented his report. Accordingly, no further "guidance" from the Court is necessary at this time. Should Enzo's expert supplement his report at the eleventh hour, PerkinElmer may so advise the Court and renew its request for "guidance," presumably in the form of a request to strike or for additional discovery. Until then, the request remains premature and is also denied for that reason.

SO ORDERED.

DATED: February 26, 2014
New York, New York

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE

February 21, 2014

**Robert J. Gunther, Jr.**

+1 212 230 8830 (t)
+1 212 230 8888 (f)
robert.gunther@wilmerhale.com

**By Email**

Honorable Richard J. Sullivan
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

Re: *Enzo Biochem, Inc., et al. v. PerkinElmer, Inc., et al.*, No. 03 Civ. 3817 (RJS)

Dear Judge Sullivan:

      Pursuant to Section 2.D of the Court's Individual Practices, this letter is submitted to advise the Court of the parties' inability to complete expert discovery within the current discovery period and to seek the Court's guidance with respect to further proceedings.

      Under the schedule established by the Court's November 11, 2013 order, Enzo was to file its expert reports on January 24, 2010, PerkinElmer was to file its expert reports on February 14, with expert depositions to be concluded by February 21. In its order dated January 24, 2014, the Court allowed Enzo two additional business days to file its opening expert reports. As detailed in PerkinElmer's February 2, 2014 letter to the Court, the January 28, 2014 report of Enzo's damages expert, Gregory Bell, provided no opinion with respect to the amount of damages sought on Enzo's claim relating to the alleged violation of the Distributorship Agreement's research use provision (the "research use" claim), Enzo's claim relating to sales of kits (the "kit" claim), and/or Enzo's unpled claim relating to custom products (the "custom" claim). Instead, Dr. Bell only provided his views on the partial methodology he would apply with respect to these claims. Even though fact discovery was closed, Dr. Bell asserted in his report that the results of ongoing discovery were needed in order for him to opine as to the amount of alleged damages. On February 11, 2014, the Court denied PerkinElmer's motion to strike these aspects of Dr. Bell's report without prejudice to renewal, ruling that, because Enzo had not yet supplemented Dr. Bell's report, the motion was premature. As of the date of this letter, Enzo has not filed a supplemental report and PerkinElmer does not know when, if ever, Enzo intends to do so.

      On February 18, 2014, PerkinElmer timely filed three expert reports from Robert Hutchins, Gail Radcliffe and Louis Berneman, and offered Dr. Radcliffe and Mr. Hutchins for deposition within the time period set forth in the scheduling order. PerkinElmer also offered Mr. Berneman for deposition on February 25, the first business day on which he was available after the filing of his expert report. Enzo declined to take the depositions of Dr. Radcliffe and Mr. Hutchins on the dates offered, and it was unable to offer deposition dates for any of its three experts within the discovery cut-off date.

WILMERHALE

In discussions this week, Enzo has offered the depositions of its three experts as follows:

Arezou Azarani: February 27
Gregory Bell: February 28
David Sherman: March 1 and 2

PerkinElmer has advised Enzo that the next available dates for the depositions of its experts are:

Louis Berneman: February 25
Robert Hutchins: March 5
Gail Radcliffe: March 5

Although disruptive of its trial preparation and outside the schedule agreed to by the parties and endorsed by the Court, PerkinElmer is willing to accommodate Enzo's witnesses and counsel with respect to the deposition dates of Drs. Sherman, Radcliffe and Azerani.[1]

With respect to Dr. Bell and Mr. Hutchins (PerkinElmer's damages expert), however, PerkinElmer requests the Court's guidance on how to proceed. We understand that the Court's Order denying the motion to partially strike Dr. Bell's report without prejudice was a directive to wait until Dr. Bell actually files a supplemental report. However, it appears that the damages depositions of Dr. Bell and Mr. Hutchins will be a largely wasted exercise given the incomplete nature of Dr. Bell's report. In PerkinElmer's view, the Court should preclude Enzo from filing a supplemental report from Dr. Bell, and the depositions should proceed on the schedule above. However, if a supplemental Bell report is filed, which will require a ruling by the Court as to whether and to what extent any such supplementation is permissible, the more efficient course may be to defer those depositions until after the Court has ruled.

More generally, PerkinElmer believes that it has been severely and irreparably prejudiced by the manner in which Enzo has conducted expert discovery thus far. In its January 24, 2014 Order, the Court permitted Enzo to conduct a third-party deposition of Amersham relating to damages issues. That deposition was taken on February 5, 2014. All other adjournment requests were explicitly denied and the parties were directed to otherwise adhere to the schedule set forth in the Court's Order dated November 11, 2013. Accordingly, the last aspect of factual discovery, the third-party deposition of Amersham, was completed two weeks ago.[2] For the

---

[1] This would be the first extension with respect to the close of expert discovery, and the second extension relating to expert discovery overall. The Court previously granted Enzo two additional business days to file its opening expert reports.

[2] We are aware that the Court has permitted some limited discovery with respect to MPI. Such discovery will not have any meaningful impact on the issue of damages given the very small amount of sales made by PerkinElmer to MPI. In addition, Enzo intends to submit a letter today that will outline a discovery dispute it wishes to present to

WILMERHALE

reasons set forth in PerkinElmer's February 2, 2014 letter to the Court, there is no basis for Dr. Bell to supplement his report. But even if Enzo could somehow justify a limited supplementation based on the Amersham deposition, there is no conceivable reason why, after *two weeks*, no such supplementation has occurred.

Less than a month before trial, PerkinElmer has not been told which customers, products, sales, and/or transactions are alleged to violate the Agreement.[3] And with no actual calculations or quantified damages figures to respond to, Mr. Hutchins' rebuttal report is necessarily limited to a critique of the partial methodology that Dr. Bell claims he will use at some point in the future to actually calculate damages. As a result, the purpose of the exchange of expert reports has been frustrated with respect to these claims. In addition, pursuant to the pre-trial schedule, PerkinElmer has been put in the extremely unfair position of having to identify trial witnesses, designate deposition testimony and provide an exhibit list while left completely in the dark as to which customers, products, sales, and/or transactions (in Enzo's view) violated the Agreement and, more generally what Enzo's claims for damages may be. The agreed-upon pre-trial schedule, which was ordered by the Court, was designed to allow the parties to ascertain the parameters of the other sides' case in order to properly prepare for trial. Enzo's unilateral decision to ignore this schedule has made this impossible with respect to the research use, kit, and "custom" claims for which Enzo has yet to provide any meaningful or substantive expert report on damages.

Respectfully submitted,


By: /s/ Robert J. Gunther, Jr.

Robert J. Gunther, Jr.
WILMERHALE LLP
250 Greenwich Street
New York, NY 10007
T: 212-230-8830
robert.gunther@wilmerhale.com


cc: Counsel of Record

---

the Court. For the reasons set forth in that joint letter, in addition to being without merit, the information sought by Enzo offers no excuse for the complete failure of Enzo to file a meaningful expert report.

[3] Enzo concedes that Dr. Bell's report does not include any of this information with respect to three out of four of its breach of contract claims, and that he has not offered any opinion on the amount of damages recoverable on those claims at trial. *See* February 5, 2013 Letter from Jeffrey R. Mann to the Court at 2.



Jeffrey R. Mann
Tel (212) 801-2111
Fax (212) 224-6125
mannj@gtlaw.com

February 23, 2014

**BY E-MAIL** (sullivannysdchambers@nysd.uscourts.gov)

Honorable Richard J. Sullivan
United States District Court, S.D.N.Y.
500 Pearl St., Room 615
New York, NY 10007

Re: *Enzo Biochem, Inc. et al. v. PerkinElmer, Inc. et al.*, No. 03 Civ. 3817 (RJS)

Dear Judge Sullivan:

    We write in response to Mr. Gunther's February 21, 2014 letter (sent at 11:14 p.m.) seeking, among other things, "the Court's guidance," pursuant to the Court's Individual Practices, Rule 2.D.

    PerkinElmer's procedurally improper letter is an obvious attempt to distract the Court from PerkinElmer's own wrongdoing, as detailed in the joint letter sent to the Court twenty minutes before PerkinElmer's letter. That joint letter described PerkinElmer's egregious breach of its discovery obligations through its effective destruction in either 2007 or 2012 of its enterprise resource planning system (the "ERP"), containing financial, manufacturing, and distribution information relevant to this case, well beyond commencement of this action and after the cut-off of merits discovery in this and the related cases consolidated for discovery. Understanding the gravity of its misconduct, PerkinElmer now submits its own letter, inappropriately rearguing its prior demand that the Court preclude Enzo from supplementing Dr. Gregory Bell's report, and asking for "guidance." Ironically, although Dr. Bell must supplement his report due to PerkinElmer's wrongdoing, PerkinElmer now seeks to benefit from its wrongdoing by precluding Dr. Bell's supplemental report. The Court has already denied PerkinElmer's premature attempt to strike Dr. Bell's supplemental report. PerkinElmer's more recent letter deserves the same response.

    Preliminarily, PerkinElmer's letter – submitted "pursuant to Section 2.D of the Court's Individual Practices," which contains Your Honor's rules for sending courtesy copies of pleadings and motion papers to the Court, is procedurally improper because it concerns discovery disputes. As it is not a joint letter, and because the parties have not met and conferred about PerkinElmer's concern that it cannot adequately depose Dr. Bell, it violates Rule 2.G of the Court's Individual Practices. Just as the Court responded to Mr. Gunther's November 12, 2013 letter in the *Roche Diagnostics GmbH et al. v. Enzo Biochem, et al.* action (Case No. 1:04-cv-04046), this letter should be disregarded as well. *See* Dkt. No. 130 ("Although the above request is styled as a motion to seek clarification of the Court's September 12 and September 19 Orders, the underlying issue is a dispute over the scope of discovery relating to Enzo's breach of contract claims. Because this discovery dispute is not raised in compliance with the Court's Individual Practices, Rule 2.G, the Court will take no action with respect to Defendants' request."); *see also* Dkt. No. 130 ("should the parties wish to raise another discovery dispute with the Court, rather than

ALBANY
AMSTERDAM
ATLANTA
AUSTIN
BOSTON
CHICAGO
DALLAS
DELAWARE
DENVER
FORT LAUDERDALE
HOUSTON
LAS VEGAS
LONDON·
LOS ANGELES
MEXICO CITY+
MIAMI
MILAN~
NEW JERSEY
NEW YORK
ORANGE COUNTY
ORLANDO
PALM BEACH COUNTY
PHILADELPHIA
PHOENIX
ROME~
SACRAMENTO
SAN FRANCISCO
SEOUL∞
SHANGHAI
SILICON VALLEY
TALLAHASSEE
TAMPA
TEL AVIV^
TYSONS CORNER
WARSAW~
WASHINGTON D.C.
WHITE PLAINS

GREENBERG TRAURIG, LLP ■ ATTORNEYS AT LAW ■ WWW.GTLAW.COM
MetLife Building, 200 Park Avenue ■ New York, New York 10166 ■ Tel 212.801.9200 ■ Fax 212.801.6400

merely setting forth a litany of complaints, they shall each propose specific Court action to resolve the dispute at issue"). Indeed, PerkinElmer's issues with deposing Dr. Bell are a complete surprise to Enzo.

PerkinElmer's letter also inappropriately seeks to lay blame on Enzo for the delay of expert depositions, when PerkinElmer was in fact the first party to admit that its expert witness could not be deposed within the time provided by the scheduling order (PerkinElmer's letter acknowledges that it "offered Mr. Berneman for deposition on February 25"). Enzo believed that the parties had cooperatively worked to resolve timing issues for their expert depositions without burdening the Court. Now PerkinElmer congratulates itself for "accommodat[ing] Enzo's witnesses and counsel," implicitly blames Enzo, and inconveniences the Court by alerting it to already-resolved issues.

In truth, the original scheduling order contemplated one week for expert depositions after PerkinElmer's experts filed their reports. That time was compressed to three days when PerkinElmer was granted an additional two days to file its rebuttal reports. That time was compressed further when PerkinElmer served all three of its lengthy reports (going far beyond merely rebutting Enzo's experts) at 2:15 a.m. Scheduling conflicts in planning to depose six non-New York resident experts were inevitable, especially given that there were only 70 hours between when PerkinElmer served its (purported) rebuttal reports and the deposition deadline.[1]

PerkinElmer also complains that the upcoming depositions of Dr. Bell and Mr. Hutchins, PerkinElmer's damages expert, will be "a largely wasted exercise given the incomplete nature of Dr. Bell's report." First, Dr. Bell anticipates filing a supplemental report prior to his deposition. Second, Dr. Bell's report does not include his "partial methodology," as PerkinElmer states; it includes his entire methodology. PerkinElmer is free to depose Dr. Bell on any aspect of that methodology. Mr. Hutchins managed to file a 61-page expert report critiquing Dr. Bell's methodology; surely PerkinElmer can adequately depose Dr. Bell with the benefit of that report. Moreover, should PerkinElmer desire to file a *Daubert* motion against Dr. Bell, the only relevant topics for his deposition have already been addressed by Dr. Bell: his principles and methodology, not his final damages amount. *See Daubert v. Merrell Dow Pharmas., Inc.*, 509 U.S. 579, 595 (1993) ("The focus" of a *Daubert* motion, "of course, must be solely on principles and methodology, not on the conclusions that they generate.").

PerkinElmer finally claims to have been prejudiced in expert discovery thus far. PerkinElmer fails to note, though, that it was the cause of any prejudice it allegedly suffered. PerkinElmer, and no one else, is responsible for the loss of its ERP, and the invoices, manufacturing and distribution information contained therein. Its actions – taken in this midst of this very litigation, and, significantly, after merits discovery and prior to damages discovery – made producing manufacturing costs prior to 2002 impossible. Its actions made producing its

---

[1] Enzo's experts are located in Massachusetts, California and Michigan, while PerkinElmer's are located in Pennsylvania, Georgia, and, it appears, Massachusetts. The parties have agreed, with one limited exception, to depose the experts in New York, but that still creates scheduling conflicts because the experts must have sufficient travel time to appear in New York.

pre-2003 invoices (plainly relevant to proving its improper sale of ersatz kits) impossible. PerkinElmer was under a duty, foundational to the discovery process, to preserve the ERP, and it should be sanctioned accordingly. *See* February 21, 2014 Joint Letter. Moreover, Dr. Bell's need to supplement his report is a direct result of PerkinElmer's misconduct.

Dr. Bell's supplementation will address the amount PerkinElmer owes Enzo for Enzo's lost profits.[2] That analysis, however, was made immensely more difficult due to PerkinElmer's refusal or inability to identify at least 25% of the products it sold (identified only as "custom" products). The invoice, manufacturing and inventory information on the now-lost ERP could have identified some of the "custom" product sales. And it was not until mid-January that PerkinElmer finally produced 600 custom quotations, which we have used to identify 184 sales out of the over 3,000 custom sales identified by PerkinElmer.[3] The remainder of the custom quotations were either lost or destroyed; Ms. Mayer, PerkinElmer's 30(b)(6) witness, testified that "a custom quote sheet [was] prepared for every sale of a custom product." *See* Ex. 5 to the February 21, 2014 Joint Letter at 108:24-109:6.

Incredibly, PerkinElmer destroyed its ERP and could not produce additional custom quotations despite being on notice since Enzo's December 23, 2002 First Set of Requests for the Production of Documents that Enzo required information about its custom products. *See* Exhibit 1, requesting "All documents and things concerning 'custom labeled PRODUCTS' as set forth in paragraph 5 of the NEN Distributorship Agreement," (Request No. 23) and "[a]ll documents and things concerning the decision to develop 'custom labeled PRODUCTS' as set forth in paragraph 5 of the NEN Distributorship Agreement, including without limitation documents and things concerning evaluations of the market for 'custom labeled PRODUCTS.'" (Request No. 27). The custom products have been in dispute in this litigation from the beginning. PerkinElmer's destruction of the ERP and failure to produce additional custom quotations is inexcusable; PerkinElmer's new claim of prejudice – arising from its own actions – is absurd.[4]

The Court should take no action in response to PerkinElmer's letter. In response to the Joint Letter, the Court should grant Enzo an adverse inference, preclude presentation of contrary evidence by PerkinElmer (including precluded PerkinElmer from arguing that any custom sale made on the same date and to the same entity that purchased Biotin-11-CTP was not a sale of Biotin-16-UTP for use in an ersatz kit, and that Enzo improperly calculated its lost profits relating to custom sales), or otherwise fashion an appropriate remedy as a sanction for the spoliation, such striking PerkinElmer's Answer or disgorgement of revenues less manufacturing costs.

---

[2] The supplemental report will also address PerkinElmer's profits, which has been made more difficult because the ERP contained PerkinElmer's manufacturing costs prior to 2002.

[3] *After* Dr. Bell submitted his expert report, PerkinElmer produced an additional spreadsheet identifying the product sold in only some of its 2003-2004 "custom" sales.

[4] PerkinElmer also claims that it is prejudiced by Enzo's alleged failure to identify the "which customers, products, sales and/or transactions (in Enzo's view) violated the Agreement." This, though, was the subject of fact discovery (and the summary judgment briefing and decision). Moreover, Dr. Bell is not being offered for his opinion on "which customers, products, sales and/or transactions (in Enzo's view) violated the Agreement."

Honorable Richard J. Sullivan
February 23, 2014
Page 4

---

Respectfully submitted,

/s/ Jeffrey R. Mann
GREENBERG TRAURIG, LLP
200 Park Ave.
New York, New York 10010

cc: Counsel of Record