# GT GreenbergTraurig

Jeffrey R. Mann
Tel (212) 801-2111
Fax (212) 224-6125
mannj@gtlaw.com

February 27, 2014

**BY E-MAIL (sullivannysdchambers@nysd.uscourts.gov)**

Honorable Richard J. Sullivan
United States District Court, S.D.N.Y.
500 Pearl Street, Room 615
New York, New York 10007

Re: **Enzo Biochem, Inc., et ano. v. PerkinElmer, Inc., et ano., 03 Civ. 3817 (RJS)**

Dear Judge Sullivan:

I write pursuant to Section 2.A. of the Court's Individual Practices, in connection with your Honor's Order filed February 26, 2014, deeming made and then denying a motion by Enzo to compel PerkinElmer to produce certain material believed by Enzo to be critical to the presentation of its breach of contract claims against PerkinElmer or, alternatively, for sanctions.

In the Order, your Honor notes, in passing, that the submission of the parties was "at times confusing," and base the decision to deny Enzo's motion, at least in part, upon the conclusions that Enzo's application for relief was made too late and sought documents PerkinElmer does not have in its possession.

To the extent that our request for relief was unclear, I, of course, am to blame and apologize to the Court. However, because Section 2.G. of the Court's Individual Practices limits the parties' presentation to a total of five pages, and the issues in this instance were complicated and somewhat opaque, clear exposition of those issues was challenging.

As to the substance of what Enzo was seeking, Enzo is <u>not</u> seeking production of documents that either PerkinElmer does not now have and may never have had. Rather it was seeking production of or access to a data base of information that does exist, but was knowingly and intentionally "taken down" by PerkinElmer during the pendency of this case; perhaps as recently as 2012. PerkinElmer claims that software needed to access the data base is not now available to it.

Counsel to Enzo, who have been requesting the information contained in the data base since 2002 and who renewed its request for this information at the outset of damages discovery in November 2013, did not learn of PerkinElmer's actions until January 25, 2014, in a deposition of a PerkinElmer 30(b)(6) witness. Thereafter, for nearly one month, we worked with counsel to PerkinElmer to find alternative methods of obtaining

Honorable Richard J. Sullivan
February 27, 2014
Page 2

---

the data from other sources within PerkinElmer's possession or control. That proved to be unavailing. During that time, PerkinElmer finally produced documents called Custom Quotation Sheets that purported to give information concerning the sale of custom products. Those documents were closely examined and it was discovered that of more than 3,000 transactions in which these custom products were sold,, only 185 could be matched to customers in the PerkinElmer sales spreadsheet previously produced to Enzo in discovery. On January 31, PerkinElmer produced further data for the period 2003-2005, but containing only 1102 transactions of which only 449 transactions could be matched. Despite working with counsel for weeks after learning of the loss of the information Enzo requested, Enzo's damages expert still has no way to identify the custom products sold to customers in nearly 3,000 transactions and, therefore, cannot calculate Enzo's lost profits therefrom.

When it finally became clear that the required information was not to be made available, we prepared the Enzo portion of the February 21 letter to you Honor and sent it to counsel for PerkinElmer on Monday, February 17, 2014. Because of the federal holiday on that date and, presumably, because of the press of other pretrial proceedings, we did not receive the PerkinElmer portion of the joint letter until about 8:00 pm Friday, February 21. The letter was then finalized and sent to your Honor on that date.[1] Thus, it was not because of lack of effort or concern that it took from January 25, 2014, when we first learned of the spoliation, to February 21, when we sent the joint letter to your Honor. The time period was solely a function of trying to obtain relevant data from PerkinElmer without burdening the Court with yet another dispute during the hectic pretrial period.

Even at this late date, on the eve of trial, Enzo submits that it wishes to file a motion seeking to remedy the prejudice it has suffered as a direct result of PerkinElmer's purposeful loss of the information that relates to at least 25% of the sales of Enzo Products made by PerkinElmer during the term of the Distributorship Agreement. Enzo is prepared to file its motion on an expedited basis. As a result of PerkinElmer's loss of its ERP data, PerkinElmer is unable to produce standard information routinely maintained by businesses. Enzo is prejudiced thereby because the absence of the data impairs Enzo's ability to fully prove its damages arising from the breach of the Distributorship Agreement by PerkinElmer.

Respectfully submitted,

*Jeffrey R. Mann*
Jeffrey R. Mann

cc: Robert Gunther, Esq.
    Omar Khan, Esq.

---

[1] A few hours later, counsel to PerkinElmer wrote to the Court seeking "guidance" concerning the report of Enzo's damages expert, Dr. Bell, making it clear that PerkinElmer intends to take advantage of its failure to produce necessary information to Enzo by attempting to strike any supplemental report of Dr. Bell that has been substantially delayed materially as a direct result of PerkinElmer's actions.