UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| ENZO BIOCHEM, INC. and<br>ENZO LIFE SCIENCES, INC.,<br><br>     Plaintiffs,<br><br>v.<br><br>PERKINELMER, INC. and<br>PERKINELMER LIFE SCIENCES, INC.,<br><br>     Defendants,<br><br>and YALE UNIVERSITY,<br><br>     Nominal Defendant. | No. 03-CV-3817 (RJS)<br><br>**FILED UNDER SEAL** |

**MEMORANDUM OF LAW IN SUPPORT OF ENZO'S MOTION
*IN LIMINE* NO. 1 TO PRECLUDE EVIDENCE OR ARGUMENT
CONCERNING NON-INFRINGEMENT, COVERAGE BY A CLAIM, OR INVALIDITY**

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

FACTUAL BACKGROUND ..................................................................................................3

    A.    The Integrated Agreements....................................................................3

    B.    PerkinElmer's Course of Performance and Conduct ..............................6

    C.    PerkinElmer's Admissions in This Litigation.........................................6

    D.    PerkinElmer's Abandonment of Argument about the Interpretation of "PRODUCTS" ......................................................................................9

ARGUMENT .......................................................................................................................10

I.    ARGUMENT AND EVIDENCE REGARDING THE INTERPRETATION OF "PRODUCTS," CLAIM COVERAGE, OR INVALIDITY OF THE LISTED PATENTS, ARE IRRELEVANT GIVEN THE PLAIN AND UNAMBIGUOUS CONTRACT LANGUAGE AND PERKINELMER'S CONDUCT AND WAIVER.........................................................................................................10

    A.    Applicable Principles of Contract Interpretation ...................................11

    B.    Given Its Stipulations of Infringement and Validity, any Argument or Evidence by PerkinElmer in Support of Its Construction of "PRODUCTS" Would be Contrary to the Principles of Contract of Interpretation and Therefore Irrelevant ..........................................................................11

II.    ANY ARGUMENT OR EVIDENCE IN SUPPORT OF PERKINELMER'S CONSTRUCTION OF "PRODUCTS," WHICH WOULD REQUIRE DELVING INTO ISSUES OF INFRINGEMENT AND INVALIDITY, WOULD BE UNDULY PREJUDICIAL, CONFUSING TO THE JURY, AND WASTE TIME .........17

III.    CONCLUSION.......................................................................................19

## TABLE OF AUTHORITIES

Cases

*Advanced Card Technologies LLC v. Versatile Card Technology, Inc.*,
410 F. Supp. 2d 158 (S.D.N.Y. 2006)..................................................................15

*In re Altman*,
265 B.R. 652 (Bankr. D. Conn. 2001) ..............................................................16

*Blue Cross and Blue Shield of New Jersey, Inc. v. Philip Morris, Inc.*,
141 F. Supp. 2d 320 (E.D.N.Y. 2001) ...............................................................18

*C.P. Apparel Mfg. Corp. v. Microfibres, Inc.*,
210 F. Supp. 2d 272 (S.D.N.Y. 2000).................................................................13

*Dar El-Bina Eng'g & Contracting Co. v. Republic of Iraq*,
79 F. Supp. 2d 374 (S.D.N.Y. 2000)...................................................................14

*In re Delta Airlines, Inc.*,
608 F.3d 139 (2d Cir. 2010)................................................................................13

*Enzo Biochem, Inc. v. Applera Corp.*,
599 F.3d 1325 (Fed. Cir. 2010)...........................................................................18

*ESPN, Inc. v. Office of the Commissioner of Baseball*,
76 F. Supp. 2d 383 (S.D.N.Y. 1999)...................................................................12

*FedEx TechConnect, Inc. v. OTI, Inc.*,
12 Civ. 1674 (RJS), 2013 WL 5405699 (S.D.N.Y. Sept. 23, 2013).....................16

*GE Capital Corp. v. Armadora, S.A.*,
37 F.3d 41 (2d Cir. 1994)...................................................................................15

*Greenfield v. Philles Records, Inc.*,
98 N.Y.2d 562 (2002) ..............................................................................10, 11

*Greycas, Inc. v. Proud*,
826 F.2d 1560 (7th Cir. 1987) ...........................................................................18

*LaSalle Bank Nat. Ass'n v. Nomura Asset Cap. Corp.*,
424 F.3d 195 (2d Cir. 2005)...............................................................................11

*Law Debenture Trust Co. of New York v. Maverick Tube Corp.*,
595 F.3d 458 (2d Cir. 2010)...........................................................................11, 12

*Mas-Hamilton Group v. LaGard, Inc.*,
156 F.3d 1206 (Fed. Cir. 1998)...........................................................................17

*Nipper v. Snipes*,
7 F.3d 415 (4th Cir. 1993) .................................................................................18

*Readco, Inc. v. Marine Midland Bank*,
81 F.3d 295 (2d Cir. 1996).................................................................................13

*Revson v. Claire's Store Inc.*,
   120 F. Supp. 2d 322 (S.D.N.Y. 2000)..................................................................................15

*Roche Diagnostics Operations, Inc. v. Abbott Diabetes Care*,
   756 F.Supp.2d 598 (D. Del. 2010)....................................................................................18

*Seiden Assoc's, Inc. v. ANC Holdings, Inc.*,
   959 F.2d 425 (2d Cir. 1992)..............................................................................................12

*Shaw Group, Inc. v. Triplefine Int'l Corp.*,
   322 F.3d 115 (2d Cir. 2003)..............................................................................................11

*Studiengesellschaft Kohle, M.B.H. v. Shell Oil Co.*,
   112 F.3d 1561 (Fed. Cir. 1997).........................................................................................15

*United States v. Apple Inc.*,
   No. 12 Civ. 2826(DLC), 2014 WL 171159 (S.D.N.Y. Jan. 16, 2014) ....................................16

## Rules

Fed. R. Evid. 401 ....................................................................................................................10

Fed. R. Evid. 402 ...........................................................................................................3, 10, 16

Fed. R. Evid. 403 ...........................................................................................................3, 17, 19

## INTRODUCTION

Plaintiffs Enzo Biochem, Inc. and Enzo Life Sciences, Inc. (collectively, "Enzo") respectfully move *in limine* for an order precluding Defendants PerkinElmer, Inc. and PerkinElmer Life Sciences, Inc. (collectively, "PerkinElmer" or, as appropriate, their predecessor-in-interest, NEN Life Science Products, Inc. ("NEN")) from introducing evidence or argument at trial that any product listed on Exhibit C to the Distributorship Agreement, including related custom products, is somehow not subject to Enzo's contract claims because that product does not infringe a valid patent listed in Exhibit A to the January 1, 1999 Distributorship Agreement.[1]   This motion *in limine* seeks to exclude any and all references, questions, statements, or proffers of evidence directed to these arguments or issues.

Pending potential appeal to the Federal Circuit of Judge Sprizzo's July 17, 2006 Claim Construction Order, (Dkt. No. 20), and associated summary judgment rulings by this Court, Enzo has elected to set aside its patent infringement causes of action and proceed solely on its claims that PE breached the Distributorship and Settlement Agreements with respect to products sold by PerkinElmer that were specifically identified on Exhibit C to the Agreement (the "Listed Products").[2]   Nonetheless, counsel for PerkinElmer has stated it will argue and introduce

---

[1] The parties executed the Distributorship Agreement and the Settlement Agreement on the same day.  As this Court held, "the Settlement Agreement and the Distribution Agreement should be read as one integrated contract."  (Dkt. No. 119 at 11).  For the Court's convenience, true and correct copies of the Distributorship Agreement and the Settlement Agreement are attached to the Declaration of Roy Taub in Support of Enzo's Motions *In Limine* ("Taub Decl.") as Exhibits 1 and 2, respectively.

[2] The Distributorship Agreement also provided that ███████████████████████████████████
███████████████████████████████████████████████████████████████ (*See* Taub Decl. Ex. 3 at 56:11-58:2; 224:21-225:10; 333:18-334:4; Ex. 4 at 41:16-42:4.)  Enzo therefore uses "Listed

evidence that certain Listed Products either do not infringe particular patents listed in Exhibit A to the Agreement (the "Listed Patents") or that certain Listed Patents are invalid and, therefore, any products claimed by Enzo to be covered by such patents are no longer subject to the Distributorship Agreement.  PerkinElmer will argue that the Distributorship Agreement, which expressly identifies "PRODUCTS" subject thereto as those listed in Exhibit C, is nevertheless conditioned on whether those listed products also are proved to infringe a claim of a valid Listed Patent.

But whether the Listed Products infringe (or, as the Distributorship Agreement actually provides, are covered by a claim of a patent), or whether particular Listed Patents are valid as a matter of patent law, is irrelevant to the purely contractual issues at trial.  The contract claims address whether PerkinElmer improperly sold or insufficiently paid Enzo on sales of those Listed Products.  Indeed, the integrated Settlement and Distributorship Agreements clearly and unambiguously provide that PerkinElmer agreed (1) the Listed Products were subject to the Agreement and its obligations, (2) the Listed Products infringed Enzo's patents, and (3) those patents are valid.  ██████████████████████████████████████████████ ██████████████████████████████  PerkinElmer entered into the Distributorship Agreement with its eyes wide open and agreed to be bound, regardless of whether the Listed Products infringed (or were covered by the claims of  Listed Patent) or not.  PerkinElmer's course of conduct and performance under the Distributorship Agreement – by which it treated Listed Products as subject thereto and, thus, paid Enzo on its sales thereof – and admissions in

Products" to also refer to the "custom products" for which PerkinElmer made payment to Enzo under the Agreement.  There are certain other custom products, such as Biotin 16, an indirectly detectable nucleotide, that are unquestionably covered by claims of Enzo's patents and for which PerkinElmer always paid transfer fees on sales, without dispute.

discovery to that effect indisputably confirm that understanding. PerkinElmer even conceded in summary judgment briefing that there is no dispute as to the construction of the term "PRODUCTS." (Dkt. No. 110, PerkinElmer's Reply Regarding Undisputed Facts in Supp. of Its Mot. for S.J., at 5 (Reply No. 2.))[3]

The Court should not permit PerkinElmer to renege on its agreement, conduct, admissions in discovery, *and* its abandonment of the position it now seeks to revive. Actual infringement and invalidity are simply not relevant to the contract claims, given the plain and unambiguous language of the integrated Agreements and PerkinElmer's equally clear conduct and stipulations. Moreover, the presentation of such evidence or arguments at trial would be unfairly prejudicial to Enzo, likely confuse the jury, and needlessly waste time. Accordingly, the Court should preclude PerkinElmer from making any such arguments or presenting any such evidence under Federal Rules of Evidence 402 and 403.

## FACTUAL BACKGROUND

### A.    The Integrated Agreements

Enzo and PerkinElmer entered into the Distributorship Agreement and related Settlement Agreement to resolve disputes over whether particular products made and sold by PerkinElmer were infringing one or more patents owned or exclusively licensed by Enzo, and to permit

---

[3] Thus, even the Court's prior rulings of patent non-infringement, (Dkt. No. 82), are immaterial for purposes of Enzo's breach of contract claim. Those rulings applied patent law and did not take into account PerkinElmer's agreement that particular products listed in Exhibit C were "PRODUCTS" for purposes of the Distributorship Agreement. Nor did it take into account PerkinElmer's stipulations of domination, infringement, and validity in the context of its performance under the contract. Such rulings therefore would not constitute the law of the case for purposes of Enzo's breach of contract claims.

PerkinElmer to make and sell those same products going forward.[4]  In the Settlement Agreement,



(Taub Decl. Ex. 2 at §§ 1-3.)

(*Id.* at § 4.)  The Settlement Agreement also

provides,

(*Id.*)

The Distributorship Agreement implemented these admissions into the framework for the

---

[4] (*See* Taub Decl. Ex. 1 at 1,

parties' new distributorship relationship.   The Distributorship Agreement provided ▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (Taub Decl. Ex. 1

at 1.)   The Distributorship Agreement then states ▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (*Id.* at

3, emphasis added.)

Other provisions of the Distributorship Agreement specified that ▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (*Id.* § 5.)   Exhibits B and C listed several labeled

nucleotide products, including the Listed Products at issue in this lawsuit.  (*Id.* at Exs. B and C.)

Indeed, PerkinElmer and Enzo further agreed that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

(*Id.* § 2.)

The Distributorship Agreement ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▮▮▮▮  (*Id.* §§ 1(g), 1(h), 13; *id.* at Ex. G.)

**B.    PerkinElmer's Course of Performance and Conduct**

Following execution of the Agreement, PerkinElmer conducted itself in a manner that shows it intended (and understood) the Listed Products to be subject to the terms of its Agreements with Enzo. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮  All of this conduct (and more) was required under the Distributorship Agreement, and would not have been required or likely undertaken in its absence. (*See id.* at § 6; Taub Decl. Ex. 6 at ¶¶ 5-6; Taub Decl. Ex. 7.)



**C.    PerkinElmer's Admissions in This Litigation**

PerkinElmer's statements in this litigation have confirmed that the Listed Products are subject to the Agreement and that PerkinElmer stipulated to the infringement and the validity of the Enzo Patents.  With respect to the issue of whether the Listed Products are subject to the terms of the Distributorship Agreement, PerkinElmer submitted a declaration stating that "[u]nder the Distributorship Agreement, NEN was entitled to distribute products listed on

6

Exhibit C of the Agreement." (Taub Decl. Ex. 9 at ¶ 7.)

Edward Levitt, NEN's General Counsel at the time, testified that "[t]he products listed in the distributorship agreement are the products that are the things that are defined as being product under the definition of product in the distributorship agreement." (Taub Decl. Ex. 10 at 128:15-129:4.) Mr. Levitt also testified that "the products covered by this agreement" "are in the schedules . . . ." (*Id.* at 52:2-6.) Moreover, he testified that "the stipulated definition" of "PRODUCTS" is "not only . . . the ones described in B and C, but as products that come within the scope of the Enzo patents that are listed in Exhibit A." (*Id.* at 129:8-13.) These admissions are dispositive of the issue. Indeed, Mr. Levitt's admission also means "PRODUCTS" includes custom products, the sales for which PerkinElmer paid Enzo transfer fees, included in the required quarterly reports, and inserted the required package inserts.







**D.   PerkinElmer's Abandonment of Argument
about the Interpretation of "PRODUCTS"**

Even in the face of this clear and unambiguous evidence (in the Distributorship

Agreement, PerkinElmer's conduct, and PerkinElmer's admissions) on the Listed Products being

subject to the Distributorship Agreement, PerkinElmer still moved for summary judgment on this

issue on Enzo's breach of contract claims.  PerkinElmer advanced two arguments as to how the

Listed Products are not subject to the Distributorship Agreement:



that is, the argument PerkinElmer

now intends to raise at trial.  (*See* Taub Decl. Ex. 11 at 11 n.10.)

Enzo addressed both arguments in opposition and, as relevant here, submitted a litany of

intrinsic and extrinsic evidence (including some of the above) to rebut PerkinElmer's alternative

contract interpretation argument and to show that, as a matter of law, "PRODUCTS" had a

single, unambiguous meaning that included all Listed Products.  (*See* Dkt. No. 110 at 2-5.)

In its reply, PerkinElmer dropped this alternative argument, and stated that "the extent to

which the Research Restrictions cover non-infringing products [*i.e.*, whether they are "PRODUCTS"] *is not raised by PerkinElmer's motion* except to the extent that, so construed, the provision is unenforceable as an unreasonable restraint of trade. . . . *The only contract interpretation issue* is whether the [Distributorship] Agreement prohibited all sales of products (*however defined*) to commercial customers." (*Id.*, emphases added.)[5]   PerkinElmer thus expressly abandoned any argument about the interpretation of "PRODUCTS."

## ARGUMENT

I.   **ARGUMENT AND EVIDENCE REGARDING THE INTERPRETATION OF "PRODUCTS," CLAIM COVERAGE, OR INVALIDITY OF THE LISTED PATENTS, ARE IRRELEVANT GIVEN THE PLAIN AND UNAMBIGUOUS CONTRACT LANGUAGE AND PERKINELMER'S CONDUCT AND WAIVER**

The Federal Rules of Evidence specify that "[e]vidence is relevant if . . . (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "Irrelevant evidence is not admissible." Fed. R. Evid. 402. Given the plain and unambiguous language in the Settlement and Distributorship Agreements – in which "PRODUCTS" is defined to include Listed Products, PerkinElmer agreed that its Listed Products infringed the Listed Patents, and the Listed Patents are valid – these issues are resolved as a matter of law under well-settled principles of contract interpretation. Any argument or evidence to the contrary would regard a "fact [not] of consequence in determining" Enzo's breach of contract claims, and, therefore, should be precluded as irrelevant.

---

[5] While the Court's summary judgment ruling on PerkinElmer's contract claims did not expressly address PerkinElmer's "unreasonable restraint of trade" defense/argument, the Court dispatched that defense at oral argument. (Dkt. 116, Sept. 27, 2013 Hr'g Tr. at 41:24-25 ("All right. I wasn't too sold on restraint of trade.")).

A.    **Applicable Principles of Contract Interpretation**

Under well-settled New York law, "[t]he fundamental, neutral precept of contract interpretation is that agreements are construed in accord with the parties' intent." *Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 569 (2002). "The best evidence of what parties to a written agreement intend is what they say in their writing"— that is, the text of the contract itself. *Greenfield*, 98 N.Y.2d at 569 (internal quotation omitted). *See also Law Debenture Trust Co. of New York v. Maverick Tube Corp.*, 595 F.3d 458, 467-68 (2d Cir. 2010). "Thus, a written agreement that is complete, clear and unambiguous on its face must be interpreted according to the plain meaning of its terms, without the aid of extrinsic evidence." *Id.* (brackets and internal quotations omitted). New York law also requires courts to give each word and phrase in a contract its plain meaning and avoid rendering the terms or provisions of a contract superfluous. *See, e.g., LaSalle Bank Nat. Ass'n v. Nomura Asset Cap. Corp.*, 424 F.3d 195, 206 (2d Cir. 2005); *Shaw Group, Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 121 (2d Cir. 2003).

B.    **Given Its Stipulations of Infringement and Validity, any Argument or Evidence by PerkinElmer in Support of Its Construction of "PRODUCTS" Would be Contrary to the Principles of Contract of Interpretation and Therefore Irrelevant**

Here, Enzo alleges that PerkinElmer breached the Distributorship Agreement by (1) selling Listed Products for improper (non-research or commercial) purposes, (2) improperly paying Enzo based on sales of those Listed Products, and (3) selling them in conjunction with other kit components to supplant Enzo's kits and avoid a resulting higher transfer price. (Dkt. No. 1 at ¶¶ 58(c), (d).) The Distributorship Agreement specifies the Listed Products in Exhibit C, and expressly provides ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮ (Section II.A, *supra*). PerkinElmer also agreed in the Settlement Agreement that

11

(Ex. 2 at §§ 1-4).

These understandings and agreements of PerkinElmer, of course, directly apply to the Distributorship Agreement because, as the Court held, "the Settlement Agreement and the Distribution Agreement should be read as one integrated contract." (Dkt. No. 119 at 11.)  These two sets of provisions must be read together.  *See, e.g., Law Debenture Trust*, 595 F.3d at 467 ("[W]here consideration of the contract as a whole will remove the ambiguity created by a particular clause, there is no ambiguity").  Accordingly, the term "PRODUCTS" unambiguously encompasses all Listed Products, an issue the Court can resolve as a matter of law.  *See Seiden Assoc's, Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 429 (2d Cir. 1992) ("Under New York law whether the language of a contract is unambiguous and, if so, what construction is proper, are legal questions[.]").

Thus, whether some subset of Listed Products is found not to infringe a subset of Listed Patents—years after the Listed Patents had expired and the Distributorship Agreement was terminated—is of no consequence to the determination of Enzo's breach of contract claims.  By entering into the Distributorship Agreement and the Settlement Agreement, and by ▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮ (*See* Section II.A., *supra.*)  Any argument or evidence

6 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

12

of an interpretation to the contrary, which is what PerkinElmer seeks to introduce, should therefore be precluded. *ESPN, Inc. v. Office of the Commissioner of Baseball*, 76 F. Supp. 2d 383, 403 (S.D.N.Y. 1999) (precluding argument and evidence of contract interpretation that would render provision superfluous and "violate[ ] basic principles of contract law").

███████████████

██████████████████

███████ (*see* Sections II.A. and II.C, *supra*), ███████████

██████████████████

██████████████████

██████████████████

███████████████

The express contract provision that ████████████████

████████████ (Taub Decl. Ex. 1), is unequivocal. Now, at trial of a breach of contract action, to require the parties to undertake an analysis to determine whether a Listed Product was a "PRODUCT," covered by a claim of a patent, and whether that patent is valid, would be an absurd result. ████████████████

████████████████ *See, e.g.*, *In re Delta Airlines, Inc.*, 608 F.3d 139, 146 (2d Cir. 2010) (directing courts to consider "the history and education of the parties, the nature of the contract, the purposes of the parties, and all other relevant circumstances."); *Readco, Inc. v. Marine Midland Bank*, 81 F.3d 295, 299 (2d Cir. 1996) ("no ambiguity exists where the alternative construction would be unreasonable."). Preclusion is therefore appropriate. *See, e.g.*, *C.P. Apparel Mfg. Corp. v. Microfibres, Inc.*, 210 F. Supp. 2d

272, 275-76 (S.D.N.Y. 2000) (precluding parol evidence to aid in interpretation of contract where interpretation was commercially unreasonable).[7]

While the intrinsic evidence is sufficient, to the extent it is germane, PerkinElmer's course of conduct and performance over the duration of the Distributorship Agreement is fully consistent (if not dispositive of) the parties' intent and agreement that *all* Listed Products were subject to the Agreement, regardless of a later finding of non-infringement. *See, e.g.*, *Dar El-Bina Eng'g & Contracting Co. v. Republic of Iraq*, 79 F. Supp. 2d 374, 384-85 (S.D.N.Y. 2000) ("There is a long line of New York case law endorsing the doctrine of practical construction and allowing courts to look to the parties' practical interpretations of a contract, as demonstrated by their conduct, in determining their intentions with regard to ambiguous contractual language.").[8] Surely PerkinElmer would not have ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ if it believed, as it now intends to argue, they were not subject to the Distributorship Agreement. ▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Taub Decl. Ex. 8 at 200078-79.)

That was a reference by PE to its express agreement in the Distributorship Agreement

---

[7] In any event, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*See* Taub Decl. Ex. 1 at 3.) Thus, at a minimum, the issue of patent validity is entirely irrelevant to Enzo's breach of contract claims.

[8] The "doctrine of practical construction" does not strictly apply here, given ▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮

that █████████████████████████████████████████████████

(Taub Decl. Ex. 1.) ████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████   █████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████[9]  For PE now to argue that the Exhibit C Products

are not covered by the Distributorship Agreement is more than disingenuous; ██████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████  Principles

of estoppel and waiver should therefore weigh in precluding any argument or evidence so

contrary to PerkinElmer's conduct. *See, e.g.*, *GE Capital Corp. v. Armadora, S.A.*, 37 F.3d 41

(2d Cir. 1994) (holding borrower's silence of a contrary interpretation of agreement estopped it

from challenging lender's interpretation of agreement).[10]

---

[9] ██████████████████████████████

[10] Indeed, although they now intend to argue the Listed Patents were not infringed and are invalid, Defendants are estopped from doing so under these circumstances. *See Advanced Card Technologies LLC v. Versatile Card Technology, Inc.*, 410 F. Supp. 2d 158 (S.D.N.Y. 2006);

One particular instance of PerkinElmer's conduct is its abandonment of this argument in the reply brief on its non-patent summary judgment motion. PerkinElmer's abandonment effected a waiver that precludes it from trying to revive this issue at trial. PerkinElmer affirmatively stated that the issue of contract interpretation of whether "non-infringing products" constitute "PRODUCTS" under the Distributorship Agreement "*is not raised by PerkinElmer's motion*," and "*[t]he only contract interpretation issue* is whether the [Distributorship] Agreement prohibited all sales of products (*however defined*) to commercial customers." (Dkt. No. 110 at 5, emphases added.) Were it not for PerkinElmer's abandonment of this argument in the face of Enzo's opposition, this issue could have been decided by the Court months ago. PerkinElmer cannot retreat on certain arguments and hope to spring them upon Enzo at trial. PerkinElmer's waiver of this argument, standing alone, should preclude its presentation at trial. *Cf., e.g., FedEx TechConnect, Inc. v. OTI, Inc.*, No. 12 Civ. 1674 (RJS), 2013 WL 5405699, *9 (S.D.N.Y. Sept. 23, 2013) (Sullivan, J.) (denying motion to vacate default judgment and holding defendant waived argument raised at oral argument about a related case where its reply brief "dismiss[ed] any relevance between that case and the present case"); *see also United States v. Apple Inc.*, No. 12 Civ. 2826(DLC), 2014 WL 171159, *15 (S.D.N.Y. Jan. 16, 2014) (finding arguments abandoned by party in its reply "need not be addressed any further"); *In re Altman*, 265 B.R. 652, 657 (Bankr. D. Conn. 2001) ("[A] party who raises an issue but fails to address it in subsequent papers or at oral argument may be deemed to have abandoned that issue.").

Thus, any arguments and evidence as to whether the Listed Products are subject to the Distributorship Agreement, whether they are covered by claims of a Listed Patent, and whether

*Revson v. Claire's Store Inc.*, 120 F. Supp. 2d 322, 326 (S.D.N.Y. 2000); *Studiengesellschaft Kohle, M.B.H. v. Shell Oil Co.*, 112 F.3d 1561 (Fed. Cir. 1997).

that Listed Patent is valid are irrelevant and should be excluded under Fed. R. Evid. 402.

## II. ANY ARGUMENT OR EVIDENCE IN SUPPORT OF PERKINELMER'S CONSTRUCTION OF "PRODUCTS," WHICH WOULD REQUIRE DELVING INTO ISSUES OF INFRINGEMENT AND INVALIDITY, WOULD BE UNDULY PREJUDICIAL, CONFUSING TO THE JURY, AND WASTE TIME

Moreover, evidence relating to the Listed Products being covered by the claims of a Listed Patent (or a greater showing of infringement) and patent validity would inevitably confuse the issues before the jury – particularly given PerkinElmer's clear admissions on infringement and validity – and result in needless delay. Under Federal Rule of Evidence 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

An analysis of whether a Listed Product is covered by claims of a Listed Patent likely would require the tedious presentation of scientific evidence regarding the nearly 200 Listed Products at issue. Such testimony would not be readily understandable to a lay juror, and its presentation would likely span several days, because the proof would require an element-by-element analysis comparing *each* of those Listed Products to *each* of the claims of the Listed Patents that Enzo would assert covers such products. *Cf., e.g.*, *Mas-Hamilton Group v. LaGard, Inc.*, 156 F.3d 1206, 1211 (Fed. Cir. 1998) ("To prove literal infringement, the patentee must show that the accused device contains every limitation in the asserted claims. . . . If even one limitation is missing or not met as claimed, there is no literal infringement."). The result would be a patent trial within a breach of contract trial, clearly a result not envisioned by the parties when they entered into the integrated Agreements (and, if anything, the exact opposite o f what they envisioned). These sorts of proceedings in the patent trial within the contract trial would

17

distract the jury from the proper focus that must be placed on the parties' intent as to the meaning of ambiguous contractual terms and performance under the Distributorship Agreement (*e.g.*, the purposes for which Listed Products were sold or the amounts that were paid).[11]

Finally, in this connection, any mention by PerkinElmer of any judicial opinions, findings, holdings, or other results with respect to the patents and products in this case or any other case would be especially prejudicial (and highly irrelevant). This would include claim construction rulings or summary judgment proceedings in either this Court or in the District of Connecticut, as well as the Federal Circuit's decision in *Enzo Biochem, Inc. v. Applera Corp.*, 599 F.3d 1325 (Fed. Cir. 2010). These rulings touched upon many topics, including other patents and products far afield from the issues properly before the jury, and have the additional prejudicial effect of having a judge's "imprimatur of authority" which jurors may improperly apply. *Accord, e.g., Roche Diagnostics Operations, Inc. v. Abbott Diabetes Care*, 756 F.Supp.2d 598, 604 (D. Del. 2010) (precluding evidence of court's prior judgment of infringement "because this evidence is irrelevant to the non-patent claims and unduly prejudicial"); *Blue Cross and Blue Shield of New Jersey, Inc. v. Philip Morris, Inc.*, 141 F. Supp. 2d 320, 325 (E.D.N.Y. 2001) (Weinstein, J.) ("a trial court should prevent outside judicial decisions from clouding jury findings"); *Nipper v. Snipes*, 7 F.3d 415, 418 (4th Cir. 1993) (explaining judicial findings "present a rare case where, by virtue of their having been made by a judge, they would likely be given undue weight by the jury, thus creating a serious danger of unfair prejudice."); *Greycas, Inc. v. Proud*, 826 F.2d 1560, 1567 (7th Cir. 1987) ("A practical reason for denying [judgments]

---

11

18

evidentiary effect is . . . the difficulty of weighing a judgment, . . . . [which] must be especially great for a jury, which is apt to give exaggerated weight to a judgment.").

For these reasons, all evidence and argument concerning non-infringement of the Listed Patents by PerkinElmer's Listed Products, even if deemed relevant, should be excluded under Fed. R. Evid. 403.

**III.  CONCLUSION**

For the foregoing reasons, Enzo respectfully requests that this Court grant its motion *in limine* and preclude PerkinElmer from referring to alleged or actual non-infringement by any Listed Product or invalidity of any Enzo patent at trial, including by making any and all references, questions, statement, or proffers of evidence directed to these arguments.

Dated: March 4, 2014

GREENBERG TRAURIG, LLP

By: _____

Ronald Lefton (LeftonR@gtlaw.com)
Jeffrey Mann (MannJ@gtlaw.com)
John Elliott (ElliottJ@gtlaw.com)
Justin MacLean (MacLeanJ@gtlaw.com)
Roy Taub (TaubR@gtlaw.com)

200 Park Avenue
New York, New York 10166
(212) 801-9200

*Attorneys for Plaintiffs Enzo Biochem, Inc.
and Enzo Life Sciences, Inc.*