UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ENZO BIOCHEM, INC. and ENZO LIFE SCIENCES, INC.,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>PERKINELMER, INC. and PERKINELMER LIFE SCIENCES, INC.,<br><br>　　　　　　Defendants. | 03 Civ. 3817 (RJS) |

**REPLY IN SUPPORT OF PERKINELMER'S MOTIONS *IN LIMINE***

## TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................................1

ARGUMENT ........................................................................................................................2

    I.    MOTION IN LIMINE NO. 1: DISGORGEMENT AND UNJUST ENRICHMENT ........................................................................................2

    II.    MOTION IN LIMINE NO. 2: SALES TO AMERSHAM .....................................4

    III.    MOTIONS IN LIMINE NOS. 3-4: ENZO'S BULK SALE AND KIT CLAIMS ..........................................................................................5

    IV.    MOTION IN LIMINE NO. 5: LOST PROFITS ......................................................6

    V.    MOTION IN LIMINE NO. 6: SETTLEMENT AGREEMENT .............................7

    VI.    MOTION IN LIMINE NO. 7: NULL AND VOID STIPULATIONS .....................8

    VII.    MOTION IN LIMINE NO. 8: THIRD-PARTY DISCOVERY ..............................9

## TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASE**

*Argus Inc. v. Eastman Kodak Co.*,
   801 F.2d 38 (2d Cir. 1986) ..................................................................................................... 6

*Bausch & Lomb Inc. v. Bressler*,
   977 F.2d 720 (2d Cir. 1992) ................................................................................................... 3

*In re MTBE Prods Liab. Litig.*,
   No. MDL 1358 (SAS), 2014 WL 494522 (S.D.N.Y. Feb. 6, 2014) ........................................ 6

*Lauson v. Stop-N-Go Foods, Inc.*,
   133 F.R.D. 92 (W.D.N.Y. 1990) .......................................................................................... 10

*Lexington Prods. Ltd. v. B.D. Commc'ns, Inc.*,
   677 F.2d 251 (2d Cir. 1982) ................................................................................................... 3

*Nosal v. Granite Park LLC*,
   269 F.R.D. 284 (S.D.N.Y. 2010) ............................................................................................ 9

*Point Prods. A.G. v. Sony Music Entm't, Inc.*,
   No. 93 Civ. 4001(NRB), 2002 WL 31856951 (S.D.N.Y. Dec. 19, 2002) .............................. 6

*Reprosystem, B.V. v. SCM Corp.*,
   522 F. Supp. 1257 (S.D.N.Y. 1981) ....................................................................................... 3

*Reprosystem, B.V. v. SCM Corp.*,
   727 F.2d 257 (2d Cir. 1984) ................................................................................................... 3

*U.S. Naval Inst. v. Charter Commc'ns, Inc.*,
   936 F.2d 692 (2d Cir. 1991) ................................................................................................... 3

**RULES**

Federal Rule of Civil Procedure 30(b)(6) ...................................................................................... 9

Federal Rule of Evidence Rule 408 ............................................................................................... 8

Federal Rule of Evidence 804(b)(1)(B) ....................................................................................... 10

**OTHER AUTHORITIES**

Williston on Contracts § 64:2 (4th ed. 2013) ................................................................................. 3

**INTRODUCTION**

After its ruling partially granting summary judgment, the Court may have expected the completion of damages discovery to be a relatively uncontroversial matter of determining the sales associated with the alleged breaches and calculating attendant damages. The problem for Enzo, however, was that the evidence developed during liability discovery could not sustain its "research use" and "kit" claims even under its interpretation of the Distributorship Agreement. Enzo thus embarked on a discovery campaign seeking ten-year old information from almost fifty third-parties, the fruits of which were entirely predictable. With few exceptions, Enzo obtained no information from the companies subpoenaed and, from those companies that Enzo did obtain discovery, it received nothing to fill in the gaps in its liability case.

Enzo then missed the date for submitting expert reports when it submitted a shell report from its damages expert, Dr. Gregory Bell, that did not disclose the damages it is seeking. The deficiency of Dr. Bell's initial report was not just its failure to quantify Enzo's damages claims. Because of the nature of Enzo's claims, it was the failure to identify the specific breaches for which Enzo seeks damages. Only upon the receipt of Dr. Bell's and Dr. Azarani's supplemental reports, submitted one month after the January 28 expert report deadline and less than two weeks from the scheduled trial, did Enzo reveal the sales of PerkinElmer that form the basis of its "research" and "kit" claims.

To add to the confusion, Enzo continues to pursue claims for which PerkinElmer has not had fair notice. To this day, precisely what claims Enzo seeks to pursue or what damages are associated with those claims is unclear. Judging from Enzo's exhibits and other submissions in the pre-trial order, this appears to be a deliberate tactic. Enzo wants a trial in which it is free to

1

contend that every act ever taken by PerkinElmer in connection with the Agreement constitutes a breach of contract, without regard to what claims Enzo has pled or what damages are sought.

Under these circumstances, PerkinElmer had no option but to file appropriate pre-trial motions. For the reasons stated in PerkinElmer's briefs, trial should be limited to Enzo's "discount" claim. First, as set forth in PerkinElmer's *Daubert* motions, the Court should preclude Enzo's experts from testifying about the "research use" and "kit" claims, because their reports were untimely and reflect unreliable expert testimony. Second, as discussed in its motions *in limine*, the Court should also preclude Enzo from continuing to pursue claims that were not timely raised.

## ARGUMENT

**I.    MOTION *IN LIMINE* NO. 1: DISGORGEMENT AND UNJUST ENRICHMENT**

Enzo does not dispute that it did not plead a cause of action for unjust enrichment.[1] Enzo tries to avoid this pleading failure by arguing that disgorgement or unjust enrichment are permissible measures of damages for breach of contract. This argument has been clearly and soundly rejected, and Enzo does not and cannot distinguish the cases proffered by PerkinElmer.

Enzo cannot seek disgorgement because it would be an improper punitive remedy for breach of contract. *See U.S. Naval Inst. v. Charter Commc'ns, Inc.*, 936 F.2d 692, 696 (2d Cir. 1991) (noting that under most circumstances, "an award of the defendant's profits . . . would tend to be punitive, and punitive awards are not part of the law of contract damages"). Enzo confuses the issue by citing to cases related to restitution and quasi-contract, neither of which justifies the "disgorgement" it seeks in this case. Restitution "seeks to compensate the plaintiff for the

---

[1] Typical of Enzo's style of argument, however, just two pages after conceding that it did not plead a claim for unjust enrichment, it confusingly speaks of "willful violations" of the Agreement that "exacerbate PE's unjust enrichment by virtue of its breaches of contract." Enzo Opp. at 3-4. Enzo does not explain (and does not cite any authority explaining) what it means in making these allegations.

2

reasonable value of any benefit it conferred on the defendant," Williston on Contracts § 64:2 (4th ed. 2013), as shown by the very case that Enzo cites, *see Bausch & Lomb Inc. v. Bressler*, 977 F.2d 720, 730 (2d Cir. 1992). But where, as here, a defendant sells its own products, made with its own know-how, "no benefit has been conferred, [and] there is nothing to disgorge from the defendant and return to the plaintiff." Williston § 64:2 n.27.

Enzo's citation to *Reprosystem, B.V. v. SCM Corp.*, 522 F. Supp. 1257 (S.D.N.Y. 1981), for the proposition that unjust enrichment is an appropriate remedy for breach of contract claims is seriously misplaced. First, that decision was *reversed* by the Second Circuit, which found that there was no enforceable contract, considered independently the *equitable* doctrine of unjust enrichment, and found "that claim to be without merit." *Reprosystem, B.V. v. SCM Corp.*, 727 F.2d 257, 263-64 (2d Cir. 1984). Second, the only reason the district court considered unjust enrichment damages was because plaintiff's own inability to perform under the contract foreclosed any action for compensatory damages as a matter of law. Here, there is an enforceable contract, and Enzo is able to seek compensatory damages. The testimony of Enzo's damages expert "that in the circumstances of this case, disgorgement is the measure of damages that makes the most economic sense," Enzo Opp. (Dkt. 203) at 4, is irrelevant because disgorgement is an impermissible remedy as a matter of law.[2]

---

[2] Enzo also quotes *Lexington Products Ltd. v. B.D. Communications, Inc.*, 677 F.2d 251 (2d Cir. 1982), for the proposition that courts should endeavor to make a "reasonable estimate of damages" "where a wrong has been done." Enzo Opp. at 3. This principle is only applicable "[w]hen it is certain that damages have been caused by a breach of contract, **and the only uncertainty is as to their amount**," a burden Enzo cannot discharge. *Lexington Prods.*, 677 F.2d at 253 (emphasis added). More importantly, however, the principle does not allow a party to estimate damages using a wholly improper measure of damages. In *Lexington Products*, the plaintiff was able to show it was entitled to expectation damages—restitution was not at issue in the case. *Id.* at 254. PerkinElmer's motion *in limine* is not directed to the manner in which disgorgement has been calculated but to the unrecoverability of such a measure of damages at all.

3

## II.     MOTION *IN LIMINE* NO. 2: SALES TO AMERSHAM

In its complaint, Enzo alleged that PerkinElmer breached the Agreement by "selling, using (by itself and in concert with others including Amersham . . . ) and/or distributing PRODUCTS for purposes, such as diagnostic or therapeutic use, or commercial development and exploitation[] . . . ." Compl. (Dkt. 1) at ¶ 58(c).  Consistent with the parties' positions over the ten-year pendency of the case, the Court ruled on summary judgment that the issue for trial was whether PerkinElmer breached the Agreement when its "buyers and sub-distributors used or sold Products for purposes tied to commerce."  2013-10-28 Summ. J. Order (Dkt. 119) at 4.

In its opposition, however, Enzo confirms that its current theory is not that Amersham used or sold products for diagnostic, therapeutic, or commercial uses (and that PerkinElmer is liable for these allegedly unauthorized sales).  Instead, Enzo argues that Amersham engaged in "unauthorized commercial exploitation (improper reselling) of Exhibit C Products."  Enzo Opp. at 6.  In other words, it is not who Amersham sold to or for what purposes but the act of "reselling" *per se* that now constitutes the allegedly wrongful conduct.

In an attempt to suggest this theory was pled, Enzo cites a single sentence from the complaint stating that "NEN has designated Amersham . . . as [an] authorized 'NEN Distributor[] . . . to disguise the fact that NEN is selling products to entities that are not engaged in research . . . ." *Id.* at 7-8 n.2.  Far from being consistent with Enzo's newly minted theory that Amersham is not a distributor, this sentence is one of many allegations in the Complaint that acknowledge that Amersham was a distributor of NEN.  *See* Compl. (Dkt. 1) at ¶¶ 26, 40-41, 52, 77(a).  Enzo does not cite to any other pleading from the twelve-year history of the case that even hints at its new theory.  Its responses to PerkinElmer's contention interrogatories asking Enzo to identify each breach of the Agreement do not even mention Amersham when describing Enzo's "research use" claim.  Khan Decl., Ex. 1, 2005-05-18 Resp. Interrog. No. 8 at 7.  And on

summary judgment, Enzo not only did not suggest the theory, it argued the exact opposite—*i.e.*, PerkinElmer was liable for any non-research sales by Amersham because Amersham (along with Orchid and MPI) "were PE's agents, appointed to 'act as a distributor of PRODUCTS for NEN' . . . , which give[s] rise to PE's vicarious liability for breach of contract." Enzo Opp. Mot. Summ. J. (Dkt. 104) at 14-15.[3]

### III.   MOTIONS *IN LIMINE* NOS. 3-4: ENZO'S BULK SALE AND KIT CLAIMS

Enzo does not dispute that it failed to plead its "bulk sale" or "kit" claims as presently argued. Enzo argues instead that these claims are encompassed by an apparently all-encompassing good faith and fair dealing claim, Enzo Opp. at 9, 11, but that claim was not pled either.

With regard to Enzo's "kit" claim, the complaint includes, and the summary judgment order only addressed, Enzo's claim that PerkinElmer breached the Agreement "by evading the higher price applicable to kits by selling components of kits minus the necessary PRODUCTS." Compl. (Dkt. 1) at ¶ 58(d)(ii). Enzo's cause of action has always been related to products that PerkinElmer itself sold. *See id.*; 2013-10-28 Mem. & Order (Dkt. 119) at 6. Enzo now tries to impose an obligation to remit payment for products sold by *other* companies.

With regard to its "bulk sales" claim, the complaint states that PerkinElmer breached by "failing to remit proper payment to Enzo for PRODUCTS it has sold," identifying only the "discount" claim and the "kit" claim. Compl. (Dkt. 1) at ¶ 58(d). Enzo cannot use good faith and fair dealing to "fill in the gap." Enzo had notice of bulk sales for nine years and never sought to amend its complaint. Unlike the "kit" claim (involving PerkinElmer's kits) that the

---

[3] The only evidence Enzo cites in an attempt to defend the merits of the theory other than the Agreement itself is the deposition testimony of Amersham's witness, Sian Godwin. Ms. Godwin's testimony was taken, at Enzo's insistence, on February 5, 2014, days after damages discovery was to be completed and nearly a year after the close of liability discovery.

5

Court has permitted Enzo to pursue based on a "good faith" theory, the complaint gave no notice whatsoever of any claim that is similar to the "bulk sales" claim Enzo now seeks to add to the case.

## IV.     MOTION *IN LIMINE* NO. 5: LOST PROFITS

Enzo does not dispute that it failed to disclose a theory of lost profits during discovery as required by the scheduling order and that it only did so two weeks before the close of discovery. Enzo's last-minute disclosure was improper. *See Argus Inc. v. Eastman Kodak Co.*, 801 F.2d 38, 41 (2d Cir. 1986) (plaintiff "abandoned any claim of damages for loss of [product] sales" where lost profits theory as to that product was not disclosed in plaintiff's statement of "damages theories and contentions"); *In re MTBE Prods Liab. Litig.*, No. MDL 1358 (SAS), 2014 WL 494522, at *3 (S.D.N.Y. Feb. 6, 2014) (precluding plaintiffs from pursuing liability theory not disclosed in contention interrogatory responses); *Point Prods. A.G. v. Sony Music Entm't, Inc.*, No. 93 Civ. 4001(NRB), 2002 WL 31856951, at *1-6 (S.D.N.Y. Dec. 19, 2002) (precluding new damages theory added during plaintiff's "eleventh hour change of heart").

Enzo asserts that because its complaint mentions "lost profits," its omission during damages discovery should be overlooked. *See* Enzo Opp. at 4-5. But Enzo's complaint, of course, contains many theories of damages that are not at issue. This was the entire reason for the parties' exchange in November—to identify the theories at issue to "allow PE to determine what discovery, if any, it needs to respond to Enzo's damages case." 2013-11-12 Endorsed Letter (Dkt. 121) at 1. Given this clear purpose, PerkinElmer reasonably concluded that Enzo's

6

non-disclosure of a lost profits theory (either for breach of contract or for patent infringement) meant that it had abandoned that theory.[4]

## V.     MOTION *IN LIMINE* NO. 6: SETTLEMENT AGREEMENT

Enzo argues that the Settlement Agreement is admissible because it and the Distributorship Agreement are an integrated agreement that "infuse meaning into each other." Enzo Opp. at 15. But this is just rhetoric. The only issues of contract interpretation for the jury are the meaning of the research use restrictions and the incentive discount provisions. Enzo has not articulated any way in which the Settlement Agreement informs the meaning of either or how it is relevant to any other material issue.[5]

Enzo is also incorrect that it still has a claim for breach of the Settlement Agreement. As noted in PerkinElmer's opening brief, PerkinElmer did not move on this claim on summary judgment because Enzo did not articulate any breach of the Settlement Agreement in its interrogatory responses or in its summary judgment briefing. Incredibly, Enzo *still* does not

---

[4] Enzo accuses PerkinElmer of "spinning" because it served discovery requests that were relevant to Enzo's now-abandoned patent reasonable royalty theory but also relevant to lost profits. Enzo Opp. at 5-6. As a result, PerkinElmer has received *some* discovery related to lost profits, but it had no notice of Enzo's lost profits claim until two weeks before the discovery cut-off date, five weeks after such notice had to be given. As with Enzo's belated expert reports, PerkinElmer has coped with this late disclosure as best it can, but the prejudice of Enzo's persistent disregard of the pre-trial schedule cannot be so easily dismissed. Enzo's delay has kept PerkinElmer continually off balance, forcing PerkinElmer to conduct discovery, select experts and prepare for trial unsure about what claims Enzo intends to pursue.

[5] To the extent the question of what products are covered by the Agreement is submitted to the jury, Enzo's assertion that the stipulations related to infringement and validity are relevant is insufficient reason to admit the Settlement Agreement because those stipulations were rendered null and void by the termination of the Distributorship Agreement, as discussed below.

7

articulate any such breach, nor has it articulated any claim for damages.[6]  Accordingly, Enzo has failed to establish the "other reason" under Rule 408 that would make the Agreement admissible.

### VI. MOTION *IN LIMINE* NO. 7: NULL AND VOID STIPULATIONS

Enzo asserts that termination of the Distributorship Agreement would only render the stipulations on which it seeks to rely inoperative on a going-forward basis, but would not affect their effectiveness during the period that the Agreement was in force.  *Id.* at 18.  But in fact, the language of the stipulations makes clear that upon termination of the Distributorship Agreement, the stipulations "will be rendered null and void *from the EFFECTIVE DATE of th[e] AGREEMENT*."  1999-01-01 Distr. Agrmnt. (Dkt. 175-1) at ¶ 15 (emphasis added).  Contrary to Enzo's assertion, this means that when the Agreement was terminated, the stipulations by their terms became null and void as of the beginning of the contract; that is, they are null and void *nunc pro tunc*.  Enzo's assertions to the contrary do not acknowledge this crucial language.  As explained by PerkinElmer's then-general counsel, this language meant that if and when the Agreement was terminated, the parties would be returned to their original position when the Agreement was executed, with PerkinElmer disputing both patent validity and infringement.  That is the only reason PerkinElmer agreed to the stipulations in the first place.  Khan Decl., Ex. 2, Mar. 1, 2007 Edward Levitt Dep. Tr. at 111:20-113:18, 114:8-20, 136:22-137:19.[7]

---

[6] The claim suggested by the complaint is to use best efforts not to infringe Enzo's patents.  By stipulating to dismiss its remaining patent claims, Enzo's has abandoned the underlying claim for infringement, which is the predicate for the alleged contractual violation.

[7] Enzo's suggestion that the these provisions "would render the Settlement Agreement (if not also the Distributorship Agreement) illusory for lack of consideration" is truly frivolous.  Enzo Opp. at 18.  PerkinElmer paid Enzo hundreds of thousands of dollars under the Settlement Agreement and millions of dollars under the Distributorship Agreement.  To ignore the express terms of the Agreement and permit the stipulations to be used against PerkinElmer would be to deprive PerkinElmer of provisions for which it expressly bargained.

## VII.    MOTION *IN LIMINE* NO. 8: THIRD-PARTY DISCOVERY

Enzo does not dispute the dispositive issue with respect to third-party discovery: it did not produce the documents listed in PerkinElmer's motion. Failure to produce these documents in response to a discovery request renders them improper. *See Nosal v. Granite Park LLC*, 269 F.R.D. 284, 290 (S.D.N.Y. 2010) (excluding from trial documents and things not produced).

Nor is Enzo's consolidation argument valid. Enzo sued multiple defendants and now argues that every document it received in each of these cases can be used in any other. Such unrestricted discovery was not anticipated by Judge Sprizzo's consolidation order. In fact, Judge Sprizzo made clear during the hearing on which the consolidation order is based that his primary purpose for consolidating the cases for discovery purposes was to avoid duplicative and burdensome Rule 30(b)(6) depositions of nominal plaintiff Yale University. *See* Khan Decl., Ex. 3, 2004-11-12 Hr'g Tr. (Dkt. 17) at 16:16-23 ("[E]verybody who has discovery for Yale, on all issues, do it once with whatever witnesses are required, and whatever that is can be worked out among yourselves. That seems fair to me.").[8] At no point did Judge Sprizzo suggest that documents should be produced across cases. The defendants in the various cases here are competitors and were defending against patent infringement claims brought by Enzo against products that competed in the marketplace. In addition, requiring that documents from one case be produced in another case would violate the intent of the separate protective orders in the cases. *See* 2006-08-04 Prot. Order (Dkt. 200-18) at ¶ 2 ("Confidential Information of the

---

[8] *See also id.* at 9:8-9 ("My only interest is to avoid duplicative discovery."), 22:18-19 ("I mean if not consolidating it is going to lead to duplicative discovery, I will consolidate it right now."), 23:20-23 ("So, I don't see any reason why [Yale] should be deposed more than once. If you can make a strong showing at some point that there is an urgent need for another deposition, I will consider that application."), 28:12-13 ("I don't think anybody should be subject to multiple depositions.").

9

disclosing party shall be used by the receiving party solely for purposes of *this action*." (emphasis added)).

With respect to third-party deposition testimony from other cases, PerkinElmer did not have notice that Enzo intended to use depositions from one case in another,[9] and the testimony derived therefrom is inadmissible hearsay because the participating defendants did not have a "similar motive to develop [the testimony]." Fed. R. Evid. 804(b)(1)(B).

Dated: New York, New York
       March 11, 2014

WILMER CUTLER PICKERING
  HALE AND DORR LLP

By:  */s/ Robert J. Gunther, Jr.*
     Robert J. Gunther, Jr.
     Omar Khan
     7 World Trade Center
     250 Greenwich Street
     New York, NY 10007
     T: (212) 230-8800
     F: (212) 230-8888

     William G. McElwain
     Joshua L. Stern
     1875 Pennsylvania Avenue, NW
     Washington, DC 20006
     T: (202) 663-6000
     F: (202) 663-6363

*Attorneys for Defendants, PerkinElmer, Inc. and PerkinElmer Life Sciences, Inc.*

---

[9] The five deposition notices that Enzo includes as exhibits are directed to other parties and not PerkinElmer. The fact of service denoted by the certificates of service notwithstanding, the only noticed party was the individual defendant at issue. For the remaining two depositions, PerkinElmer received only copies of the defendants' responses and objections. This does not constitute the notice that Enzo was required to give in writing under the Federal Rules. *Cf. Lauson v. Stop-N-Go Foods, Inc.*, 133 F.R.D. 92, 94 (W.D.N.Y. 1990) (knowledge of deposition not sufficient where party taking deposition did not give written notice).