**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------

|  |  |  |
|---|---|---|
| ENZO BIOCHEM, INC. and | x : | |
| ENZO LIFE SCIENCES, INC. | : | |
|  | : | |
| Plaintiffs, | : | |
| v. | : | No. 03-CV-3817 (RJS) |
|  | : | |
| PERKINELMER, INC. and | : | |
| PERKINELMER LIFE SCIENCES, INC., | : | |
|  | : | |
| Defendants. | : | |
|  | : | |
|  | x | |

------------------------------------------------------------


**PLAINTIFFS ENZO BIOCHEM, INC. AND ENZO LIFE SCIENCES,**
**INC.'S REPLY IN FURTHER SUPPORT OF THEIR MOTION TO EXCLUDE**
**CERTAIN EXPERT TESTIMONY AND OPINIONS OF DR. LOUIS P. BERNEMAN**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ..............................................................................................................................2

    I.      DR. BERNEMAN'S TESTIMONY REGARDING THE TERM
           "COMMERCIAL" VIOLATES BASIC CONTRACT LAW AND
           SHOULD BE PRECLUDED..............................................................................2

          A.    Contrary To PE's Argument, Dr. Berneman Drew No Distinction
                Between The "Commercial Terms" For The Purpose Of His
                Opinion ...........................................................................................3

          B.    PE's Rebranding Of Dr. Berneman's Opinion To Avoid His
                Violation Of A Fundamental Principle Of Contract Interpretation
                Fails.................................................................................................4

          C.    Dr. Berneman Offers No Proper Support For His Opinion That
                "Commercial" Means "Directly Tied To Generating A
                Commercial Return" .........................................................................8

    II.     DR. BERNEMAN'S TESTIMONY REGARDING THE "RESEARCH"
           TERMS CANNOT BE DIVORCED FROM THE DA'S COMMERCIAL
            TERMS, AND SHOULD BE PRECLUDED.........................................................9

    III.    PE WITHDRAWS DR. BERNEMAN'S "COVERED BY" OPINION ...............10

CONCLUSION...........................................................................................................................10

i

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
    303 F.3d 256 (2d Cir. 2002).......................................................................................6

*Gen. Elec. Co. v. Joiner*,
    522 U.S 136 (1997)................................................................................................5, 6

*LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*,
    424 F.3d 195 (2d Cir. 2005).................................................................................3, 5

*Law Debenture Trust Co. of New York v. Maverick Tube Corp.*,
    595 F.3d 458 (2d Cir. 2010).....................................................................................9

*Lawyers' Fund for Client Prot. of State of N.Y. v. Bank Leumi Trust Co. of N.Y.*,
    94 N.Y.2d 398 (2000)...........................................................................................3, 5

*United States v. Williams*,
    553 U.S. 285 (2008)..................................................................................................6

**Statutes**

35 U.S.C. § 271............................................................................................................10

**Other Authorities**

Fed. R. Evid. 702...................................................................................................1, 2, 5

## PRELIMINARY STATEMENT

PerkinElmer's ("PE") expert witness, Dr. Louis P. Berneman, opted in his report to treat as interchangeable and without regard to context three key terms of the Distributorship Agreement ("DA") between NEN and Enzo—"Commercial Development," "Commercial Exploitation," and "Commercial Use."  That treatment violates a fundamental principle of contract construction that meaning and effect be given to every word in an agreement.  Just as the jury cannot construe the DA in this manner, nor can they receive expert opinion advising them they should do so.  Recognizing that such an opinion cannot be helpful to a jury, and thus must be excluded under Federal Rule of Evidence 702, PE attempts to rework Dr. Berneman's opinion.  PE now claims for the first time in its Opposition (the "Opp'n") that Dr. Berneman only ever intended to opine on the adjective "commercial," and that his "focus" has never been on the words "use," "development," or "exploitation."   (Opp'n at 5–6.)   This new characterization, however, is not borne out by Dr. Berneman's report or his deposition testimony. In attempting to narrow Dr. Berneman's testimony in this manner, PE only traded one fatal flaw for another.  By now claiming Dr. Berneman focused on only *half* of each of the relevant terms, Dr. Berneman only exacerbates his violation of basic contract interpretation and makes his personal views utterly irrelevant.

PE also seeks to excuse Dr. Berneman's failure to apply the basic principle that every word in an agreement be given meaning by claiming he utilized a *different* maxim of contract interpretation pertaining to the use of nearby language to determine the meaning of an ambiguous "general" term in making his analysis.  (Opp'n at 6–7.)  But PE does not clarify how the use of this principle of contract interpretation makes Dr. Berneman's testimony admissible. Moreover, PE misapplies this maxim, which Dr. Berneman decidedly does not use in his

analysis.  PE's defense of Dr. Berneman's improper opinion only riddles it with more errors.

In addition, PE argues that Dr. Berneman's testimony regarding the "'research' terms" used in the DA (i.e., "Research Use," "Research Purpose," "Research Market," and "Research Field") should survive, even if the Court excludes his testimony regarding the terms "Commercial Use," "Commercial Development," and "Commercial Exploitation."  (*See* Opp'n at 9.)  However, because a jury will be unable to meaningfully interpret the "research terms"— which no one disputes encompasses basic and applied research—divorced from the all-important prohibitions on the "commercial terms" of the DA, any opinion by Dr. Berneman regarding the "research terms" in the absence of the "commercial terms" will be unhelpful to the jury, and must be precluded.

Finally, PE concedes Dr. Berneman's opinion on the meaning or custom or usage of "covered by" was improper rebuttal, and withdraws it from this case.  (Opp'n at 9–10.)  As previously noted, Enzo's expert Dr. David H. Sherman does not opine on the meaning or custom or usage of "covered by."  Instead, he opines that the manufacture, use, or sale of certain of the products at issues would be covered by the claims of an Enzo patent.

<u>**ARGUMENT**</u>

**I.     DR. BERNEMAN'S TESTIMONY REGARDING THE TERM "COMMERCIAL" VIOLATES BASIC CONTRACT LAW AND SHOULD BE PRECLUDED**

PE does not dispute that an expert opinion that violates a cardinal rule of contract construction is unhelpful to a jury, and thus inadmissible.  *See* Fed. R. Evid. 702(a), (c) (expert opinions that do not "help the trier of fact understand the evidence or . . . determine a fact in issue," or that are not "the product of reliable principles and methods" should be excluded).  The rule of contract construction at issue here, which PE never addresses, is that meaning must be given to each word and phrase in a contract to avoid rendering the terms or provisions of a

contract superfluous.  *See, e.g.*, *LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 206 (2d Cir. 2005); *Lawyers' Fund for Client Prot. of State of N.Y. v. Bank Leumi Trust Co. of N.Y.*, 94 N.Y.2d 398, 404 (2000).  Having realized that Dr. Berneman has submitted improper expert testimony by declining to draw any distinction between three key terms of the DA, PE attempts to re-cast his report.  But PE's rebranding of Dr. Berneman's report is incorrect, internally inconsistent, and insufficient to overcome the deficiencies in Dr. Berneman's analysis. Dr. Berneman's testimony regarding the terms "Commercial Development," "Commercial Exploitation," and "Commercial Use," should be excluded.

### A.   Contrary To PE's Argument, Dr. Berneman Drew No Distinction Between The "Commercial Terms" For The Purpose Of His Opinion

In response to Enzo's Opening Brief, PE does not dispute that the jury must interpret the DA to give meaning and effect to every word, and that an expert cannot present an opinion that would advise them to do otherwise, such as by offering a meaning of contract terms that violates this rule.  It asserts, though, that Dr. Berneman does not opine that the terms "commercial use," "commercial exploitation," and "commercial development" were "interchangeable."  (Opp'n at 7.)  Without denying that he ascribed the same meaning or custom and usage to them simply because they appear "serially," PE argues that Dr. Berneman treats the terms as "related" in "that they all [fall] within the general ambit of 'commercial activity' . . . ."  (*Id.*)  This is a distinction without a difference.  PE does not clarify how treating the terms as "related" somehow saves Dr. Berneman's analysis from being in violation of basic contract interpretation law.  Moreover, this is a distinction Dr. Berneman made abundantly clear he does not share.

Dr. Berneman's expert report, which he has made no attempt to correct or supplement, repeatedly treats the terms as interchangeable, and never specifies that he views the terms as merely related, nor does the report clarify what that would mean.  (*See* Decl. of Omar A. Khan in

Supp. of PerkinElmer's Opposition to Enzo's Mot. to Exclude Certain Expert Testimony and

Opinions of Dr. Louis P. Berneman Ex. 1 at ¶¶ 73–83, Mar. 7, 2014, Dkt. No. 195 ("Khan

Decl.").)  More critically, Dr. Berneman's deposition testimony makes clear he does not draw

any distinction between the terms "use," "development" and "exploitation" for the purpose of his

report:

> Q.    And in that same paragraph you talk about commercial use, commercial
> exploitation and commercial development; ***do you draw any distinction
> between those three terms***?
>
> A.    ***Not for the purposes of this analysis or my opinions on this matter***.
>
> *       *       *       *       *
>
> Q.    Commercial development is different than commercial exploitation?
>
> A.    ***Again, not for the purposes of my analysis here*** . . . .

(Decl. of Roy Taub in Supp. of Enzo's Reply in Further Supp. of Enzo's Mot. to Exclude Certain

Expert Testimony and Opinions of Dr. Louis P. Berneman, Ex. 1 at 145:23–146:3, 146:25–

147:3, Mar. 11, 2004 ("Taub Decl.")) (emphases added).

Failing to take into account the distinct meanings of the terms "research," "use" and

"exploitation" puts Dr. Berneman's report squarely at odds with basic contract interpretation law,

and prevents it from assisting a jury in any capacity.  (*See* Opening Br. at 11–15 (collecting

cases).)

**B.    PE's Rebranding Of Dr. Berneman's Opinion To Avoid His Violation Of A
Fundamental Principle Of Contract Interpretation Fails**

To avoid this flaw, PE argues in its Opposition for the first time that the "focus" of Dr.

Berneman's expert opinion is on the term "commercial," and not on the terms "use,"

"development," or "exploitation."  (Opp'n at 5–6).  PE recharacterizes Dr. Berneman's opinion

in this fashion in an attempt to render any differences between the three terms irrelevant for his

4

purposes and to moot the fact that he used the three terms interchangeably in violation of basic contract interpretation principles.  This recharacterization, however, is not supported by Dr. Berneman's report, which frequently refers to "use," "development," and "exploitation," with no indication that his "focus" is not on those terms.  For example, in his report, Dr. Berneman specifically states that part of his "assignment in this matter" was "to opine on how the terms Commercial **Use**, Commercial **Exploitation**, and Commercial **Development** were customarily used and understood by industry participants in the late 1990s and early 2000s," and that he "identified and reviewed materials related to the usage of ***these terms*** . . . ."  (Khan Decl. Ex. 1 at ¶ 73) (emphases added).

Moreover, PE's argument misses the point and only exacerbates his violation of basic contract interpretation law.  Dr. Berneman's focus *cannot* merely be on the word "commercial" in a vacuum and still pass muster under Rule 702.  Under well-settled New York contract interpretation law, meaning must be given to *each* word and phrase in a contract to avoid rendering the terms or provisions of a contract superfluous.  *See, e.g.*, *LaSalle Bank*, 424 F.3d at 206; *Lawyers' Fund*, 94 N.Y.2d at 404.  PE's assertion that Dr. Berneman can opine that "commercial" as used in the DA would be understood to mean "directly tied to generating a commercial return," without any consideration of the three distinct nouns each immediately following the word "commercial," (Opp'n at 6), leaves "too great an analytical gap between the data and the opinion proffered" for his opinion to survive.  *Gen. Elec. Co. v. Joiner*, 522 U.S 136, 146 (1997).

He cannot opine on the meaning of only half of a phrase—the adjective "commercial"— and suppose whatever noun that follows falls along a related "continuum."  This methodology constitutes little more than impermissible *ipse dixit*.  "[N]othing in either *Daubert* or the Federal

Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 266 (2d Cir. 2002) (quoting *Gen. Elec. Co.*, 522 U.S. at 146). For example, Dr. Berneman's newly-recharacterized approach would require finding—inconsistent with Dr. Berneman's conclusion, (Khan Decl. Ex. 1 at ¶ 73b)—that the term "commercial research" is research "directly tied to generating a commercial return," a concept that is generally understood by those in the life sciences industry to be "applied research." (Khan Decl. Ex. 3 at 7.) This one-size-fits-all approach to "commercial [fill in the blank]" is not helpful to the jury. Thus, PE's claim that Dr. Berneman did not "focus" on the terms "use," "development," or "exploitation" actually mitigates *against* the admission of his testimony, not for it.

In a futile attempt to afford Dr. Berneman's newly-recharacterized approach the patina of admissibility, PE asserts that Dr. Berneman's "interpretation of the 'commercial terms'" follows a *different* rule of contract interpretation under New York law: *noscitur a sociis*, which calls for the meaning of a "general term in a series" to be determined by "terms appearing in close proximity thereto." (Opp'n at 6.) PE is trying to place a square peg in a round hole. Dr. Berneman is not using the terms that surround the so-called "general" term "commercial" to help determine its meaning. (Opp'n at 6.) Rather, he is *excluding* the relevant surrounding terms "use," "development" and "exploitation," and applying his own meaning to only the word "commercial," in direct contradiction to contract interpretation law. This is far removed from an application of *noscitur a sociis*. *Compare United States v. Williams*, 553 U.S. 285, 294–95 (2008) (applying *noscitur a sociis* to a statute related to child pornography to find that the ambiguous term "[p]romotes," when used in a list that included "solicits," "distributes," and "advertises," was "most sensibly read to mean the act of recommending purported child

pornography to another person for his acquisition"). Moreover, despite PE's contention that Dr. Berneman's opinion "follows well-recognized rules of contract interpretation," (Opp'n at 6), PE does not explain how the use of one rule of contract interpretation in Dr. Berneman's opinion could excuse the fact that his opinion utterly ignores another.

Moreover, the term "commercial use" is not even used in a critical contract clause that restricts PE's use and sale of the Products, and informs the other provisions of the DA. Section 1(e) of the DA states the Products are not "to be used for diagnostic or therapeutic purposes, nor are the Products to be commercially developed or otherwise commercially exploited." (Khan Decl. Ex. 4 at § 1(e).) This is not a serial usage, but is instead an obvious counterpoint that the universe of commercial exploitation is broader than commercial development.

There is a further problem with the contrivance that Dr. Berneman applied *noscitur a sociis* to his analysis and examined the terms immediately surrounding the word "commercial" in the DA to determine the meaning of "commercial." This argument stands in direct contrast to PE's prior argument that Dr. Berneman "focus[ed]" *only* on the term "commercial," and *not* on the surrounding terms. (Opp'n at 5–6.) PE's attempts to defend Dr. Berneman are internally inconsistent and trip over themselves.

PE also claims that Enzo's expert, Dr. Arezou Azarani, did not "parse or explain the precise differences between 'use,' 'development,' and 'exploitation,' as Enzo argues Dr. Berneman should have." (Opp'n at 8.) This is incorrect. In stark contrast to Dr. Berneman, Dr. Azarani did not assume the three "commercial terms" had the same meaning and then take it upon herself to provide a definition of "commercial," untethered to the rest of the agreement and unsupported by evidence. Rather, Dr. Azarani provides a different type of opinion: she examines the distinction between applied and basic research, and then opines, based on the fact

that applied research has a commercial application, that people in the industry would have understood the DA's prohibitions on commercial use, commercial development, and commercial exploitation to exclude applied research.  (*See generally* Khan Decl. Ex. 3.)  Moreover, unlike Dr. Berneman, Dr. Azarani does not "focus" on only one, discrete term in the contract, (Opp'n at 5), but examines the entire relevant paragraph in the DA in giving her expert opinion as to how the provision would have been understood by those in the life sciences industry.

### C.    Dr. Berneman Offers No Proper Support For His Opinion That "Commercial" Means "Directly Tied To Generating A Commercial Return"

In an attempt to bolster Dr. Berneman's assertion that "commercial" as used in the DA would have been understood to mean "directly tied to generating a commercial return," regardless of context, PE points to Dr. Berneman's review of "approximately fifty licensing and technology transfer agreements relating to the types of products subject to the Distribution Agreement" as providing support for his assertion.  (Opp'n at 3–4.)  The basis for using these agreements as support for his position is that they did not "define or reference Commercial Use, Commercial Exploitation, or Commercial Development of a research tool as including use in a laboratory research activity that is not directly tied to generating a commercial return."  (Khan Decl. Ex. 1 at ¶ 79.)

This argument is logically flawed.  *First*, Dr. Berneman does not claim that a single contract he examined contained *any* definition for "Commercial Use," "Commercial Exploitation," or "Commercial Development," and Dr. Berneman certainly does not cite any such language.  (*See id.* at ¶ 79–80, Exs. 4, 5.)[1]  *Second*, even if they did, it is unclear how a

---

[1]  The only language Dr. Berneman cites from these agreements that even uses the term "commercial" are a definition for "Commercial Diagnostics Services," and a provision preventing a party from "commercially exploit[ing]" a product.  (Khan Decl. Ex. 1 at Ex. 5).  Neither aids in ascertaining the meaning of the commercial terms used in the DA.

handful of contracts—Dr. Berneman seemingly rejected 38 of the 50 and referenced only twelve of the contracts, (*id.* at Ex. 5)—could be used to assert that the term "commercial" would necessarily be interpreted in the DA to mean directly tried to generating a monetary return, regardless of the term's context.  Such a relatively small sample fails to present evidence of "trade usage . . . so well settled, so uniformly acted upon, and so long continued . . . . that the meaning of the term in question was general, uniform, and unvarying."  *Law Debenture Trust Co. of New York v. Maverick Tube Corp.*, 595 F.3d 458, 466 (2d Cir. 2010) (internal citations omitted).  *Third*, PE's new assertion that these agreements form the basis of Dr. Berneman's opinion contradicts Dr. Berneman's own statements that he merely used these agreements as a "market test" of his opinion (although at the time that was an opinion of the meaning of more than just the word "commercial").  (Taub Decl. Ex. 1 at 40:23–41:3.)[2]

## II.   DR. BERNEMAN'S TESTIMONY REGARDING THE "RESEARCH" TERMS CANNOT BE DIVORCED FROM THE DA'S COMMERCIAL TERMS, AND SHOULD BE PRECLUDED

PE also argues that even if the Court excludes Dr. Berneman's opinions regarding the meaning of the term "commercial" in the DA, there is no need for it to exclude his opinions related to the "research" terms.  PE contends this latter portion of his analysis is "in a separate section of his expert report" and "stand[s] on [its] own to assist the trier of fact in explaining the 'research' terms in the Distributorship Agreement."  (Opp'n at 9.)  On the contrary, however, it is not helpful to the jury for an expert to provide an opinion on a single, isolated portion of a

---

[2] Nor does Dr. Berneman ever explain how the NIH Guidelines or the AUTM Technology Transfer Practice Manual regarding the NIH Guidelines, both of which PE cites as support for Dr. Berneman's newly-recharacterized "commercial" opinion, support the meaning he ascribes to "commercial" such that they exclude use of the Products in applied research.  Indeed, Dr. Berneman conceded the NIH Guidelines were not applicable to the DA.  (Taub Decl. Ex 1 at 187:2–18.)  At most, the NIH Guidelines state that "research tools . . . can also be used for commercial applications . . . ."  (Khan Decl. Ex. 1 at ¶ 76).

contract provision.  The key issue in this case revolves around the use of the terms "commercial use," "commercial development," and "commercial exploitation" as used in the DA, including how those terms modify or qualify the "research use only" restriction.  An opinion regarding the "research" terms—which the parties acknowledge includes analyses of both "basic research" and "applied research"—if divorced from any discussion of the connected "commercial" terms, simply will be of no help to a trier of fact.  Thus, Dr. Berneman's testimony regarding the "research" terms must likewise be excluded.

## III.    PE WITHDRAWS DR. BERNEMAN'S "COVERED BY" OPINION

Finally, PE concedes Dr. Berneman's opinion on the meaning or custom or usage of "covered by" was improper rebuttal, and withdraws it.  This is because, unlike Dr. Berneman, Enzo's expert Dr. David H. Sherman does not opine on the meaning or custom or usage of "covered by."  (*See* Decl. of Justin A. MacLean Ex. 1 at ¶¶ 14, 54, March 7, 2014, Dkt. No. 199 ("MacLean Decl.").)  Instead, Dr. Sherman opines on "whether the manufacture, use, or sale of certain products made and sold by [PE] is covered by the claims of one or more patents listed in Exhibit A . . . to the January 1, 1999 Distributorship Agreement,"  (*Id.* at ¶ 1), an opinion as to which he will testify at trial.[3]

<u>**CONCLUSION**</u>

For the foregoing reasons, Enzo respectfully requests that the Court grant its motion to exclude certain expert testimony and opinions of Dr. Louis P. Berneman.

---

[3] Dr. Sherman does not seek to establish a legal claim of patent infringement under 35 U.S.C. § 271 or address invalidity, which is irrelevant.  Rather, he proceeds on the basis that the Products infringe on a claim of one or more of the Exhibit A patents as stated and that, so analyzed, they are covered by the claims of one or more of the Exhibit A patents.  (*See* MacLean Decl. Ex. 1 at ¶ 54.)

Dated:     New York, New York
           March 11, 2014

**GREENBERG TRAURIG, LLP**

By: ___/s/ Jeffrey R. Mann_____
Jeffrey R. Mann (MannJ@gtlaw.com)
Ronald D. Lefton (LeftonR@gtlaw.com)
Roy Taub (TaubR@gtlaw.com)
John J. Elliott (ElliottJ@gtlaw.com)
Justin MacLean (MacLeanJ@gtlaw.com)

200 Park Avenue
New York, New York 10166
(212) 801-9200

*Attorneys for Plaintiffs Enzo Biochem, Inc.*
*and Enzo Life Sciences, Inc.*