**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
ENZO BIOCHEM, INC. and                           :
ENZO LIFE SCIENCES, INC.                         :
              Plaintiffs,       :
           v.                                        :
                                        :   No. 03-CV-3817 (RJS)
PERKINELMER, INC. and                            :
PERKINELMER LIFE SCIENCES, INC.,                 :
              Defendants.       :
                                        :
------------------------------------------------------------------x

**PLAINTIFFS ENZO BIOCHEM, INC. AND ENZO LIFE SCIENCES,**
**INC.'S REPLY IN FURTHER SUPPORT OF THEIR MOTIONS *IN LIMINE***

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

ARGUMENT ..........................................................................................................................................1

    I.    ENZO'S MOTION *IN LIMINE* NO. 1 ........................................................................1

    II.    ENZO'S MOTION *IN LIMINE* NO. 2 ........................................................................6

    III.    ENZO'S MOTION *IN LIMINE* NO. 3 ......................................................................10

    IV.    ENZO'S MOTION *IN LIMINE* NO. 4 ......................................................................10

CONCLUSION ....................................................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re American Exp. Merchants' Litig.*,
 667 F.3d 204 (2d. Cir. 2012) ................................................................................................5

*Cardinal Chem. Co. v. Morton Int'l, Inc.*,
 508 U.S. 83 (1993)................................................................................................................2

*Eng v. Scully*,
 146 F.R.D. 74 (S.D.N.Y. 1993) ............................................................................................9

*Frolow v. Wilson Sporting Goods Co.*,
 710 F.3d 1303 (Fed. Cir. 2013)......................................................................................... 1-2

*Hickey v. Myers*,
 No. 09-CV-01307 (MAD/DEP), 2013 WL 2418252 (N.D.N.Y. June 3, 2013) ..................9

*Lipper Holdings, LLC v. Trident Holdings, LLC*,
 1 A.D.3d 170 (1st Dep't 2003) ............................................................................................3

*MedImmune, Inc. v. Genentech, Inc.*,
 549 U.S. 118 (2007)..............................................................................................................1

*Medtronic, Inc. v. Cardiac Pacemakers, Inc.*,
 721 F.3d 1563 (Fed. Cir. 1983)............................................................................................2

*Nipper v. Snipes*,
 7 F.3d 415 (4th Cir. 1993) ...................................................................................................7

*Outley v. City of New York*,
 837 F.2d 587 (2d Cir. 1988).................................................................................................9

*Pandrol USA, LP v. Airboss Railway Prods., Inc.*,
 320 F.3d 1354 (Fed. Cir. 2003)............................................................................................2

*United States v. Dupree*,
 706 F.3d 131 (2d Cir. 2013).................................................................................................6

*United States v. Mergen*,
 No. 12-2873-CR, 2013 WL 5857143 (2d Cir. Nov. 1, 2013)...............................................6

**Statutes**

35 U.S.C. § 271 ................................................................................................................................7

**Rules**
Fed. R. Evid. 402 ..................................................................................................................6, 7

Fed. R. Evid. 403 ..................................................................................................................6, 7

## ARGUMENT

I.     **ENZO'S MOTION *IN LIMINE* NO. 1**

PerkinElmer's ("PE") Opposition to Enzo's Motions *in Limine* (the "Opp'n") seeks to create an ambiguity where none exists. As PE notes, "PRODUCTS" is defined in the Distributorship Agreement ("DA") to

> mean[ ] an individual reagent or component, or a combination of reagents (kit) and/or any other components, the manufacture, use or sale of which is covered by one or more claims of an ENZO PATENT (EXHIBIT A). **PRODUCTS covered by this AGREEMENT are listed in EXHIBIT C and EXHIBIT B.** PRODUCTS may be added or deleted from EXHIBIT C or EXHIBIT B upon agreement of the parties.

(Decl. of Alena Benowich in Supp. of Enzo's Opp'ns to PE's Mots. *in Limine*, Ex. 2 at 3, Mar. 7, 2014 ("Benowich Decl.")) (emphasis added).

PE contends an issue of interpretation left for the jury is "how to reconcile the first two sentences of this definition." (Opp'n at 2). According to PE's artificial construct, the first two sentences above impose two separate preconditions for a product to be a "PRODUCT" subject to the DA: "a product must (1) infringe a valid patent *and* (2) appear on Exhibit C." (Opp'n at 4). These supposed dual conditions neither exist, nor is there ambiguity. *First*, the words "infringe a valid patent" are nowhere to be found. Nor can they be inferred from the very different phrase "covered by a claim of a patent." If the parties wanted to say "infringe," they could have done so. Indeed, they did in other provisions. (*See, e.g.*, Benowich Decl., Ex. 2 at §§ 3, 4, 9, 15, 17). If the parties wanted to say "a valid patent," they also could have said so. They purposely did not because the very purpose of the DA was to avoid that fight.[1]

---

[1] Nowhere does the DA require that the claims of the Enzo patents that cover a product be valid. This is in contrast with agreements discussed in other decisions. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 120 (2007) (limited to products covered by patents that "have neither expired nor been held invalid"); *Frolow v. Wilson Sporting Goods Co.*, 710 F.3d 1303,

*Second*, and here dispositive, there is simply no basis for reading the two sentences as a conjunction.  Nothing in the DA requires that *both* showings be made.  As the DA flatly states, "PRODUCTS covered by this Agreement are listed in EXHIBIT C and EXHIBIT B." (Benowich Decl., Ex. 2 at 3).  No conjunction is used.  There is, therefore, no need to engage in an analysis of whether a product is "covered by one or more claims of an ENZO PATENT" if it is listed on Exhibit C.  By so listing it, the parties had agreed it was a "PRODUCT" subject to the terms of the DA.  This is precisely what Edward Levitt, PE's former General Counsel and PE's admitted "chief negotiator" of the DA, (Opp'n at 8), repeatedly testified was his understanding.[2] PE inaccurately contends Mr. Levitt, in his testimony, "was merely repeating the language of the DA defining the term 'PRODUCTS,'" (Opp'n at 7 n.5), but that ignores the different formulations he stated to make the same point.

PE, though, asserts "the definition does not say that 'all' products on Exhibit C are subject to the Agreement . . . ." (Opp'n at 4).  PE's desperate attempt to create an ambiguity where none exists fails for three reasons.  *First*, no qualification as to "PRODUCTS" is present,

---

1306 (Fed. Cir. 2013) (similar).  PE's argument that invalidity necessarily defeats infringement, (Opp'n at 4 n.3), is thus misguided.  The concept of infringement does not apply, as discussed above.  Moreover, even if it does, "Supreme Court precedent and [the Federal Circuit's] cases make clear that patent infringement and patent validity are treated as separate issues." *Pandrol USA, LP v. Airboss Railway Prods., Inc.*, 320 F.3d 1354, 1364 (Fed. Cir. 2003) (citing *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83 (1993)). "Though an invalid claim cannot give rise to liability for infringement, whether it is infringed is an entirely separate question capable of determination without regard to its validity." *Id.* at 1365 (quoting *Medtronic, Inc. v. Cardiac Pacemakers, Inc.*, 721 F.3d 1563, 1583 (Fed. Cir. 1983)).

[2] (*See* Taub Decl., Mar. 4, 2014 (Dkt. No. 172), Ex. 10 at 128:15-129:4 ("The products listed in the DA are the products that are the things that are defined as being product under the definition of product in the DA."); *id.* at 52:2-6 ("the products covered by this agreement" "are in the schedules"); *id.* at 129:8-13 ("the stipulated definition" of "PRODUCTS" is "not only . . . the ones described in B and C, but as products that come within the scope of the Enzo patents that are listed in Exhibit A").

and there is no basis to insert the qualifier "some." In the absence of any qualification, the plain meaning of the provision is that all products listed on Exhibit C are covered by the DA. *Second*, PE contemporaneously stipulated in the Settlement Agreement that "[p]ast infringing sales include the sales of *any or all of the products listed in Exhibit C* to the DA between the parties." (Benowich Decl., Ex. 9 at § 4) (emphasis added). Thus, PE agreed, pursuant to its other stipulations, that "**all of the products listed in Exhibit C**" infringed a valid claim of an Enzo patent listed in Exhibit A, which would mean they are all covered by claims of an Enzo patent.[3] (*Id.*). *Third*, PE's interpretation that being listed is insufficient to constitute a "PRODUCT" – that not all listed products are "PRODUCTS" – necessarily supposes the parties agreed to list some products on Exhibit C even though they did not believe the products meet the "covered by one or more claims of an ENZO PATENT" definition. PE, of course, does not provide a rationale for why the parties would have made such a bizarre decision. PE asserts an absurd and commercially unreasonable reading that cannot be permitted. *Accord*, *e.g.*, *Lipper Holdings, LLC v. Trident Holdings, LLC*, 1 A.D.3d 170, 171 (1st Dep't 2003) ("A contract should not be interpreted to produce a result that is absurd, commercially unreasonable, or contrary to the reasonable expectations of the parties") (internal citations omitted).

Nor is there any basis for PE's "heads I win, tails you lose" construction of the Settlement Agreement such that its stipulations of patent dominance, infringement, and validity were effective only when they were not needed, that is, "so long as everybody is happy." (Opp'n at 5-9). The testimony of Mr. Levitt that if either party "wasn't happy," the stipulations "didn't exist anymore," (Khan Decl., Mar. 7, 2014 (Dkt. No. 192), Ex. 1 at 136:17-137:8), is remarkable testimony from an attorney. For the reasons set forth in Enzo's Memorandum of Law in

---

[3] This stipulation renders false PE's assertion that "[t]he only infringement stipulation made by PerkinElmer was that unspecified products infringed unspecified Enzo patents." (Opp'n at 5).

Opposition to PE's Motions *In Limine* (Dkt. No. 203) at 17-18, this reading misstates the plain meaning of the provisions, which render the stipulations null and void only with respect to post-term conduct, and would render the Settlement Agreement illusory for want of consideration. The only reasonable construction of these clauses, (Benowich Decl., Ex. 2 at § 15, Ex. 9 at § 10), is with regard to future claims of infringement after the lapse of the DA, not with regard to contract claims arising during the period of contract performance. When Mr. Levitt spoke about going back to the same disagreement prior to the DA and Settlement Agreement, he necessarily referred to the issues of patent infringement. It was not to insulate PE from breach of contract with regard to selling, specifically, listed Products.

Also unavailing is PE's revisionist account of its abandonment of any argument regarding contractual interpretation of "PRODUCTS." PE's summary judgment motion reply papers stated

> the extent to which the Research Restrictions cover non-infringing products [*i.e.*, whether they are "PRODUCTS"] ***is not raised by PerkinElmer's motion*** except to the extent that, so construed, the provision is unenforceable as an unreasonable restraint of trade. . . . ***The only contract interpretation issue*** is whether the [Distributorship] Agreement prohibited all sales of products (***however defined***) to commercial customers.

(Dkt. No. 110 at 5) (emphases added).

PE concedes this is the case, but argues it is entitled to pursue these issues at trial regardless. (*See* Opp'n at 10-11). It is unclear how PE can square its ability to resuscitate defenses long abandoned with its adamant insistence that Enzo be confined to positions articulated years ago prior to discovery.

This is particularly egregious in the case of PE's "restraint of trade" argument, which was never mentioned in the parties' jointly-submitted Pre-Trial Order and was already rejected by the Court. (*See* Dkt. No. 116 at 41:24-25 ("All right. I wasn't too sold on restraint of trade.")). Moreover, this antitrust defense necessarily depends upon expert opinion, of which PE has none

4

on this subject.[4]  The Court should hold PE to its abandonment of any issue of contractual interpretation, in particular on restraint of trade.

PE's final argument in opposition to Enzo's Motion *in Limine* No. 1 also fails. (Opp'n at 11-12.)  As stated in Enzo's opening papers, (Mem. at 9), the Agreement should be interpreted as a matter of law to include any and all products listed in Exhibit C to the Agreement and all custom products for which Enzo was paid, hence the need for this motion in limine.[5]  If the Court disagrees and requires (or finds that the jury may require) some proof that the manufacture or use of each product listed in Exhibit C is "covered by" one or more claims of an Enzo patent, there are still no claims of patent infringement, or invalidity left for the jury to decide – only that of patent "coverage," which, as explained in Enzo's Opposition to PE's Motion to Preclude Testimony of Dr. David Sherman, (Dkt. No. 194), is a broader analysis.[6]  It extends to claims asserted by any of Enzo's Patents listed in Exhibit A of the DA.  Contrary to PE's argument, the prior summary judgment ruling of infringement as to particular accused products under particular patents is not dispositive of "covered by a claim of a Patent" because it did not address other claims under other patents pursuant to the contract claims.  Thus, even if the "covered by" language is construed to require a showing of infringement, as there is no requirement in the DA

---

[4] *See, e.g.*, *In re American Exp. Merchants' Litig.*, 667 F.3d 204, 218 (2d. Cir. 2012) (refusing to enforce class action waiver in arbitration agreement because "expert economic study" of the nature of the market is required to successfully prosecute antitrust lawsuit, and "the only economically feasible means for plaintiffs enforcing their statutory rights is via a class action").

[5] PE avoids the issue of custom products for purposes of Enzo's Motion *in Limine* No. 1 by pretending to not understand, at this late stage, what they are. (*See* Opp'n at 4 n.2).  The Court should reject this lame evasion and find PE conceded the motion as to custom products.

[6] Should the Court conclude that certain expressly listed Exhibit C Products are nevertheless not subject to the DA, Enzo reserves its right to prove that PE breached its best efforts obligation not to infringe as agreed to in the Settlement Agreement.  Dr. Sherman's expert report goes to all these issues.  PE has not submitted any expert report with regard to whether particular products are covered by, or infringe, claims of Enzo's products.

of patent validity, and none in the law, none should apply at trial.  Thus, the Court should grant Enzo's Motion *in Limine* No. 1 in its entirety.

## II.  ENZO'S MOTION *IN LIMINE* NO. 2

PE's opposition relies on a straw man it then knocks down.  Enzo has never asserted nor "suggest[ed] that decisions related to dismissed claims are *per se* irrelevant" or unfairly prejudicial.  (Opp'n at 13 n.8).  As Enzo's Opening Brief explains, courts often hold such evidence inadmissible under Rules 402 and 403, and should here as well for the reasons set forth in the Opening Brief.  (*See* Dkt. No. 166).  With the exception of the Courts' summary judgment patent ruling, (Dkt. No. 82), PE has not raised any argument indicating how evidence of Enzo's prior claims or decisions on those claims in this case would be admissible under Federal Rules of Evidence 402 or 403.  Accordingly, Enzo's motion should be granted as to all other argument or evidence of Enzo's prior claims.[7]

Reference to the Court's summary judgment patent ruling should also be precluded.  PE fails to explain how a witness's knowledge of the Court's summary judgment patent rulings would be relevant to any claims remaining in this action.  PE singles out the testimony of Enzo's expert Dr. David H. Sherman as the only evidence that Enzo has put in issue that would "open the door" to PE's introduction of this Court's prior summary judgment ruling on patent

---

[7] PE's assertion that such evidence is not inadmissible hearsay if used for impeachment is also unavailing.  The cases cited by PE to illustrate non-hearsay purposes for which it asserts it would be entitled to introduce the Court's summary judgment rulings are inapposite and readily distinguishable.  *United States v. Mergen*, No. 12-2873-CR, 2013 WL 5857143 (2d Cir. Nov. 1, 2013), involved an FBI agent's prior inconsistent statement.  In *United States v. Dupree*, 706 F.3d 131 (2d Cir. 2013), the trial court's prior temporary restraining order against the defendant was admissible to show its effect on the defendant's state of mind.  Neither of these situations would apply to PE's introduction of the Court's summary judgment rulings.  In any event, to the extent PE seeks to use any such evidence for impeachment, Enzo reserves its rights to challenge such introduction as improper and to request that any such evidence be subject to sufficient limiting instructions to minimize the risks of juror confusion and unfair prejudice.

6

infringement. (*Id.* at 13.) PE, though, misapprehends the nature of Dr. Sherman's opinion. Dr. Sherman's testimony concerns whether certain products manufactured, used, or sold by PE are "covered by" claims of Enzo patents listed in the DA, as that term is used in the DA, not whether the products (as made, used, or sold by PE) infringe an Enzo patent under 35 U.S.C. § 271. (*See* Dkt. 194 at 4-10). There is no reason for PE to introduce evidence of the Court's summary judgment patent ruling because it is irrelevant to the contractual interpretation of the DA and the determination of "covered by" as a matter of contract interpretation for the contract claims at issue. (*See* Enzo's Mem. of Law In Support of Mot. *in Limine* No. 1 at 11-17). In other words, a product can be "covered by" the claim of an Enzo patent for purposes of the DA without infringing it as a matter of patent law – otherwise, the parties would have simply used the word "infringes." Moreover, the admission of this Court's prior ruling would carry the additional risk of prejudicial effect, as the jury might improperly decide the contract claims by improperly deferring to the Court's earlier decision on patent law issues. *See, e.g.*, *Nipper v. Snipes*, 7 F.3d 415, 418 (4th Cir. 1993) (explaining judicial findings "present a rare case where, by virtue of their having been made by a judge, they would likely be given undue weight by the jury, thus creating a serious danger of unfair prejudice.")

Contrary to PE's assertion, "Enzo does not "seek [to] have it both ways [by] asking the Court both to regard documents produced in other litigations as if they had been provided in this action and also to exclude the outcome of those actions." (Opp'n at 15 n.9). Enzo is simply seeking to make use of probative evidence available to it and to ensure that irrelevant or unfairly prejudicial materials are excluded, as is appropriate under Rules 402 and 403. PE's argument is disingenuous, claiming it will proceed only if Enzo opens the door (this is PE speak for a mere turning of the door knob). PE devotes over three pages detailing how it intends to use this

7

evidence against Enzo. (*See* Opp'n at 15-18). Specifically, PE cites three examples that it believes present a significant likelihood that Enzo will open the door to evidence of other actions. Clearly, PE intends to so proceed. Yet, none of PE's arguments with respect to these examples is availing.

*First*, PE asserts that testimony from employees of non-parties Amersham and Orchid would open the door for PE to "bring out the fact that Enzo unsuccessfully pursued litigation against Amersham and Orchid." (Opp'n at 15). PE's leap to that conclusion is illogical. It is irrelevant whether Enzo asserted claims against those PE sub-distributors or whether or not Enzo was successful on those claims. The Court's finding with respect to the lack of record evidence of Orchid's "malicious intent or improper means" related only to the tortious interference with business relations claim against Orchid. Enzo is not asserting any such claim against PE. More generally, although Enzo was not in contract privity with Orchid, it was with PE, and PE's obligations extend to its sub-distributors, including Orchid. Enzo's claim against Orchid is therefore irrelevant, but Orchid's conduct, which is probative of PE's breaches, is relevant.

Similarly, PE takes the Court's finding "that Enzo could not pursue claims that Amersham 'breached its obligations to [PE] of which Enzo was a third-party beneficiary,'" (Opp'n at 15), wildly out of context. The Court did not make a ruling on the merits of any third-party beneficiary claim, or even whether there was sufficient record evidence. Rather, the Court simply held that the claim was a "new" claim and that "Enzo [would] not be permitted to assert new claims based on new factual assertions that would effectively commence a new lawsuit." (*Enzo Biochem, Inc., et al. v. Amersham PLC, et al.*, Civ. No. 02-8448 (RJS), Dkt. No. 329 at 5-6). That is irrelevant to whether or not PE breached its direct obligations to Enzo.

Like Orchid, whether or not Amersham tortiously interfered with the DA is irrelevant to

8

any claims against PE.  Contrary to PE's unspecified accusation, nothing in these decisions establishes "facts directly contrary" to what Enzo "attempts to argue . . . ." (Opp'n at 16 n.10).  Therefore, PE should not be permitted to introduce such irrelevant and unfairly prejudicial evidence merely because witnesses at trial are or were employees of companies involved in other lawsuits with Enzo.

*Second*, PE asserts that because Enzo intends to call its Chairman and CEO, Dr. Elazar Rabbani, to testify at trial, PE should be permitted to "establish Enzo's conduct as a serial plaintiff." (Opp'n at 16.)  This is precisely the type of unfair prejudice that the Federal Rules of Evidence aim to prevent.  *See*, *e.g.*, *Outley v. City of New York*, 837 F.2d 587, 592 (2d Cir. 1988) (holding that "litigiousness is the sort of character trait with which Rule 404(b) is concerned" and that a charge of litigiousness is "a serious one, likely to result in undue prejudice against the party charged, unless the previous claims made by the party are shown to have been fraudulent"); *Hickey v. Myers*, No. 09-CV-01307 (MAD/DEP), 2013 WL 2418252, *4 (N.D.N.Y. June 3, 2013) ("It is well settled that it is improper for a court to admit evidence of prior lawsuits for the purpose of demonstrating that a plaintiff is a chronic litigant.") (internal quotations and citation omitted); *Eng v. Scully*, 146 F.R.D. 74, 79 (S.D.N.Y. 1993) (finding prior litigation history "would potentially unfairly prejudice the jury against Plaintiff by painting him as a litigious character who lacks validity").  PE well knows that Dr. Rabbani is Enzo's principal witness.  Dr. Rabbani's testimony with respect to the DA will bear on matters directly at issue in this case.  Whether Enzo was also involved in litigation regarding agreements with other distributors that Dr. Rabbani negotiated has no bearing on the current dispute with PE.  The extent to which Enzo has used litigation to protect its rights with respect to its patents and products and to enforce its agreements with other distributors is irrelevant, unfairly prejudicial, and would lead to an

unnecessary sideshow discussion of other lawsuits and the reasons why they were commenced.

*Third*, PE asserts that testimony by Dr. Gregory Bell on his lost profits calculations will open the door for PE to introduce the following evidence: (1) that a draft Enzo-Amersham agreement discussed in his report was never executed, (2) that other distributors later challenged the scope of their distributorship agreements, which agreements Dr. Bell discussed in his report, and (3) these agreements were ultimately litigated and resulted in this Court's summary judgment rulings. (Opp'n at 16-18.) Enzo does not seek to prevent PE from addressing whether these agreements were entered into. However, whether these agreements ultimately resulted in litigation between Enzo and third parties is plainly irrelevant to Dr. Bell's damages analysis. So too are the outcomes of those litigations. Thus, evidence of other lawsuits should be excluded because it is irrelevant, gratuitous, and offered only for its unfairly prejudicial effect.

### III.   ENZO'S MOTION *IN LIMINE* NO. 3

PE has not offered any reason why this motion should not be granted other than the statement of its present intention to introduce this evidence only if Enzo open the door, but all rulings *in limine* are subject to that condition. PE begs the question and offers no reason why the motion should not be granted. Therefore, the Court should grant this motion in its entirety.

### IV.   ENZO'S MOTION *IN LIMINE* NO. 4

PE agrees with Enzo that Dr. Rabbani's specific compensation is not admissible, but PE reserves the right to inquire into Dr. Rabbani's shareholding and ownership interest in Enzo as well as the method of determining his compensation. (Opp'n at 21). Enzo does not dispute that these general issues may be relevant and admissible, which is why Enzo's motion seeks only to exclude evidence of Dr. Rabbani's (actual or potential) specific compensation. Therefore, the Court should grant this motion *in limine* in its entirety.

## CONCLUSION

For the foregoing reasons, Enzo respectfully requests that the Court grant its Motions *in Limine* Nos. 1 through 4 in their entirety.

| | |
|---|---|
| Dated:  New York, New York<br>March 11, 2014 | **GREENBERG TRAURIG, LLP**<br><br>By: __/s/ Jeffrey R. Mann_____<br>Jeffrey R. Mann (MannJ@gtlaw.com)<br>Ronald D. Lefton (LeftonR@gtlaw.com)<br>Roy Taub (TaubR@gtlaw.com)<br>John J. Elliott (ElliottJ@gtlaw.com)<br>Justin MacLean (MacLeanJ@gtlaw.com)<br><br>200 Park Avenue<br>New York, New York 10166<br>(212) 801-9200<br><br>*Attorneys for Plaintiffs Enzo Biochem, Inc. and Enzo Life Sciences, Inc.* |