UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ENZO BIOCHEM, INC. and ENZO LIFE SCIENCES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> PERKINELMER, INC. and PERKINELMER LIFE SCIENCES, INC., <br><br> Defendants. | 03 Civ. 3817 (RJS) |

**REPLY IN SUPPORT OF PERKINELMER'S *DAUBERT* MOTION
TO PRECLUDE THE TESTIMONY OF DR. GREGORY BELL**

**TABLE OF CONTENTS**

I. DR. BELL'S SUPPLEMENTAL REPORT SHOULD BE STRICKEN ........................... 1

II. DR. BELL'S TESTIMONY SHOULD BE EXCLUDED UNDER FEDERAL
RULE OF EVIDENCE 702 AND *DAUBERT* ........................................................... 4

    A. Dr. Bell's "Research" Lost Profits Opinion Should Be Excluded .......................... 4

    B. Dr. Bell's Disgorgement/Unjust Enrichment Opinion Should Be Excluded .......... 8

    C. Dr. Bell's MicroMax "Kit" Claim Opinion Should Be Excluded .......................... 8

    D. Dr. Bell's T7 "Kit" Claim Opinion Should Be Excluded ....................................... 9

    E. Dr. Bell's Discount Claim Should be Excluded ..................................................... 9

III. DR. BELL SHOULD NOT BE PERMITTED TO TESTIFY REGARDING
"METHODOLOGIES" NOT TIED TO ANY OPINION ............................................... 10

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Agence Fr. Presse v. Morel*,
    293 F.R.D. 682 (S.D.N.Y. 2013) ...................................................................................3

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
    303 F.3d 256 (2d Cir. 2002)................................................................................. 4-5, 10

*Bausch & Lomb Inc. v. Bressler*,
    977 F.2d 720 (2d Cir. 1992)..........................................................................................7

*Buckley v. Deloitte & Touche USA LLP*,
    888 F. Supp. 2d 404 (S.D.N.Y. 2012).........................................................................6

*Design Strategy, Inc. v. Davis*,
    469 F.3d 284 (2d Cir. 2006)..................................................................................... 3-4

*Enzo Biochem, Inc. v. Amersham PLC*,
    No. 02-8448 (RJS) ........................................................................................................5

*Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*,
    314 F.3d 48 (2d Cir. 2002)................................................................................... 5, 8-9

*Franconero v. UMG Recordings, Inc.*,
    542 F. App'x 14 (2d Cir. 2013) ...................................................................................7

*Gen. Elec. Co. v. Joiner*,
    522 U.S. 136 (1997)....................................................................................................10

*Gomez v. Bicknell*,
    302 A.D.2d 107 (N.Y. App. Div. 2002) .....................................................................7

*Healing Power, Inc. v. Ace Continental Exps., Ltd.*,
    No. 07-CV-4175(NGG)(RLM), 2008 WL 4693246 (E.D.N.Y. 2008).....................8

*Ho Myung Moolsan, Co. v. Manitou Mineral Water*, *Inc.*,
    No. 07 Civ. 07483(RJH), 2010 WL 4892646 (S.D.N.Y. Dec. 2, 2010) ...............5, 9

*Johnson Elec. N. Am. Inc. v. Mabuchi Motor Am. Corp.*,
    103 F. Supp. 2d 268 (S.D.N.Y. 2000).........................................................................5

*Kidder, Peabody & Co. v. IAG Int'l Acceptance Grp. N.V.*,
    28 F. Supp. 2d 126 (S.D.N.Y. 1998)...........................................................................7

*Lidle v. Cirrus Design Corp.*,
   No. 08 Civ. 1253(BSJ)(HBP), 2009 WL 4907201 (S.D.N.Y. Dec. 18, 2009) ..........................3

*Malletier v. Dooney & Bourke, Inc.*,
   525 F. Supp. 2d 558 (S.D.N.Y. 2007)......................................................................................4

*Mapinfo Corp. v. Spatial Re-Eng'g Consultants*,
   No. 02-CV-1008 DRH, 2006 WL 2811816 (N.D.N.Y. Sept. 28, 2006) ..................................5

*Meterlogic, Inc. v. KLT, Inc.*,
   368 F.3d 1017 (8th Cir. 2004) .................................................................................................6

*MTX Commc'ns Corp. v. LDDS/WorldCom, Inc.*,
   132 F. Supp. 2d 289 (S.D.N.Y. 2001)......................................................................................5

*Point Prods. A.G. v. Sony Music Entm't, Inc.*,
   No. 93 Civ. 4001(NRB), 2004 WL 345551 (S.D.N.Y. Feb. 23, 2004) ...............................6, 10

*Sandata Techs., Inc. v. Infocrossing, Inc.*,
   No. 05 Civ. 09546(LMM)(THK), 2007 WL 4157163 (S.D.N.Y. Nov. 16, 2007) ..................10

*Sleepy's, LLC v. Select Comfort Wholesale Corp*,
   No. 07 Civ. 4018(TCP)(ARL), 2012 WL 441190 (E.D.N.Y. Feb. 10, 2012) ..........................5

*Spherenomics Global Contact Ctrs. v. vCustomer Corp*,
   427 F. Supp. 2d 236 (E.D.N.Y. 2006) .....................................................................................7

*Three Crowns Ltd. P'ship v. Salomon Bros., Inc.*,
   906 F. Supp. 876 (S.D.N.Y. 1995) ..........................................................................................8

*Williams v. Boulevard Lines, Inc.*,
   No. 10 Civ. 2924(DF), 2013 WL 5652589 (S.D.N.Y. Sept. 30, 2013) ....................................4

PerkinElmer submits this reply in further support of its motion to preclude the testimony of Dr. Gregory Bell and to strike his supplemental report.

Notwithstanding Enzo's baseless accusations of "wrongdoing," and "bad faith," Enzo cannot dispute that every piece of financial information Dr. Bell relied upon for his "supplemental" calculations of damages was available before January 28, when his initial report was due. Enzo also cannot seriously dispute the prejudice to PerkinElmer from Enzo's failure to comply with the Court's pre-trial schedule. PerkinElmer filed its own damages report weeks before Enzo filed its supplemental report and was then required to take Dr. Bell's deposition within hours of receiving the supplemental report and file pre-trial motions within three business days thereafter. Indeed, the disarray caused by the late supplemental report is the underlying cause of the continuance of the trial date. It is troubling, to say the least, that as a result of Enzo effectively taking for itself the thirty-day extension to file expert reports that the Court had previously denied, Enzo also obtained the trial continuance it had unsuccessfully sought.

Additionally, even if Dr. Bell's report were timely, it discloses inadmissible, unreliable damages theories. For example, leaving to the side Enzo's misguided attempt to recover disgorgement of profits as a contract remedy, *see* PerkinElmer MIL No. 1 (Dkt. 178), Enzo's largest damages claim attempts to recover lost profits. Dr. Bell's supplemental report, however, does not provide any economic analysis of the market to determine what sales Enzo lost, at what price, or at what cost. This is not merely "junk science," it is "no science" and the sort of speculation that *Daubert* and Rule 702 expressly require the Court to preclude.

## I.   DR. BELL'S SUPPLEMENTAL REPORT SHOULD BE STRICKEN

Enzo opens its opposition with accusations that PerkinElmer and nearly fifty third-parties are guilty of "delay," "obstruction," and "bad faith." These baseless allegations have already been made by Enzo and dealt with by the Court in its denial of Enzo's request for an

1

adjournment (Dkt. 137),  Enzo's request for sanctions (Dkt. 157), and Enzo' motion to compel discovery from MPI (Dkt. 155).  A chronology of damages discovery and of PerkinElmer's compliance with the Court's pre-trial schedule is set out in the accompanying Declaration of Omar Khan, but the issue is ultimately a distraction.  Enzo's complaints about information that it does *not* have cannot possibly justify its failure to provide a report based on information it *did* have on January 28, 2014, when Dr. Bell's report was due.

In particular, Enzo does not dispute that of the more than *two hundred* new sources Dr. Bell considered for his supplemental report, only several were produced after January 28, and of those, the *three* that Dr. Bell actually analyzed were provided *by Enzo or its counsel*.[1]  See Bell Decl. (Dkt. 204) at ¶ 3 (listing documents and testimony produced before January 28); Supp. Bell. Rpt. (Dkt. 181-3) at Sch. B.  Most critically, PerkinElmer produced the sales spreadsheet that underlies nearly all of Dr. Bell's calculations on December 18, 2013.  Khan Supp. Decl. ¶ 6. Enzo's decision not to prepare a report by January 28, 2014, was not "occasioned entirely by PE's own conduct," Enzo Opp. (Dkt. 201) at 6, it was occasioned by Enzo's choice not to do so.

Particularly unconvincing is Enzo's excuse that Dr. Bell could not understand PerkinElmer's sales spreadsheets until the January 25, 2014 deposition of PerkinElmer's witness. First, it is impossible to credit Dr. Bell's statement that he did not know which spreadsheet was the correct one until the deposition.  Bell Decl. at ¶ 3.  The December 18, 2013 spreadsheet was the final spreadsheet of two produced by PerkinElmer in response to Enzo's discovery request for a "supplemental" statement of sales.  Khan Supp. Decl. at ¶ 6.  Second, the only reason the deposition took place on January 25, 2014 is that Enzo declined to take the deposition on January

---

[1] These include: (1) Dr. Azarani's supplemental report; (2) an instruction from counsel regarding Amersham; and (3) a discussion with an Enzo scientist.  *See* 2014-03-03 Letter from Mr. Robert Gunther to Judge Sullivan at 2.  Enzo does not dispute that it could have provided any of these inputs before January 28, 2014.

2

22-23, 2014, when it first noticed the deposition, despite the fact that PerkinElmer was willing to produce the witness on those dates. *Id.* at ¶¶ 18-19.  Finally, and most importantly, the deposition took place three days ***before*** the initial report was filed and more than a month before Enzo finally served its supplemental report.  Enzo does not explain how a deposition taken on January 25 excuses its inability to file a report on January 28, 2014, much less why it excuses a delay of thirty more days before filing Dr. Bell's supplemental report.

As to prejudice, PerkinElmer spent hundreds of hours of lawyer and expert time responding to Bell's shell report and preparing for trial with no knowledge of the amount of Enzo's claim or its basis.  It was forced to depose Dr. Bell with virtually no advance preparation and then prepare pre-trial motions in a matter of days without the time to obtain meaningful assistance from its own expert.  Indeed, Enzo waited until six days after the deposition, and after PerkinElmer filed its motion, to produce the underlying calculations for Dr. Bell's report.  To the extent those calculations are themselves unreliable, PerkinElmer has effectively been denied the ability to challenge them absent the Court's indulgence of yet another pre-trial motion.  If the supplemental report were to be accepted and survive challenge under Rule 702, PerkinElmer is confronted with preparing additional expert reports, additional discovery, and a reassessment of its already-designated evidence in light of the theories presented in the report.  As a result of these actions by Enzo, PerkinElmer has been materially prejudiced.  It is for this reason that "Rule 26(e) is not . . . a vehicle to permit a party to serve a deficient opening report and then remedy the deficiency through the expedient of a 'supplemental' report." *Lidle v. Cirrus Design Corp.*, No. 08 Civ. 1253(BSJ)(HBP), 2009 WL 4907201, at *5 (S.D.N.Y. Dec. 18, 2009).[2]

---

[2] *See also Agence Fr. Presse v. Morel*, 293 F.R.D. 682, 688 (S.D.N.Y. 2013) (prejudice where plaintiff failed to disclose new damages theory until shortly before trial); *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 288-89, 296-97 (2d Cir. 2006) (affirming decision to preclude late-

3

## II. DR. BELL'S TESTIMONY SHOULD BE EXCLUDED UNDER FEDERAL RULE OF EVIDENCE 702 AND *DAUBERT*

### A. Dr. Bell's "Research" Lost Profits Opinion Should Be Excluded

#### 1. Causation

The best example of Dr. Bell's flawed methodology is his calculation of more than $7.5 million of alleged "lost profits" for PerkinElmer's sale of cyanine-labeled nucleotides. *See* Supp. Bell Rpt. at ¶ 3(a). As discussed in PerkinElmer's opening brief, Dr. Bell's testimony should be precluded because it is based on the unreliable assumption that, if PerkinElmer had not made the cyanine-nucleotide sales, Enzo would have made them instead. PE Br. (Dkt. 180) at 10.

Enzo suggests that this unreliable assumption can be excused because Enzo does not need an expert to prove causation. To be sure, a particular expert may not need to "prove" causation. But, in opposing a *Daubert* motion, the duty is on the proponent of the expert to demonstrate reliability of the expert's opinions, including the facts and assumptions on which it is based.[3] *Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 648 n.263 (S.D.N.Y. 2007) ("It is [plaintiff] that must prove the reliability of [expert's] methods by a preponderance of the evidence."); *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 266 (2d Cir. 2002) ("[W]hen an expert opinion is based on data, a methodology, or studies that are simply

---

disclosed expert from testifying about lost profits because "all of the other factors weigh[ed] heavily in favor of exclusion"); *see also Williams v. Boulevard Lines, Inc.*, No. 10 Civ. 2924(DF), 2013 WL 5652589, at *3 (S.D.N.Y. Sept. 30, 2013) (party violating schedule "must bear the burden of demonstrating that its non-compliance was 'substantially justified' or 'harmless'").

[3] In fact, in this case, Enzo does require an expert to prove causation. Indisputably, Enzo did not even offer cyanine-labeled nucleotides to the market during most of the relevant time frame. Proof of causation would therefore at least require proof (1) that Enzo could have made and sold cyanine-labeled nucleotides in this hypothetical market during the time at issue, (2) that these hypothetical nucleotides would have been substitutable for the nucleotides sold by PerkinElmer, and (3) that the hypothetical nucleotides would have captured all of PerkinElmer's sales. These are not "facts" to which a lay witness would be permitted to testify, nor inferences that a lay jury could derive from the facts. Each of these elements requires admissible expert testimony.

inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony."). Numerous cases therefore hold that expert testimony should be precluded when an assumption on which the expert relies is untrue or not adequately supported, including assumptions related to causation. *See e.g.*, *Mapinfo Corp. v. Spatial Re-Eng'g Consultants*, No. 02-CV-1008 DRH, 2006 WL 2811816, at *5-6 (N.D.N.Y. Sept. 28, 2006) (excluding lost profits testimony as "irrelevant" because plaintiff failed to substantiate expert's assumption of causation with reliable proof); *Ho Myung Moolsan, Co. v. Manitou Mineral Water, Inc.*, No. 07 Civ. 07483(RJH), 2010 WL 4892646, at *8 (S.D.N.Y. Dec. 2, 2010) ("A court should be hesitant to rely on stated assumptions as to the [amount of product] that would have been sold and the prices at which they would have been sold." (internal quotation omitted)), *aff'd*, 501 F. App'x 85 (2d Cir. 2012).[4] Indeed, the district court case that Enzo relies on for the proposition that it does not need an expert to prove causation also partially struck the expert's opinion because it relied on the speculative assumption that a contract renewable at will by the defendant would have been renewed. *See Sleepy's, LLC v. Select Comfort Wholesale Corp*, No. 07 Civ. 4018(TCP)(ARL), 2012 WL 441190, at *2-3 (E.D.N.Y. Feb. 10, 2012).

To the extent Enzo attempts to support Dr. Bell's assumption of causation, it fails. For example, Enzo argues that "[a]bsent PE breach, the Products themselves could have been sold by Enzo and no one else, as its products were protected by patents." Enzo Opp. at 14. This assertion has no citation because it is untrue: the Court has found that the cyanine-labeled nucleotide dyes sold by PerkinElmer and Amersham do not infringe. 2012-09-24 Mem. &

---

[4] *See also MTX Commc'ns Corp. v. LDDS/WorldCom, Inc.*, 132 F. Supp. 2d 289, 293 (S.D.N.Y. 2001); *Johnson Elec. N. Am. Inc. v. Mabuchi Motor Am. Corp.*, 103 F. Supp. 2d 268, 284 (S.D.N.Y. 2000) (excluding patent lost profits testimony for lack of reliable basis to assume every sale defendant made would have been made by plaintiff); *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 60 (2d Cir. 2002).

5

Order, *Enzo Biochem, Inc. v. Amersham PLC*, No. 02-8448 (RJS) (Dkt. 280). If PerkinElmer had not sold the nucleotides, there is no reason why Amersham could not have made them itself.

Enzo's assumption that Amersham would have agreed to permit it to make and sell cyanine-labeled nucleotides is equally unsupportable. This assumption comes from a draft agreement between Amersham and Enzo which, as a matter of fact, was not entered into and actually led to the litigation that recently concluded with the Court's grant of summary judgment in Amersham's favor. The draft agreement is critical to Dr. Bell's opinion: without assuming it would have been signed, Dr. Bell has no basis for calculating lost profits based on the sale of cyanine-labeled nucleotides Enzo could not have made without Amersham's cyanine dyes.[5] The assumption is, however, utterly unreliable; indeed, it is indefensible to anyone with knowledge of the multi-year disputes waged between Enzo and Amersham.[6]

### 2. Calculation of Lost Profits

Beyond the lack of a predicate—lost sales—for calculating lost profits, Dr. Bell does not actually determine anything resembling the lost profits that Enzo would have made if PerkinElmer had not committed the alleged breach of contract. Instead, Dr. Bell performs only one calculation: he takes (1) PerkinElmer's revenue for allegedly improper sales and subtracts (2) Enzo's incremental cost of manufacturing (often for a different product) and (3) amounts

---

[5] To the extent that Dr. Bell relies on Dr. Azarani for an unreliable assumption that ***every*** sale to a majority of PerkinElmer's customers necessarily violated the Agreement, it suffers the same fate. PE Br. at 11-12. This is only confirmed by the fact that ***not even Dr. Azarani*** draws the same assumption from her own report. *Id.* Dr. Bell's inconsistent interpretation is not "a matter for the jury," Enzo Opp. at 16 n.7, it is an unfounded assumption that should be excluded.

[6] *See Buckley v. Deloitte & Touche USA LLP*, 888 F. Supp. 2d 404, 413 (S.D.N.Y. 2012) (report excluded as relied "on unfounded assumptions about what [parties] would have done if certain hypothetical events took place"), *aff'd*, 541 F. App'x 62 (2d Cir. 2013); *Point Prods. A.G. v. Sony Music Entm't, Inc.*, No. 93 Civ. 4001(NRB), 2004 WL 345551 (S.D.N.Y. Feb. 23, 2004) (questionable assumption contradicted by real-world events rendered testimony "irretrievably unreliable and indefensible"); *see also Meterlogic, Inc. v. KLT, Inc.*, 368 F.3d 1017, 1019 (8th Cir. 2004) (assumed prices based on contract that could be terminated at any time unreliable).

already paid by PerkinElmer.  The result is not meaningful: it does not represent "profit" for an actual product, let alone profit that was "lost."  Instead, it represents a hypothetical (and implausible) sale where Enzo made *exactly the same revenue* as PerkinElmer at its own cost.

Enzo justifies Dr. Bell's calculations by arguing that Enzo's lost sales "actually took place" when PerkinElmer made the sale, Enzo Opp. at 17, but this evidences a fundamental misunderstanding of lost profits that infects Dr. Bell's entire report.  The profit Enzo allegedly lost is not from the sale PerkinElmer made, but what ***Enzo would have made*** if PerkinElmer ***had not*** made it.[7]  Enzo is a different company from PerkinElmer, with different products, prices, costs, capabilities, and customers.  PE Br. at 12-13.  An admissible economic calculation of lost profits should have tried to determine the revenue Enzo would have made for the sale of products in light of market demand and the competitive alternatives and then deducted Enzo's costs associated with those products.  Dr. Bell does not do this, and as a result, any profits that he claims Enzo would have obtained are speculative.  *See Kidder, Peabody & Co. v. IAG Int'l Acceptance Grp. N.V.*, 28 F. Supp. 2d 126, 136 (S.D.N.Y. 1998) ("[Plaintiff] in essence argues that it should be at least partially equated with [defendant] for purposes of determining the reasonableness of certain of the key assumptions its expert made. In so doing, [it] loses sight of the fact that selling the same product does not make two entities the same company with the same ability to enter into relevant transactions.  Several factors other than the product offered affect the ability of a company to obtain financing, to sell a product into the market and to

---

[7] *See, e.g.*, *Franconero v. UMG Recordings, Inc.*, 542 F. App'x 14, 16 (2d Cir. 2013) (plaintiff's damages could not be measured by defendant's revenues where provided no basis for assumption); *Bausch & Lomb Inc. v. Bressler*, 977 F.2d 720, 728 (2d Cir. 1992) (lost profits based on defendant's sales improper where "offered no evidence tending to prove [plaintiff] would have made the same sales"); *Gomez v. Bicknell*, 302 A.D.2d 107, 114 (N.Y. App. Div. 2002) ("[Plaintiff] must prove its own loss of profits, not what the [defendant's] profits were."); *Spherenomics Global Contact Ctrs. v. vCustomer Corp*, 427 F. Supp. 2d 236, 251-52 (E.D.N.Y. 2006) (expert "could not use [defendant's] profits as a proxy" for estimating lost sales).

sustain relationships with [customers]."), *aff'd*, 205 F.3d 1323 (2d Cir. 1999).[8]

### B. Dr. Bell's Disgorgement/Unjust Enrichment Opinion Should Be Excluded

For the reasons stated in PerkinElmer's Motion *In Limine* No. 1, disgorgement is not a proper remedy for a breach of contract. *See* PE MIL No. 1. Dr. Bell's view that disgorgement "best fits the facts," Enzo Opp. at 17, is irrelevant. And, as discussed, Dr. Bell's disgorgement opinion should be stricken to the extent it relies on the supplemental report of Dr. Azarani, which is subject to PerkinElmer's separate motion. PE Br. at 14-15.

### C. Dr. Bell's MicroMax "Kit" Claim Opinion Should Be Excluded

Enzo does not respond to PerkinElmer's demonstration that Dr. Bell did not attempt to determine what or how many "kit" products subject to the Agreement were displaced by the sale of "piecemeal kits" (the "displacement" and "concordance" analysis promised by his initial report) except to say "Dr. Bell did carry out the steps." Enzo Opp. at 18. This conclusory statement is inconsistent with Dr. Bell's report, which instead assumes that Enzo is entitled to recover a fee for every sale of the MicroMax system.

Enzo's opposition also does nothing to cure the fatal deficiency of Dr. Bell's MicroMax analysis—that despite the fact that components could be and were used in ways other than in a "piecemeal kit," he assumes that all components sold at the same time constituted kits. The fact that this unwarranted assumption "was provided by counsel" does not make it any more reliable. Enzo Opp. at 18. *See Fashion Boutique*, 314 F.3d at 60 (excluding lost profits opinion for lack

---

[8] Indeed, Enzo did not even sell the products it claims to have lost. As Dr. Bell recites: "Enzo was not contemporaneously manufacturing the cyanine-labeled nucleotides." Supp. Bell Rpt. at ¶ 13. Enzo thus did not have a "real track record" of customers "actually purchas[ing] the very same products." Enzo Opp. at 16. New York law applies a "stricter standard" to lost profits for a product the party did not manufacture. *Healing Power, Inc. v. Ace Continental Exps., Ltd.*, No. 07-CV-4175(NGG)(RLM), 2008 WL 4693246, at *7-8 (E.D.N.Y. 2008); *see also Three Crowns Ltd. P'ship v. Salomon Bros., Inc.*, 906 F. Supp. 876, 894 (S.D.N.Y. 1995) (precluding testimony based on unsupported assumptions about sales plaintiff did not make).

8

of adequate basis where expert only had foundation for one improper act but assumed many).

### D. Dr. Bell's T7 "Kit" Claim Opinion Should Be Excluded

PerkinElmer demonstrated in its moving brief that Dr. Bell's calculation of "kit" lost profits suffers from a lack of a reliable foundation and economic causation analysis. PE Br. at 17-19. Enzo deflects and proposes cross-examination, but cross-examination does not make Dr. Bell's unsupported opinion admissible. First, the only basis for Dr. Bell's assumption of liability is a PerkinElmer email suggesting that various products could be used together and Dr. Sherman's opinion that customers "likely use[d]" those products that way. Enzo Opp. at 19; *see also* Sherman Rpt. (Dkt. 182-17) at 30 n.8. Enzo does not identify a *single instance* in which the purported "piecemeal kit" *was actually made*. Dr. Bell thus does not have any foundation to assume that *every single time* alleged pieces were sold, it was for use in a kit. Absent this assumption, Dr. Bell has no basis to assume or conclude that any Enzo kit was "displaced" at all.

Second, even if he can assume liability, Dr. Bell provides no basis to reliably calculate that an alternate sale could or would have been made, at what price, and in what volume. Thus, he ignores that the products actually sold by PerkinElmer (two nucleotides) are different than what he claims it should have sold (an entire kit) and just assumes that if customers did not buy the former, they would have bought the latter. This assumes away the relevant competitors, different pricing, and customers' preference (or lack) for Enzo's T7 kit. This is precisely the unfounded testimony that must be excluded. *Ho Myung Moolsan*, 2010 WL 4892646 at *8.

### E. Dr. Bell's Discount Claim Should be Excluded

In its moving brief, PerkinElmer demonstrated that Dr. Bell's discount claim analysis was directly contradicted by Enzo's contemporaneous documents. PE Br. at 20-21. Enzo does not even try to explain why Dr. Bell's methodology results in an error that overstates Enzo's damages by over 20%, and it cannot avoid such a discrepancy as a "miscalculation." Where a

9

methodology yields results so widely variant with contemporaneous records, Enzo does not meet its burden of proving reliability by invoking cross-examination. *See Point Prods*, 2004 WL 345551, at *7 (excluding testimony where contradicted by real-world events).

### III.     DR. BELL SHOULD NOT BE PERMITTED TO TESTIFY REGARDING "METHODOLOGIES" NOT TIED TO ANY OPINION

As discussed in PerkinElmer's moving brief, Dr. Bell's January 28, 2014 report does not provide any opinion regarding the amount of damages for Enzo's "research" or "kit" claims. PE Br. at 21-22; *see also* Op. Bell Rpt. (Dkt. 181-2) at ¶ 52 ("I reserve the right to provide an opinion").[9] For that reason alone, the report was improper and should be precluded. PE Br. at 4; *see also, e.g.*, *Sandata Techs., Inc. v. Infocrossing, Inc.*, No. 05 Civ. 09546(LMM)(THK), 2007 WL 4157163, at *4 (S.D.N.Y. Nov. 16, 2007) (at "time an expert issues his report, that report [should] reflect[] his full knowledge and complete opinions . . . .").

Further, as discussed in PerkinElmer's moving brief, to the extent that the Court strikes Dr. Bell's February 28, 2014 report, it should preclude Dr. Bell from offering testimony on his methodologies because they are incomplete, unhelpful, and would require the jury to speculate as to damages. PE Br. at 21-22. In its opposition, Enzo ignores the multiple gaps in Dr. Bell's methodology, including the fact that it requires "appropriate" assumptions that are nowhere delineated. *See id.* Rather, it claims that because the *Daubert* framework requires assessment of methodologies, its expert is allowed to offer a methodology without any calculation. Enzo Opp. at 20. This is incorrect. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("[C]onclusions and methodology are not entirely distinct."); *Amorgianos*, 303 F.3d at 267 (court "should undertake a rigorous examination of . . . how the expert applies the facts and methods to the case at hand.")

---

[9] Enzo attempts to turn Dr. Bell's MicroMax "illustration" into an opinion, Enzo Opp. at 12 n.5, but this not only contradicts his report, it contradicts his supplemental report, which provides a different calculation. *Compare* Op. Bell Rpt. at ¶ 51 ($0.9M in damages), *with* Supp. Bell Rpt. at ¶ 24 ($0.8M in damages for **both** MicroMax and T7 kit claims).

| | |
|---|---|
| Dated: New York, New York<br>March 11, 2014 | WILMER CUTLER PICKERING<br>HALE AND DORR LLP<br><br>By:   /s/ Robert J. Gunther, Jr.<br>    Robert J. Gunther, Jr.<br>    Omar Khan<br>    7 World Trade Center<br>    250 Greenwich Street<br>    New York, NY 10007<br>    T: (212) 230-8800<br>    F: (212) 230-8888<br><br>    William G. McElwain<br>    Joshua L. Stern<br>    1875 Pennsylvania Avenue, NW<br>    Washington, DC 20006<br>    T: (202) 663-6000<br>    F: (202) 663-6363<br><br>    *Attorneys for Defendants, PerkinElmer,*<br>    *Inc. and PerkinElmer Life Sciences, Inc.* |