UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ENZO BIOCHEM, INC. and ENZO LIFE SCIENCES, INC.,<br><br>                Plaintiffs,<br><br>    v.<br><br>PERKINELMER, INC. and PERKINELMER LIFE SCIENCES, INC.,<br><br>                Defendants. | 03 Civ. 3817 (RJS) |

# REPLY IN FURTHER SUPPORT OF PERKINELMER'S *DAUBERT* MOTION TO PRECLUDE THE TESTIMONY OF DR. DAVID SHERMAN

# TABLE OF CONTENTS

**Page**

I. The Court Should Preclude Dr. Sherman's Opinions On The Issue Of Whether The Exhibit C Products Are "Covered By A Claim" Of An Enzo Patent. ...................................................................................................... 2

    A. Dr. Sherman Conducted A Patent Infringement Analysis To Determine Whether The Products Were "Covered By A Claim" Of An Enzo Patent. ..................................................................................... 2

    B. Dr. Sherman Should Be Precluded From Offering Patent Infringement Opinions With Respect To Products The Court Found Non-Infringing. ............................................................................... 4

    C. Dr. Sherman Should Be Precluded From Offering Untimely Infringement Opinions. .................................................................................... 6

    D. Dr. Sherman's Infringement Opinions With Respect To Any Remaining Products Are Irrelevant. ........................................................ 7

II. The Court Should Preclude Dr. Sherman's Opinions On "Commercial Use." ................................................................................................. 7

III. The Court Should Preclude Dr. Sherman From Offering Opinions About The "Likely Use" of UTP and CTP Ribonucleotides. ............................. 9

IV. The Court Should Preclude Dr. Sherman From Offering Undisclosed Opinions About Relevant Terms In The Distributorship Agreement. ................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
   303 F.3d 256 (2d Cir. 2002)...............................................................................................8

*Arizona v. California*,
   460 U.S. 605 (1983)...........................................................................................................4

*Frolow v. Wilson Sporting Goods Co.*,
   2012 WL 10820 (D.N.J. Jan. 3, 2012) ...............................................................................3

*In re Air Disaster at Lockerbie*,
   37 F.3d 804 (2d Cir. 1994).................................................................................................9

*Jang v. Boston Sci. Corp.*,
   532 F.3d 1330 (Fed. Cir. 2008)..........................................................................................3

*Lang v. Kohl's Food Stores, Inc.*,
   217 F.3d 919 (7th Cir. 2000) .............................................................................................8

*Lippe v. Bairnco Corp.* ,
   288 B.R. 678, 686 (S.D.N.Y. 2003)...................................................................................8

*Panduit v. Hellermann*,
   451 F.3d 819 (Fed. Cir. 2006)............................................................................................3

*Portney v. CIBA Vision*,
   401 Fed. Appx. 526 (Fed. Cir. 2010) .................................................................................3

*Shatkin v. McDonnell Douglas*,
   727 F.2d 202 (2d Cir. 1984)...............................................................................................9

*Texas Instr. v. Tessera*,
   231 F.3d 1325 (Fed. Cir. 2000)..........................................................................................3

*U.S. Valves v. Dray*,
   212 F.3d 1368 (Fed. Cir. 2000)..........................................................................................3

*Westerbeke Corp. v. Daihatsu Motor Co.*,
   304 F.3d 200 (2d Cir.2002)................................................................................................4

**STATUTES**

35 U.S.C. § 271................................................................................................................4, 6

ActiveUS 125039837v.2

**OTHER AUTHORITIES**

Fed. R. Evid. 702 ................................................................................................................................8

Under the Distributorship Agreement, products subject to the Agreement are defined, in part, by whether they are "covered by a claim" of an Enzo patent.  Contrary to Enzo's assertions in its opposition brief, PerkinElmer is not seeking in this motion to have the Court interpret the phrase "covered by a claim" in the Distributorship Agreement.  The crux of PerkinElmer's motion is that Dr. Sherman's testimony should be precluded, regardless of how the term "covered by a claim" is interpreted, because his opinions are directed to the question of whether the products listed on Exhibit C to the Distributorship Agreement *infringe* certain Enzo patents.[1]

Enzo asserts that Dr. Sherman's infringement opinions should not be precluded as barred by the law of the case doctrine, as untimely, and/or as irrelevant to any issues remaining for trial.  Enzo's sole argument, however, seems to be the facially incorrect assertion that Dr. Sherman conducted a "covered by" analysis and not a patent "infringement" analysis.  That argument is meritless for at least two reasons.

*First*, Enzo cannot avoid Dr. Sherman's repeated statements in his expert report and during his deposition that, to determine whether the Exhibit C products were "covered by a claim" of an Enzo patent, Dr. Sherman conducted a patent *infringement* analysis.  Because Dr. Sherman admittedly conducted an infringement analysis:  (a) the Court's non-infringement ruling is law of the case with respect to the vast majority of the products that are the subject of Dr. Sherman's report; (b) with respect to most of the remaining products, Enzo's infringement assertions are untimely because they were not properly disclosed in Enzo's March 2005 interrogatory

---

[1] Enzo appears to believe that evidence of infringement is critical to its claims that the products listed on Exhibit C to the Agreement are "covered by a claim" of an Enzo patent and, therefore, subject to the Agreement.  Enzo has also stated, in the alternative, that it need not prove that the Exhibit C products are "covered by a claim" of an Enzo patent, because the mere fact that those products are listed on Exhibit C is sufficient evidence that those products are subject to the Agreement.  PerkinElmer disagrees for the reasons set forth in, *inter alia*, its opposition to Enzo's Motion In Limine No. 1, and PerkinElmer's reply briefs in support of its Motions In Limine Nos. 6 and 7, but if Enzo were correct, there would also be no need for Dr. Sherman's infringement testimony.

responses; and (c) with respect to the handful of products that were timely accused but not addressed by the Court's summary judgment ruling,[2] Dr. Sherman's opinions are not relevant to any issue remaining for trial since Enzo has dropped these remaining patent claims.

*Second*, Enzo has failed to identify any *alternative* methodology, technique or process that Dr. Sherman employed for purposes of analyzing the question of whether a particular product is "covered by a claim" of an Enzo patent other than the patent infringement opinions set forth in his report. Nor has Dr. Sherman provided any explanation for how a "covered by" analysis would have differed from his patent "infringement" analysis. The Court should also preclude Dr. Sherman from offering opinions not set forth in his report and/or offering opinions regarding "commercial use" and the "likely use" of certain PerkinElmer products, neither of which are based on reliable or sound methodological bases.

## ARGUMENT

I. **The Court Should Preclude Dr. Sherman's Opinions On The Issue Of Whether The Exhibit C Products Are "Covered By A Claim" Of An Enzo Patent.**

  A. **Dr. Sherman Conducted A Patent Infringement Analysis To Determine Whether The Products Were "Covered By A Claim" Of An Enzo Patent.**

No amount of attorney argument from Enzo can change the fact that Dr. Sherman conducted a patent infringement analysis to determine whether the Exhibit C products were "covered by a claim" of an Enzo patent. In his expert report, Dr. Sherman states quite clearly:

> I have been informed that a product that would infringe a Listed Patent is necessarily "covered by a claim" of that patent, although a product does not necessarily have to infringe a Listed Patent to be covered by a claim of that patent. Therefore, *for the purposes of this report, I analyze whether or not the manufacture, use, or sale of a Listed Product would infringe one or more claims of that Listed Patent*.

(Ex. 1, Sherman Report ¶ 54) (emphasis added). Although Dr. Sherman was apparently instructed by Enzo's counsel that a product does not necessarily have to infringe to be "covered by a claim" of an Enzo patent, the issue he analyzed was the issue of "whether or not the

---

[2] *See* Exs. 6, 14 and 7-8 (lists of products corresponding to each category).

manufacture, use, or sale of a Listed Product *would infringe* one or more claims of that Listed Patent." *Id*. (emphasis added). In other words, Dr. Sherman only conducted a patent infringement analysis, and not any other type of analysis, to determine whether the products were "covered by a claim" of an Enzo patent.

During his deposition, Dr. Sherman confirmed that he had conducted a patent infringement analysis and, in fact, admitted that he was unaware of any other methodology by which to assess whether the products were "covered by a claim" of an Enzo patent.

> Q: Now, apart from infringement, have you made any other analysis with respect to the products vis-a-vis the patents in this case?
> A: What else would you be referring to other than infringement? I mean this is what I state are covered by and also infringe one or more claims.
> \*\*\*
> Q: Right, and the methodology that you employed in order to determine whether they were covered by certain Enzo patents was to assess whether they, those products infringed those Enzo patents; is that right?
> A: That's essentially correct, yes.

Ex. 19, Sherman Dep. Tr. 64:17-64:24; 66:9-14. Enzo cannot avoid the clear and unequivocal statements of Dr. Sherman that he conducted a patent infringement analysis to determine whether the Exhibit C products were "covered by a claim" of an Enzo patent.

The fact that Dr. Sherman equated patent infringement and patent "coverage" is, of course, common sense. *See Jang v. Boston Sci. Corp.*, 532 F.3d 1330, 1331-1332, 1334 n.5 (Fed. Cir. 2008) (claim that products "were 'covered by' (i.e., infringed) the asserted patents" depends on "whether the [accused products] would have infringed"); *Panduit v. Hellermann*, 451 F.3d 819, 823 (Fed. Cir. 2006) (same); *Portney v. CIBA Vision*, 401 Fed. Appx. 526, 527, 529 (Fed. Cir. 2010) (same); *Texas Instr. v. Tessera*, 231 F.3d 1325, 1331 (Fed. Cir. 2000) (same); *U.S. Valves v. Dray*, 212 F.3d 1368, 1372 (Fed. Cir. 2000) (same); *Frolow v. Wilson Sporting Goods Co.*, 2012 WL 10820, at \*3-4 (D.N.J. Jan. 3, 2012) (same).

Enzo relies on stray language in Dr. Sherman's report to argue that, although Dr. Sherman employs "some infringement analysis," he also uses a "broader methodology." Enzo Opp. at 6. That is nonsensical. As he conceded in his deposition, and as is apparent from his report, the only methodology employed by Dr. Sherman was an infringement analysis. Enzo has not and cannot identify any supposed "broader methodology" that Dr. Sherman employed. District courts routinely reject arguments such as Enzo's when the expert has failed to identify any specific methodology or theory that formed the basis for his or her opinions. 1 McCormick On Evid. § 13 (7th ed.) ("It is certainly unacceptable for the expert to rely on a proposition or technique that is literally ineffable…The witness must articulate [a] technique or theory.").

> **B.  Dr. Sherman Should Be Precluded From Offering Patent Infringement Opinions With Respect To Products The Court Found Non-Infringing**

Enzo does not appear to dispute that, if Dr. Sherman has offered opinions on patent infringement, the law of the case doctrine prohibits him from offering any such opinions. To the extent Enzo is arguing that the law of the case doctrine does not apply because Dr. Sherman's opinions are relevant only to Enzo's breach of contract claims and the Court decided Enzo's claims for "patent infringement under 35 U.S.C. § 271," Enzo Opp. at 1, 7, 8, there is no merit to that argument. Enzo is proposing to satisfy its burden of proving that, under the contract, the Exhibit C products are "covered by a claim" of an Enzo patent by proffering Dr. Sherman's opinions on patent infringement. The law of the case doctrine squarely prohibits Enzo's gambit, because the issue that the Court "actually decided"—whether those products infringe an Enzo patent—is identical to the analysis Dr. Sherman performed and the subject matter of his proffered testimony. Given that the Court has decided as a matter of law that certain products are not infringing, "that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983); *see also Westerbeke Corp. v.*

4

*Daihatsu Motor Co.*, 304 F.3d 200, 218 (2d Cir. 2002).

It is impossible to see how Dr. Sherman's infringement opinions are "fully consistent" with the Court's summary judgment ruling. The evidence relied upon by Dr. Sherman, *i.e.* that "using a fluorescent dye as a hapten by introducing an anti-dye antibody," Enzo Opp. at 7, was submitted in connection with Enzo's opposition to PerkinElmer's motion for summary judgment. *See* Ex. 20, Sinden Decl. ¶¶ 16, 53-54 ("Their products are all capable of being indirectly detected via a polypeptide such as an antibody. Further, a person skilled in the art would know that probably all fluorescent dyes are capable of being detected by an antibody."). The Court nonetheless held as a matter of law that Enzo's evidence was insufficient to show that the relevant products satisfied the "A" limitation of the '824 and '767 patent claims. In any event, even if Enzo were somehow able to show that any evidence had not been presented to the Court in connection with the parties' summary judgment motions, Dr. Sherman should not be allowed to avoid the Court's prior decisions by relying on evidence not previously submitted. As Dr. Sherman admitted, all of the relevant portions of his report that were not previously submitted by Enzo in connection with its summary judgment briefing were well known and, therefore, could have been submitted in 2011 in connection with Enzo's opposition to PerkinElmer's motion for summary judgment. Ex. 19, Sherman Dep. Tr. 159:11-160:22; 172:2-8.[3]

---

[3] Enzo argues that the allegedly infringing use identified in Dr. Sherman's report is "a use that PerkinElmer's customers *could make* even absent PerkinElmer's directions to do so." Enzo Opp. at 7 (emphasis added). This is exactly the argument that the Court rejected when it stated that "the fact that the Accused Labeled Products are *capable of indirect detection* is not enough to establish infringement. Plaintiffs have offered no evidence to suggest that these products were designed or marketed to be used with indirectly detectable labels or that *they are used* in a manner consistent with the indirectly detectable labeling scheme." Dkt. No. 280, 02-cv-8448, at 11-12 (emphasis added). And even if Enzo were allowed to rely on new evidence to support its claims, there is no such evidence. Dr. Sherman admitted during his deposition that he had not identified any actual uses of the products consistent with his infringement opinion. Ex. 19, Sherman Dep. Tr. 166-171.

5

### C. Dr. Sherman Should Be Precluded From Offering Untimely Infringement Opinions

If Enzo wanted to assert a theory of infringement for any product, it had to do so by March 2005. The Court's prior rulings are unequivocal on that point. Dkt. No. 329, 02-cv-8448, at 10. Enzo distorts the Court's rulings and PerkinElmer's interrogatories to argue that its interrogatory responses are not binding for purposes of its breach of contract claim. PerkinElmer's interrogatories did not, as Enzo contends, ask Enzo to identify products which it "contends has infringed or infringes under 35 U.S.C. § 271." Enzo Opp. at 8. Instead, the interrogatories asked Enzo to identify any product that it contends "has infringed or infringes" *for any purpose*, without reference to Enzo's patent infringement claims, the Patent Act, and/or causes of actions arising under the Patent Act. Interrogatory No. 1, for example, asks Enzo to:

> Identify each product made, used, sold or offered for sale by PerkinElmer at any time that Enzo contends has infringed or infringes (including contributory infringement), or the use of which Enzo contends has infringed or infringes (including contributory infringement), any claim of any of the patents-in-suit; and with respect to such product, identify each claim which Enzo contends is or has been so infringed.

*See* Ex. 2, at 1-2. Thus, Enzo did not "respond[] to *exactly* the question posed in PerkinElmer's March 9, 2005 Interrogatory Nos. 1 and 3," Enzo Opp. at 8 (emphasis in original), and by failing to do so waived any contention that any other products infringe Enzo's patents.

Enzo also distorts the pleadings in arguing that the Exhibit C products have "been the subject of breach of contract claims since Day 1 of this litigation." In the Complaint, Enzo's breach of contract claims were limited to certain, very well-defined categories of products; they did not extend to all of the Exhibit C products. Ex. 21, Complaint ¶ 58. Thus, Enzo's assertion that all of the Exhibit C products have always been at issue in this case is demonstrably untrue.

The prejudice to PerkinElmer is manifest. Enzo does not dispute that many of the untimely accused products are, on their face, noninfringing under the Court's *Markman* and

6

summary judgment rulings. *See* Ex. 19, Sherman Dep. Tr. 206:18-211:2 (identifying many of those products as "directly detectable," which the Court found noninfringing). If Enzo had timely responded to PerkinElmer's interrogatories by accusing those products of patent infringement, PerkinElmer would have sought and obtained summary judgment of non-infringement with respect to those products. Allowing Enzo to assert an infringement theory with respect to those products on the eve of trial would be prejudicial in the extreme, given that the jury would be allowed to hear evidence of infringement when, in fact, the products would have been found non-infringing under the Court's summary judgment ruling.

> D. **Dr. Sherman's Infringement Opinions With Respect To Any Remaining Products Are Irrelevant**

Enzo does not dispute that, as a result of the parties' recent stipulation, there are no patent infringement claims remaining in this case and PerkinElmer reserved its right to argue to the Court that certain breach of contract claims and theories "are or were" no longer "in the case." Ex. 11 at ¶ 2. Enzo also does not dispute that it has advanced no damages theory to support a breach of contract claim based on the "best efforts" clause in the Settlement Agreement requiring PerkinElmer to exercise its best efforts not to infringe any patents. Indeed, the expert reports of Enzo's damages expert, Dr. Bell, do not even mention or cite the Settlement Agreement as a separate basis for relief. Accordingly, Dr. Sherman's infringement opinions appear to be irrelevant to any remaining claims or issues in the case.

**II.     The Court Should Preclude Dr. Sherman's Opinions On "Commercial Use"**

The excerpt below represents the entirety of Dr. Sherman's opinion on "commercial use":

> In my experience, the research at a pharmaceutical company is not characterized as "basic research" because it is directed toward the development of drugs and therapies. Therefore, in my experience, essentially all research at a pharmaceutical or biotechnology company using these types of labeled nucleotides may be regarded as commercial use.

7

Ex. 1, Sherman Report ¶ 43. As noted in PerkinElmer's opening brief, Dr. Sherman does not cite a shred of evidence in support of this opinion. To the extent that Dr. Sherman is relying on his experience as the basis for that opinion, he has failed to explain why it is a sufficient basis for his opinion. *Lippe v. Bairnco Corp.,* 288 B.R. 678, 686 (S.D.N.Y. 2003) ("[A]n expert basing his opinion solely on experience must do more than aver conclusorily that his experience led to his opinion."); Fed. R. Evid. 702 Advisory Committee Note (2000 Amendments) ("If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts."). That Dr. Sherman was deposed on his experience generally does not change the fact that, even during his deposition, Dr. Sherman was unable to identify any evidentiary support for his position and/or why his "experience is a sufficient basis for the opinion," as the Committee Notes require.[4] Ex. 19, Sherman Dep. Tr. 108:22-110:12. "Talking off the cuff—deploying neither data nor analysis—is not an acceptable methodology." *Lang v. Kohl's Food Stores, Inc.*, 217 F.3d 919, 924 (7th Cir. 2000).[5]

Enzo's defense of Dr. Sherman's opinion is also impossible to square with its emphatic opposition to testimony by PerkinElmer's expert, Dr. Berneman. Berneman *Daubert* at 7.[6] As

---

[4] Contrary to the suggestion in Enzo's brief, Dr. Sherman's deposition was limited to the expert report he prepared and did not seek his opinions generally on other issues as to which he had not offered any opinions in his report. *See* Ex. 19, Sherman Dep. Tr. 108-110.

[5] Enzo cites a single case, out of context, for the proposition that "lack of textual support may go to the weight, not the admissibility of the expert's testimony." Enzo. Br. at 10. Enzo omits any mention of the Second Circuit decision that is the basis for that quote, which states "Where an expert otherwise reliably utilizes scientific methods to reach a conclusion, lack of textual support may go to the weight, not the admissibility of the expert's testimony." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002). In this case, of course, Dr. Sherman has not presented any "scientific methods" as the basis for his conclusory opinions.

[6] For the reasons set forth in PerkinElmer's brief in opposition to Enzo's *Daubert* motion, Dr. Berneman's opinions are supported not only by his own experience in the industry but also by various publications, including regulatory materials, and by his analysis of various licensing and technology transfer agreements executed contemporaneously with the Distributorship Agreement.

8

Enzo itself has argued, opinions such as Dr. Sherman's cannot be admitted because "there is simply too great an analytical gap between the data and the opinion proffered given that there is *no* data." *Id.* (citation omitted) (emphasis in original). Dr. Sherman's opinion is nothing more than *ipse dixit* pronouncements and cannot be admitted under the very case law Enzo cited in connection with its own motion to preclude. *See, e.g.*, *In re Air Disaster at Lockerbie*, 37 F.3d 804, 824 (2d Cir. 1994); *Shatkin v. McDonnell Douglas*, 727 F.2d 202, 208 (2d Cir. 1984).

### III. The Court Should Preclude Dr. Sherman From Offering Opinions About The "Likely Use" of UTP and CTP Ribonucleotides

There is simply no logical nexus between the fact that the "popular application" of certain products would have been in "Affymetrix-type array applications" and the conclusion that PerkinElmer's customers would "likely be using" the products in those applications. The fact that an application may be "popular" with customers does not say anything about whether PerkinElmer's customers, in fact, purchased the products for that application. Nor does it rule out the possibility that at least a significant portion of PerkinElmer's customers purchased the products together only because (like going to the grocery store) buying multiple things at once happens to be convenient for a customer. Enzo does not disagree that (a) customers purchasing UTP and CTP ribonucleotides could have been using them for other applications; (b) Dr. Sherman did not attempt to determine whether PerkinElmer's customers were actually using these products for "an Affymetrix-type array application," and (c) Dr. Sherman made no attempt to ascertain whether the PerkinElmer literature that he relied upon was effective in persuading customers to use those products in "an Affymetrix-type array application." In the absence of any analysis, data, investigation, or evaluation, Dr. Sherman's opinions regarding the "likely use" of simultaneous purchases of UTP and CTP ribonucleotides are nothing more than speculation.

## IV.   The Court Should Preclude Dr. Sherman From Offering Undisclosed Opinions About Relevant Terms In The Distributorship Agreement

Enzo concedes that Dr. Sherman has not set forth in his expert report any "meaning[s] of particular words and phrases," any "custom and usage considered to determine unambiguous meaning of contractual term" or any "industry custom and practice considered as extrinsic evidence of parties' intent." Enzo Opp. at 14. Yet Enzo insists that Dr. Sherman should be allowed testify on those matters because he has the "experience to do so." *Id*.

Dr. Sherman should not be allowed to express any opinions that were not set forth in his expert report, including any opinions on the meaning of "research use," "research purposes," "commercial development," and/or "commercial exploitation." With respect to those terms, Dr. Sherman has not even "applied [his] experience to the terms," as Enzo suggests. None of those words or phrases even appear in Dr. Sherman's report, so it can hardly be said that he has stated an opinion in his report on the meaning, custom, usage and/or practice of those terms.

For the reasons set forth in Section III above, Dr. Sherman's opinions regarding "commercial use" are wholly inadmissible. But even with respect to "commercial use," Dr. Sherman has offered nothing more than his personal views regarding whether "research at a pharmaceutical or biotechnology company" qualifies as "commercial use." That observation hardly qualifies as an opinion on the custom, usage and/or practice with respect to that term and/or on the meaning of the term in the Distribution Agreement generally. Indeed, Dr. Sherman has not commented on ***any*** aspect of the understanding or meaning of the relevant contract terms other than to opine that "research at a pharmaceutical or biotechnology company" is a "commercial use." Accordingly, the Court should limit Dr. Sherman to the opinions set forth in his expert report and preclude trial testimony relating to the relevant terms of the Distributorship Agreement.

10

Dated: New York, New York  
March 11, 2014

WILMER CUTLER PICKERING  
HALE AND DORR LLP

By: */s/ Robert J. Gunther, Jr.*  
Robert J. Gunther, Jr.  
Omar A. Khan  
7 World Trade Center  
250 Greenwich Street  
New York, NY 10007  
T: (212) 230-8800  
F: (212) 230-8888

William G. McElwain  
Joshua L. Stern  
1875 Pennsylvania Avenue, NW  
Washington, DC 20006  
T: (202) 663-6000  
F: (202) 663-6363

*Attorneys for Defendants, PerkinElmer, Inc. and PerkinElmer Life Sciences, Inc.*

11