UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ENZO BIOCHEM, INC. and ENZO LIFE SCIENCES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> PERKINELMER, INC. and PERKINELMER LIFE SCIENCES, INC., <br><br> Defendants. | 03 Civ. 3817 (RJS) |

**PERKINELMER'S REPLY IN SUPPORT OF ITS *DAUBERT* MOTION TO PRECLUDE TESTIMONY BY DR. AREZOU AZARANI**

## TABLE OF CONTENTS

                              **PAGE**

I.    Dr. Azarani's Interpretation Of The "Research Use" Provisions Of The Agreement Is Inadmissible ................................................................................ 2

II.   Dr. Azarani's Opinions Regarding The Amount Of Applied And Basic Research In The United States are Inadmissible ................................................ 5

III.  Dr. Azarani's "Basic Economics" Testimony Is Not Admissible ...................... 8

IV.  Dr. Azarani's Supplemental Report Should Be Stricken And, In Any Event, IT is Not Admissible Under *Daubert* And FRE 702 ......................................... 9

     A.    Dr. Azarani's Supplemental Report Should be Stricken as Untimely ..................... 9

     B.    Dr. Azarani's Supplemental Report Is Inadmissible ............................................. 10

ActiveUS 125068719v.3

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
    509 U.S. 579 (1993) ................................................................................................... passim

*Iacobelli Constr., Inc. v. Cnty. of Monroe*,
    32 F.3d 19 (2d Cir. 1994) .................................................................................................... 4

*Kumho Tire Co., Ltd. v. Carmichael*,
    526 U.S. 137 (1999) ......................................................................................................... 5, 6

*LaSalle Bank Nat. Ass'n v. CIBC Inc.*,
    08 CIV. 8426, 2012 WL 466785 (S.D.N.Y. Feb. 14, 2012) ............................................... 4

*Levinson v. Westport Nat. Bank*,
    09–cv–00269, 2012 WL 4489260 (D. Conn. Sept. 28, 2012) ........................................... 4

*Linde v. Arab Bank, PLC*,
    922 F. Supp. 2d 316 (E.D.N.Y. 2013) ................................................................................ 7

*Lippe v. Bairnco Corp.*,
    288 B.R. 278 (S.D.N.Y. 2003) ............................................................................................ 4

*Malletier v Dooney & Bourke, Inc.*,
    525 F. Supp. 2d 558 (S.D.N.Y. 2007) ................................................................................ 8

*Marx & Co., Inc. v. Diners' Club Inc.*,
    550 F.2d 505 (2d Cir. 1977) ................................................................................................ 3

*Nimely v. City of New York*,
    414 F.3d 381 (2d Cir. 2005) ................................................................................................ 7

*Trout v. Milton S. Hershey Med. Ctr.*,
    576 F. Supp. 2d 673 (M.D. Pa. 2008) ................................................................................. 7

*U.S. Info. Sys., Inc. v. Int'l Bhd. of Elec. Workers Local Union No. 3, AFL-CIO*,
    313 F. Supp. 2d 213 (S.D.N.Y. 2004) ................................................................................ 8

*United States v. Garcia*,
    314 F.3d 201 (2d Cir. 2005) ................................................................................................ 9

*Woods v. Real Renters Ltd.*,
    No. 01 CIV. 0269 (MHD), 2007 WL 656907 (S.D.N.Y. Mar. 1, 2007) ............................. 7

OTHER AUTHORITIES

Fed. R. Civ. Proc. 26(a)(2) ................................................................................................2, 9

Fed. R. Evid. 401 ..................................................................................................................7

Fed. R. Evid. 403 ..............................................................................................................7, 9

Fed. R. Evid. 702 ........................................................................................................1, 4, 9

Fed. R. Evid. 703 ..................................................................................................................6

ActiveUS 125068719v.3

Enzo's claim that PerkinElmer violated certain "research use" restrictions in the Distributorship Agreement presents three questions for trial: (1) what do the "research use" provisions in the Agreement mean; (2) did any PerkinElmer customer violate those provisions as to products sold under the Agreement; and (3) if so, what damages, if any, should Enzo recover.

In her initial expert report, Enzo's expert, Dr. Arezou Azarani, purports to offer opinions directed to each of these issues. She opines that (1) the "research use" provisions of the Agreement prohibit applied research; (2) commercial entities in the life sciences industry in the United States devote over 95% of their research activities to applied research; and (3) sales for non-basic research uses (such as applied research) command higher prices than sales for basic research use, and companies can charge higher prices when they have fewer competitors.

None of these opinions is admissible. Contrary to Enzo's assertions, PerkinElmer's objections do not go to the weight of Dr. Azarani's opinions but squarely target admissibility, *i.e.*, their lack of reliability and helpfulness under the standards set forth in *Daubert*[1] and Federal Rule of Evidence 702. Dr. Azarani's first opinion is impermissible because it does not identify any customary or industry meanings of the relevant contract terms and, instead, offers a freestanding, conclusory opinion that the language of the Agreement, whatever it means, does not permit applied research. Dr. Azarani's second and third opinions lack probative value with respect to the questions they attempt to address. How much applied research was allegedly performed in 2008 by the life sciences industry generally ***across the entire United States*** has no bearing on the specific question of what types of research PerkinElmer's customers performed with the research tools they purchased from PerkinElmer from 1999 to 2004. Moreover, Dr. Azarani's general views about percentages of "basic" versus "applied" research cannot substitute

---

[1] *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

1

for Enzo's failure of proof – to allow this would clearly invite the jury to decide the issue of liability based on unfounded speculation untethered to the facts of this case.[2]  Similarly, with respect to the issue of pricing, Dr. Azarani's generalized statements cannot, in the absence of a case-specific economic analysis, help the jury determine the amount of damages Enzo might be entitled to recover.  Enzo and Dr. Azarani concede she has performed no such analysis.

Dr. Azarani's supplemental report is just as deficient.  Enzo cannot dispute the supplemental report was produced without any advance notice the evening before her deposition and a month after the deadline for submission of expert reports.  Enzo's frivolous argument that the report is not a supplemental opinion because it is entitled "evaluation" and because Enzo's damages expert, Dr. Bell, asked for it does not withstand even casual scrutiny.  As Dr. Azarani admitted, her "evaluation" contains expert opinions and is therefore a supplemental report.  But even if it were nothing more than information on which Dr. Bell relied, it was required to be produced under Rule 26, and Dr. Azarani admitted that nothing would have prevented her from submitting her "evaluation" prior to the expert report deadline.  In addition, Enzo cannot change the fact that the report itself is an entirely unreliable and unhelpful effort to substitute Dr. Azarani's unmethodical review of various websites for proof that PerkinElmer's customers actually violated the research use restrictions in the Distributorship Agreement.

## ARGUMENT

### I.    DR. AZARANI'S INTERPRETATION OF THE "RESEARCH USE" PROVISIONS OF THE AGREEMENT IS INADMISSIBLE

Enzo spends much of its opposition brief arguing that Dr. Azarani's opinions regarding

---

[2] Remarkably, Enzo claims that the Court's summary judgment ruling absolved it of any obligation to produce evidence that specific PerkinElmer customers breached the research use restrictions of the Distributorship Agreement.  Enzo Opp. at 3, 13, 22.  Enzo's position is contrary to basic legal principles.  Nothing in the Court's ruling changed the fundamental rule that, as plaintiff, Enzo bears the burden of proof in proving each element of the claims it has brought against PerkinElmer. 2013-10-28 Mem. and Order (Dkt. 119) (hereinafter, "SJ Order").

2

the definitions of "basic research" and "applied research" are reliable. As noted in PerkinElmer's opening brief, PE Br. at 6-7, however, these definitions are inherently problematic because, first, the terms "basic" and "applied" research appear nowhere in the Agreement and, second, Dr. Azarani conceded that both "basic" and "applied" research are subsets of the term that *is* in the Agreement—"research." Despite Enzo's assertions, Enzo Opp. at 7-8, the Court's summary judgment decision did not state that the distinction between basic and applied research is critical to interpreting the Distributorship Agreement; in fact, it referred not to "basic," but to "pure research." Instead, the language quoted by Enzo, *id.* at 7, shows that the ambiguity identified by the Court was broader than just these two terms; *i.e.*, that "the Distribution Agreement never clarifies whether the Research Market included applied research or only pure research *or some sort of middle ground between the two*." SJ Order at 4 (emphasis added). The Court's decision thus does not limit the meaning of Research Market to a binary choice between "pure" and "applied" research, but rather invokes a broader inquiry into what type(s) of research were permitted by the Distributorship Agreement.

Moreover, Dr. Azarani fails to engage in any legally proper interpretation of the disputed terms in the Agreement. Instead, she offers the conclusory assertion that, in her view, the Agreement does not permit applied research.[3] Taub Decl. Ex. 1 at 9. It is well-established that contract interpretation is the province of the jury and that expert witnesses cannot opine on what conduct a contract requires. *Marx & Co., Inc. v. Diners' Club Inc.*, 550 F.2d 505, 508-511 (2d Cir. 1977) (reversible error where expert permitted to testify regarding import of contract terms).

---

[3] Enzo argues that PerkinElmer's objections to Dr. Azarani's opinions go only to the weight, not the admissibility, of her testimony. *See, e.g.*, Enzo Opp. at 1, 6, 9, 19. To the contrary, PerkinElmer's motion squarely targets the admissibility of Dr. Azarani's opinion and, belying its own assertions, Enzo devotes most of its argument attempting to argue that Dr. Azarani used reliable methods and that her conclusions are helpful to the jury. *Id.* at 8-18, 20-24.

3

*See also Levinson v. Westport Nat'l Bank*, No. 09–cv–00269, 2012 WL 4489260, at *4 (D. Conn. Sept. 28, 2012) ("expert may not interpret a contract for the jury"). Expert testimony is only permissible if it "describe[s] industry practices and customs, define[s] terms of art used in the industry, [and] explain[s] the approach by which reasonably prudent [industry members] would interpret the contract documents. . . ." *Iacobelli Constr., Inc. v. Cnty. of Monroe*, 32 F.3d 19, 25 (2d Cir. 1994); *see also LaSalle Bank Nat'l Ass'n v. CIBC Inc.*, 08 CIV. 8426, 2012 WL 466785, at *10 (S.D.N.Y. Feb. 14, 2012).

Enzo concedes that Dr. Azarani does not offer opinions on the custom and usage of any term in the Distributorship Agreement, that she does not assert that any part of the contract has specialized meaning in the life sciences industry, and that she does not offer any methodological "approach" or basis for interpreting the Agreement. Enzo Opp. at 16-17. What she does do is, without explanation, review the various contract terms and purportedly interpret them by reference to *other* terms that do not appear in the Agreement at all, *i.e.* "basic research" and "applied research." *See* Taub Decl. Ex. 1 at 9. In view of these fundamental flaws, Dr. Azarani's opinions are of no help to the jury in interpreting the Agreement itself.

Moreover, Dr. Azarani cites no evidentiary basis for her conclusion that the "research provisions preclude applied research. Taub Decl., Ex. 1 at 9. To the extent that she relies on her experience to form her opinion, she fails to explain how her experience informs her reading. *Lippe v. Bairnco Corp.*, 288 B.R. 278, 686 (S.D.N.Y. 2003) ("[A]n expert basing his opinion solely on experience must do more than aver conclusorily that his experience led to his opinion."); Fed. R. Evid. 702 Advisory Committee's Note (2000 Amendments) ("If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and

4

how that experience is reliably applied to the facts.").[4]  Dr. Azarani's report contains no such explanation.  Enzo's defense of Dr. Azarani's opinions is also impossible to square with its emphatic (and incorrect) opposition to testimony by PerkinElmer's expert, Dr. Berneman.  Enzo Mem. of Law (Dkt. 164) at 7.  As Enzo itself has argued, opinions such as those Dr. Azarani offers cannot be admitted because "there is simply too great an analytical gap between the data and the opinion proffered given that there is *no* data."  *Id.* (quotation omitted) (emphasis in original).  Dr. Azarani's opinions are nothing more than *ipse dixit* pronouncements and cannot be admitted under the very case law Enzo cites in its motion to preclude Dr. Berneman.  *Id.*

## II.   DR. AZARANI'S OPINIONS REGARDING THE AMOUNT OF APPLIED AND BASIC RESEARCH IN THE UNITED STATES ARE INADMISSIBLE

Dr. Azarani's opinion regarding the percentage of applied research performed in the United States is also inadmissible.  This is precisely the kind of "junk science" that *Daubert* was designed to preclude.  Based on her report and testimony, Dr. Azarani's methodology consisted only of the following: first, she located percentages on applied and basic research in a companion document to a 2008 report relating to the U.S. science and engineering industry sectors; next, she concluded without explanation that these numbers were not inconsistent with her own experience; after that, she reported the numbers as accurate *with respect to the life sciences industry*.  Enzo concedes that the document Dr. Azarani took her 95% applied research number from does not address the life sciences industry,[5] and that it is not the type of document someone

---

[4] Throughout its opposition brief, Enzo repeatedly claims that Dr. Azarani's opinions are reliable because "no one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience."  Enzo Opp. at 14, 21 (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 156 (1999)).  Enzo ignores the very next paragraph of *Kumho Tire*, however, which makes clear that even experience-based opinions must be evaluated for methodology and reliability.  The Court in *Kumho* rejected the expert's opinion in that case, finding it unreliable for the conclusions the expert drew.  *Id.* at 156-57.

[5] Enzo's argument that the number "encompass[es]" the life sciences industry is wholly

5

in the life sciences industry would typically review.[6]  Enzo Opp. at 10; *see* Fed. R. Evid. 703 (testimony based on hearsay admissible only if "experts in the particular field would reasonably rely on those kinds of facts and data in forming an opinion on the subject").  Under *Daubert*, Dr. Azarani's faulty methodology renders her opinion inadmissible.

Even apart from its fundamental methodological flaw, Dr. Azarani's opinion regarding percentages of applied research versus basic research provides no help to the trier of fact.  The question before the jury is whether PerkinElmer breached its contract with Enzo by selling PRODUCTS in violation of the "research use" restrictions.  In other words, the jury must decide what types of research ***PerkinElmer's customers*** in fact performed with the research ***tools they purchased from PerkinElmer***.[7]  Dr. Azarani's opinion that over 95% of all research done in the life sciences industry is applied research is of no assistance – it does not address this specific question and instead seeks to substitute a general, conclusory opinion in place of proof of an

---

unconvincing – a report on all research done in all industries in the U.S. would also "encompass" the life sciences industry.  Enzo Opp. at 10.  Enzo further claims that the use of a similar document by PerkinElmer's expert, Dr. Berneman, proves that the document is reliable for the purposes which Dr. Azarani uses it.  Enzo Opp. at 11 (citing Berneman Report ¶ 49).  This is incorrect.  In ¶ 49 of his report, Dr. Berneman cites the document in question, the 1999 NSF Indicators, as *one out of many* sources providing background on the life sciences industry generally; he does not, as Dr. Azarani does, substitute numbers from the document wholesale for his own analysis.  Taub Decl., Ex. 11 at ¶ 49.  As Enzo points out, Dr. Berneman ***criticizes*** the way Dr. Azarani relies on the 2008 NSF Indicators document.  Khan Suppl. Decl. Ex. 12 at ¶ 91.

[6] Enzo inexplicably contends that, even though people in the life sciences industry would not review the document on which Dr. Azarani relies, it is still appropriate for her rely upon it.  Enzo Opp. at 10.  As a witness claiming expertise in the life sciences, Dr. Azarani is obligated to employ "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  *Kumho Tire*, 526 U.S. at 152.  Reliance on documents that are not reviewed, much less relied upon in the life sciences industry does not meet this standard.

[7] Enzo claims that Dr. Azarani does not have to provide "concrete numbers" regarding how many PerkinElmer customers exceeded the research use restrictions.  Enzo Opp. at 13.  This evidences the report's insufficiency: Dr. Azarani provides no numbers at all, and in so doing purports to testify only to unreliable generalizations.  This is not admissible.

6

actual contractual breach.[8]  *See, e.g.*, *Linde v. Arab Bank, PLC*, 922 F. Supp. 2d 316, 326 (E.D.N.Y. 2013) (expert's "generalized testimony" about activities of a certain type of organization irrelevant and potentially prejudicial to the extent did not refer to specific organizations at issue); *Woods v. Real Renters Ltd.*, No. 01 CIV. 0269, 2007 WL 656907, at *10 (S.D.N.Y. Mar. 1, 2007) (testimony about "tendencies of some categories of landlords. . .would not be relevant in any meaningful sense to the claims in th[e] case" concerning specific *Trout v. Milton S. Hershey Med. Ctr.*, 576 F. Supp. 2d 673, 677 (M.D. Pa. 2008) ("Generalized expert testimony that is factually disconnected from the case is inadmissible because it does not assist the jury in rendering a verdict based on the material facts in issue." (citing *Elcock v. Kmart Corp.*, 233 F.3d 734, 755 n.12 (3d Cir. 2000)).  If anything, Dr. Azarani's opinion would serve to confuse the jury as to the actual liability issue to be decided.

For this reason, and as described further below, Dr. Azarani's opinion should also be precluded under Federal Rule of Evidence 403.  Dr. Azarani's opinion invites the jury to make the illogical and impermissible leap that, because certain industries perform over 95% applied research, PerkinElmer's customers must also have performed over 95% applied research using PerkinElmer products.  Any help Dr. Azarani's opinion could provide is thus outweighed by the serious risk it presents of misleading the jury.  *Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005) (Rule 403 has a "uniquely important role. . .to play in the district court's scrutiny of expert testimony, given the unique weight such evidence may have  in a jury's deliberations.");

---

[8] Enzo responds by arguing that "generalized" statements are admissible because expert opinions are not required to attain any level of specificity.  Enzo Opp. at 13, 22.  This position ignores both the relevant case law and the requirement under *Daubert* that expert opinions fit the facts of the case and address the issue to be decided.  *Daubert,* 509 U.S. at 592-93 (courts must examine "whether [the expert's] reasoning or methodology properly can be applied to the facts in issue."); *see also* 4 Weinstein's Fed. Evid. § 702.03[1] (2013) (helpfulness is "a more stringent standard of admissibility [than relevance under Fed. R. Evid. 401], because it also requires expert testimony to have a valid connection to the pertinent inquiry.").

7

*see also U.S. Info. Sys., Inc. v. Int'l Bhd. of Elec. Workers Local Union No. 3, AFL-CIO*, 313 F. Supp. 2d 213, 226 (S.D.N.Y. 2004) (court's gatekeeping function "prevent[s] the jury from being overwhelmed by unsupportable speculation cloaked as 'expertise'").

Dr. Azarani's opinion that 85% of research done at academic institutions is basic research should also be excluded.  Enzo does not dispute that Dr. Azarani did not disclose the materials she considered in forming her opinion as required by Rule 26 and that the way she derived the 85% number, *i.e.* reviewing an unknown set of websites and "c[o]m[ing] up with that number" based on a "sense in [her] head," employed no methodology whatsoever.  PE Br. at 10.  Moreover, testimony regarding the 85% figure should be precluded under Rule 403 as its admission poses the same risks of prejudice and misleading the jury as described above.

### III. DR. AZARANI'S "BASIC ECONOMICS" TESTIMONY IS NOT ADMISSIBLE

With respect to Dr. Azarani's pricing opinions regarding purported pricing differences in the market, Enzo concedes that her report does not present any market or economic analysis. Enzo Opp. at 17-18.  Dr. Azarani herself acknowledges that she has not taken into account factors that will determine whether her opinions have any relevance to the case.  Taub Decl. Ex. 1 at 10-11.  Absent an analysis of additional market factors relevant to this case, therefore, it is impossible to tell whether the principles of "basic economics" about which Dr. Azarani opines are even applicable, and her testimony is therefore inadmissible.[9]  *See, e.g.*, *Malletier v Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 666 (S.D.N.Y. 2007) (expert excluded where analysis was based on only one market factor and omitted other, relevant factors).[10]

---

[9] As with her basic/applied research opinion, Dr. Azarani's pricing opinions are not helpful but highly prejudicial and misleading.  A jury could apply these economic principles, which are not tied to the facts of this case, without any actual analysis of the damages amount Enzo is entitled to recover.  Dr. Azarani's opinions on pricing should thus also be excluded under Rule 403.

[10] Although Enzo argues it is not attempting to conduct a "statistical analysis," the cases cited in

8

## IV. DR. AZARANI'S SUPPLEMENTAL REPORT SHOULD BE STRICKEN AND, IN ANY EVENT, IT IS NOT ADMISSIBLE UNDER *DAUBERT* AND FRE 702

### A. Dr. Azarani's Supplemental Report Should be Stricken as Untimely

As a threshold matter, the Court should reject Enzo's frivolous effort to disguise Dr. Azarani's supplemental report by titling it "evaluation." It is well-settled that "if [a witness's] opinion rests 'in any way' upon scientific, technical, or other specialized knowledge, its admissibility must be determined in reference to Rule 702." *United States v. Garcia*, 314 F.3d 201, 215 (2d Cir. 2005). Dr. Azarani testified that the information contained in the February 26 report was an opinion based on her review of certain websites and her experience in the life sciences industry. Khan Supp. Decl., Ex. 11., Azarani Dep. at 249:15-250:20 (Q: "So you're relying on. . .your experience. . .in the life science industry, in order to give [your] opinions. . .?. . .A: "Yes."). Under the law, Dr. Azarani's "evaluation" is clearly a supplemental expert report.

Dr. Azarani's supplemental report should be stricken as untimely.11 The report was served without any advance warning the evening before Dr. Azarani's deposition, *a month* after expert reports were due. Regardless of whether Dr. Azarani's "Evaluation" is considered a supplemental expert report or considered source material for Dr. Bell's expert report, it is subject to the disclosure requirements of Fed. R. Civ. Proc. 26(a)(2). Moreover, as Enzo and Dr. Azarani have conceded, there is no reason she could not have completed her "Evaluation" by the January 28 deadline. Khan Supp. Decl. Ex. 11, Dep. Tr. 248:4-14.

Enzo's failure to conduct expert discovery in an orderly manner has seriously prejudiced PerkinElmer. The fact that PerkinElmer's counsel questioned Dr. Azarani about the supplemental report at her deposition in no way alleviates the prejudice. Enzo Opp. at 20.

---

PerkinElmer's opening brief as well as above illustrate that, to be applicable, economic analysis must take into account all relevant market factors. *See* PE Br. at 13-14.

[11] PerkinElmer refers also to its March 3, 2014 letter to the Court. *See* Taub Decl. Ex. 12.

9

PerkinElmer had *no opportunity* to review the 143 websites cited in the report, consult with PerkinElmer's own experts, or explore potential avenues for rebuttal and cross-examination.

### B.    Dr. Azarani's Supplemental Report Is Inadmissible

The supplemental Azarani report purports to substitute unfounded and conclusory expert opinion for actual evidence that PerkinElmer's customers exceeded the "research use" provisions of the Agreement.  Indeed, Enzo concedes that it has been unable to locate evidence regarding actual use for many of PerkinElmer's customers.  Enzo Opp. at 3 n.1.  Because Dr. Azarani's supplemental report does not employ *any* reliable methodology, any testimony regarding or relying upon the supplemental report should be excluded.[12]

According to Enzo, Dr. Azarani's methodology for her supplemental report consisted of reviewing public websites and then deciding, based on her limited review, whether certain companies' research activities were primarily basic or applied.  *Id.* at 21.  The supplemental report does not describe any method by which Dr. Azarani analyzed the websites or any correlation she was able to establish between information in a given website and the amount of applied research a company did.  Although Enzo claims that Dr. Azarani based her conclusions on "extensive and specialized experience," *Id.* at 21, as noted above, simply referring, without explanation, to the expert's experience is insufficient under *Daubert*.[13]

---

[12] This includes testimony by Dr. Bell in reliance on Dr. Azarani's supplemental report.  Try as it might, Enzo cannot bridge the gap between Dr. Azarani's conclusions, on the one hand, and Dr. Bell's treatment of the report, on the other.  Dr. Bell treats *all* sales to top 100 customers listed in the supplemental report as having been used for applied research.  In contrast, Dr. Azarani testified that she could only determine *a majority* of the sales were for applied research.

[13] PerkinElmer did not "blatantly misstate[]" Dr. Azarani's deposition testimony.  Enzo Opp. at 22.  PerkinElmer noted that, as relevant to her supplemental report, Dr. Azarani had personal knowledge of only ten companies.  PE Br. at 15.  Enzo does not dispute this, and any *other* personal knowledge Dr. Azarani may have is irrelevant to the report.

10

Dated: New York, New York  
      March 7, 2014

WILMER CUTLER PICKERING
HALE AND DORR LLP

By:   <u>*/s/ Robert J. Gunther, Jr.*</u>
     Robert J. Gunther, Jr.
     Omar Khan
     7 World Trade Center
     250 Greenwich Street
     New York, NY 10007
     T: (212) 230-8800
     F: (212) 230-8888

     William G. McElwain
     Joshua L. Stern
     1875 Pennsylvania Avenue, NW
     Washington, DC 20006
     T: (202) 663-6000
     F: (202) 663-6363

     *Attorneys for Defendants, PerkinElmer,*
     *Inc. and PerkinElmer Life Sciences, Inc.*

ActiveUS 125068719v.3