UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------- x

ENZO BIOCHEM, INC. et al.,                                    :

               Plaintiffs,              :   03-CV-3816 (RJS)

      v.                                                    :

MOLECULAR PROBES, INC., et al.,                        :
             Defendants.

----------------------------------------------------------------- x
                                           :

ENZO BIOCHEM, INC., et al.,                              :

               Plaintiffs,              :   03-CV-3817 (RJS)

      v.                                                    :

PERKINELMER, INC., et al.,                               :
             Defendants.                              :

----------------------------------------------------------------- x
                                           x

ROCHE DIAGNOSTICS GMBH, et al.,                        :

               Plaintiffs,              :

      v.                                                    :   04-CV-4046 (RJS)

ENZO BIOCHEM, INC., et al.,                              :

             Defendants.                              :

----------------------------------------------------------------- x

**REPLY MEMORANDUM OF LAW IN SUPPORT OF ENZO'S
MOTION FOR RECONSIDERATION OF THE COURT'S *MARKMAN* AND
<u>SUMMARY JUDGMENT ORDERS CONCERNING U.S. PATENT NO. 5,449,767</u>**

**TABLE OF CONTENTS**

**Page(s)**

A.   Introduction...................................................................................1

B.   Enzo's Motion is Timely and Based on New Intrinsic Evidence.........................1

C.   Defendants Fail to Present Adequate Reasons to Disregard the PTO Determination...4

D.   Enzo is Not Collaterally Estopped from Challenging Judge Sprizzo's Construction...5

E.   The New Intrinsic Evidence Confirms the Errors in this Court's Claim Construction.8

F.   Reconsideration Would Promote Judicial Economy and Efficiency......................10

G.   Conclusion..................................................................................10

# TABLE OF AUTHORITIES

**Federal Cases**                                                                 **Page(s)**

*Afshari v. John Schaeffer Performance Archery Prods., Inc.,*
   2013 WL 4434949 (E.D. Ky. Aug. 15, 2013) .................................................7

*Alcon Research. LTD v. Apotex, Inc.,*
   687 F.3d 1362 (Fed. Cir. 2012) .................................................................9

*Am. Piledriving Equip., Inc. v. Geoquip, Inc.,*
   637 F.3d 1324 (Fed. Cir. 2011) .................................................................3

*Amgen, Inc. v. F. Hoffmann-La Roche Ltd.,*
   494 F. Supp. 2d 54 (D. Mass. 2007) .........................................................10

*Aspex Eyewear, Inc. v. Zenni Optical, Inc.,*
   713 F.3d 1377 (Fed. Cir. 2013) .................................................................5

*Badalamenti v. Dunham's, Inc.,*
   896 F.2d 1359 (Fed. Cir. 1990) .................................................................6

*Cordis Corp. v. Medtronic AVE, Inc.,*
   511 F.3d 1157 (Fed. Cir. 2008) .................................................................3

*Dey. L.P. v. Teva Parenteral Meds.,*
   958 F.Supp.2d 654 (N.D.W.Va. 2013) ......................................................7

*Digital-Vending Servs. Int'l, LLC v. Univ. of Phoenix, Inc.,*
   672 F.3d 1270 (Fed. Cir. 2012)
   ...................................................................................................................8

*Elkay Mfg. Co. v. Ebco Mfg. Co.,*
   192 F.3d 973 (Fed. Cir. 1999) ...................................................................3

*Enzo Biochem, Inc. v. Applera Corp.,*
   599 F.3d 1325 (Fed. Cir. 2010) .............................................................2,5

*Ex parte Motorola Corp., Inc.,*
   2010 WL 5127448 (B.P.A.I. December 13, 2010) .......................................4

*Geospan Corp. v. Pictometry Int'l Corp.,*
   2012 WL 5942005 (D. Minn. Nov. 28, 2012) .............................................4

*Graco Children's Prods., Inc. v. Regalo Int'l, LLC,*
   77 F.Supp.2d 660 (E.D. Pa. 1999) ............................................................7

*Innovad Inc. v. Microsoft Corp.,*
   260 F.3d 1326 (Fed. Cir. 2001) .............................................................5,6

*In re Cygnus Telecomms. Tech., LLC, Patent Litig.,*
   536 F.3d 1343 (Fed. Cir. 2008) ................................................................... 5,6

*K Steel Corp. v. Sollac & Ugine,*
   344 F.3d 1234 (Fed. Cir. 2003) ....................................................................... 9

*Key Pharms. v. Hercon Labs. Corp.,*
   161 F.3d 709 (Fed. Cir. 1998) ...................................................................... 10

*Kinetic Concepts, Inc. v. Blue Sky Med. Group, Inc.,*
   554 F.3d 1010 (Fed. Cir. 2009) ...................................................................... 8

*Kollmorgen Corp. v. Yaskawa Elec.Corp.,*
   147 F.Supp.2d 464 (W.D. Va. 2001) ............................................................ 7,8

*Laitram Corp. v. NEC Corp.,*
   62 F.3d 1388 (Fed. Cir. 1995) ....................................................................... 9

*Lectrolarm Custom Servs., Inc. v. Vicon Indus., Inc.,*
   2005 WL 2177000 (W.D. Tenn. Sept. 2, 2005) ................................................. 7

*Liebel-Flarsheim Co. v. Medrad, Inc.,*
   358 F.3d 898 (Fed. Cir. 2004) ....................................................................... 8

*Markman v. Westview Instruments,*
   52 F.3d 967 (Fed. Cir. 1995) ......................................................................... 4

*Markman v. Westview Instruments, Inc.,*
   517 U.S. 370, 391 (1996) ............................................................................ 10

*McNeil-PPC, Inc. v. Perrigo Co.,*
   2007 WL 104513 (S.D.N.Y. Jan. 17, 2007) ...................................................... 2

*Miken Composites v. Wilson Sporting Goods Co.,*
   515 F.3d 1331 (Fed. Cir. 2008) ...................................................................... 5

*Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP,*
   322 F.3d 147 (2d Cir. 2003) .......................................................................... 1

*Pass & Seymour, Inc. v. Hubbell Inc.,*
   2011 WL 32433 (N.D.N.Y. Jan. 5, 2011) ....................................................... 10

*Pressure Prods. Med. Supplies, Inc. v. Greatbatch Ltd.,*
   599 F.3d 1308 (Fed. Cir. 2010) ...................................................................... 2

*Powervip, Inc. v. Static Control Components, Inc.,*
   2011 WL 2669059 (W.D. Mich. July 6, 2011) .................................................. 7

*Proctor v. LeClaire,*
   715 F.3d 402 (Fed. Cir. 2013) ....................................................................... 7

*Realtime Data, LLC v. Morgan Stanley*, --- F. App'x ---,
    2014 WL 278757 (Fed. Cir. Jan. 7, 2014) ……………………………………………4

*RemoteMDx, Inc. v. Satellite Tracking of People, LLC*,
    2009 WL 1605292 (C.D. Cal. Apr. 29, 2009) ……………………………………..2

*Salazar v. Proctor & Gamble*,
    414 F.3d 1342 (Fed. Cir. 2005) ……………………………………………………3

*S.E.C. v. Amerindo Inv. Advisors, Inc.*,
    2014 WL 405339 (S.D.N.Y. Feb. 3, 2014) ……………………………………1,2,10

*St. Clair Intellectual Property Consultants, Inc. v. Canon, Inc.*,
    413 F.App'x 270 (Fed. Cir. 2011) …………………………………………………3

*Sys. Mgmt. Arts Inc. v. Avesta Techs., Inc.*,
    160 F. Supp. 2d 580 (S.D.N.Y. 2001) ……………………………………………2

*TDM Am., LLC v. United States*,
    100 Fed. Cl. 458 (Fed. Cl. 2011) …………………………………………………4

*TechSearch, L.L.C. v. Intel Corp.*,
    286 F.3d 1360 (Fed. Cir. 2002) ……………………………………………………7

*Tex. Instr., Inc. v. Linear Tech. Corp.*,
    182 F.Supp.2d 580 (E.D. Tex. 2002) ……………………………………………7

*Thermapure, Inc. v. RXHeat™, LLC*,
    2014 WL 1304036 (N.D. Ill. Mar. 31, 2014) ……………………………………7

*U.S. Philips Corp. v. Iwasaki Elec. Ltd.*,
    2006 WL 2792693 (S.D.N.Y. Sept. 8, 2006) ……………………………………..2

*Utah Med. Prods., Inc. v. Graphic Controls Corp.*,
    350 F.3d 1376 (Fed. Cir. 2003) ……………………………………………………2

*Vitronics Corp. v. Conceptronic, Inc.*,
    90 F.3d 1576 (Fed. Cir. 1996) ……………………………………………………1,4,9

*Wright Medical Tech. v. Osteonics Corp.*,
    122 F.3d 1440 (Fed. Cir. 1997) ……………………………………………………9

**Rules**

Fed. R. Civ. P. 54(b) ………………………………………………………..……..1

Local Civil Rule 6.3……………………………………………………………...….2

**Other**

Restatement (Second) Judgments § 29(4) & cmt. f (1982) …………………………6

M.P.E.P. § 1302.14...................................................................................3

**A.      Introduction**

The PTO's recent determination that the '767 patent claims encompass direct detection and that "A" may be the entire signaling moiety is new intrinsic evidence that *must* be considered in construing the claims at issue. The PTO's determination, made in view of relevant intrinsic evidence and, contrary to defendants' assertion, the Sprizzo and Arterton claim construction opinions, was not available to Judge Sprizzo.  In view of (i) the Court's ability to revise claim construction during any phase of trial, (ii) the fact that, under the correct Federal Circuit law standard, Enzo's settlement with less than all parties does *not* allow remaining parties to invoke collateral estoppel, (iii) the new intrinsic evidence contrary to and confirming errors in Judge Sprizzo's construction; and (iv) that reconsideration would promote judicial economy in correcting claim construction errors by avoiding additional appellate review, Enzo's motion warrants reconsideration and revision of the Court's claim construction.

**B.      Enzo's Motion is Timely and Based on New Intrinsic Evidence**

Per Enzo's Notice of Motion (PE Dkt. 238), this reconsideration request was made pursuant to Rule 54(b), Fed.R.Civ.P., which provides that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and ***may be revised at any time*** before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities" (emphasis added). *See S.E.C. v. Amerindo Inv. Advisors, Inc.*, 2014 WL 405339, at *3 (S.D.N.Y. Feb. 3, 2014) (Sullivan, J.). "The availability of new evidence" is a "major ground[]" justifying reconsideration, *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003), and the PTO's Final Determination undeniably qualifies not only as new evidence, but as new "intrinsic" evidence which must be considered in construing patent claims. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). Defendants do not dispute that the instant motion is "premised on evidence that was not available at the time" this Court's *Markman* and summary judgment rulings were made because the PTO did not issue its Final Determination as to the

meaning and scope of the '767 patent claims until years later. Thus, the time limits of Local Rule 6.3 do not apply. *Sys. Mgmt. Arts Inc. v. Avesta Techs., Inc.*, 160 F. Supp. 2d 580, 583 (S.D.N.Y. 2001).

Defendants repeatedly misstate the legal and evidentiary basis for Enzo's claim construction reconsideration request. Indeed, as to the propriety of revising a claim construction over the course of litigation, while the *McNeil-PPC, Inc. v. Perrigo Co.*, 2007 WL 104513, at *2 (S.D.N.Y. Jan. 17, 2007) decision cited by defendants states that "rolling claim construction is most often applied" following preliminary injunction proceedings, the ability of courts to revise claim constructions is not limited "only" to those circumstances (*see* PE Dkt. 247 at 8.)[1]

Defendants miscast the new evidence upon which Enzo bases its reconsideration request. Enzo's request is based solely on new and highly relevant intrinsic evidence -- the PTO's recent conclusion as to the meaning and scope of the '767 patent claims as encompassing, *inter alia*, direct detection, including the PTO's Reasons for Allowance of those claims over the prior art relied on by the defendants (the "PTO's Final Determination") (See PE Dkt. 240-1.)[2]

Defendants' efforts to disparage Enzo's request to reconsider claim construction and infringement in view of recent reexamination proceedings is not well taken, particularly in view of the fact that defendant

---

[1] Courts have revisited claim construction rulings in numerous cases, and are "not locked into a position merely because it had conducted a *Markman* hearing and had ruled." *U.S. Philips Corp. v. Iwasaki Elec. Ltd.*, 2006 WL 2792693, at *8 (S.D.N.Y. Sept. 8, 2006); s*ee also Pressure Prods. Med. Supplies, Inc. v. Greatbatch Ltd.*, 599 F.3d 1308, 1315-16 (Fed. Cir. 2010) (new claim construction introduced during trial); *Utah Med. Prods., Inc. v. Graphic Controls Corp.*, 350 F.3d 1376, 1381-82 (Fed. Cir. 2003) (amending claim construction during oral argument for pretrial motions nearly two years after original construction); *RemoteMDx, Inc. v. Satellite Tracking of People, LLC*, 2009 WL 1605292, at *1 (C.D. Cal. Apr. 29, 2009) (vacating previous claim construction order and "concluding that a different construction is appropriate").

[2] Enzo does <u>not</u> ask for reconsideration in view of Judge Arterton's claim construction or its application by the Federal Circuit. Enzo supplied the Court with those decisions as background to the Court's determination of whether "there exists a strong likelihood that the district court's decision would ultimately be reversed on appeal." *Amerindo*, 2014 WL 405339, at *3. Enzo's view is unchanged that the Federal Circuit did "follow" and "confirm" Judge Arterton's construction, and did more than merely "summarize Judge Arterton's construction of the 'A' limitation of the '767 patent" as Defendants argue (PE Dkt. 47 at 4.). The Federal Circuit went on to apply the construction in explicit holdings regarding alleged anticipation of the '767 patent by prior art references disclosing direct detection that would "entitle Applera to judgment as a matter of law", which would be impossible if "A" were limited to indirect detection. *Applera*, 599 F.3d at 1337.

MPI sought, and was granted, reconsideration of this Court's prior rulings and partial summary judgment based on claim construction issues stemming from other recent reexamination proceedings with respect to U.S. Patent No. 5,241,060 ("the '060 patent"). (*See* MPI Dkt. 116; Dkt. 140 at 8-11.) Thus, defendants cannot genuinely dispute the fact that the '767 reexamination proceedings, and the PTO's conclusions themselves, are <u>new</u> <u>intrinsic</u> evidence which "inform[s] the proper construction of the term." *Am. Piledriving Equip., Inc. v. Geoquip, Inc.*, 637 F.3d 1324, 1336 (Fed. Cir. 2011) (holding that patentee's statements during reexamination "inform the proper construction of the term"); *Cordis Corp. v. Medtronic AVE, Inc.*, 511 F.3d 1157, 1177 (Fed. Cir. 2008) (statements during reexamination "served the purpose of 'inform[ing] the meaning of the claim language by demonstrating how the inventor understood the invention") (quoting *Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005) (en banc)). This is especially true where, as here, the relevant position is confirmed in an examiner's Reasons for Allowance. *See, e.g., Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973, 979 (Fed. Cir. 1999) (prosecution statements given significant weight in view of "Reasons for Allowance"); *Salazar v. Proctor & Gamble*, 414 F.3d 1342, 1346-47 (Fed. Cir. 2005) (examiner's statements during prosecution "may be evidence of how one of skill in the art understood the claim term at the time the application was filed."). The purpose of Reasons for Allowance is to "facilitate[] evaluation of the scope and strength of a patent by the patentee and the public and [to] help avoid or simplify litigation of a patent." *M.P.E.P. § 1302.14*. Moreover, when Reasons for Allowance go to issues of claim construction, as here, PTO practices call for heightened "care" by the examiner which "must be taken to ensure that such reasons are accurate, precise, and do not place unwarranted interpretations, whether broad or narrow, upon the claims." *Id.* That is why, contrary to what defendants argue to this Court (*see* Dkt. 247 at 12), an examiner's views during reexamination are more than merely "relevant" but "carr[y] ***significant weight***." *St. Clair Intellectual Property Consultants, Inc. v. Canon, Inc.*, 413 F.App'x 270, 276 (Fed. Cir. 2011) (emphasis added).[3]   Enzo submits that if reconsideration was appropriate with respect the '060

---

[3] The cases cited by Defendants as purportedly "rejecting claim construction positions adopted by the Patent Office during reexamination" (dkt. 247 at 11 & n.6) are readily distinguishable. Notably, those cases involve

reexamination, then it is also warranted in view of the '767 reexamination.[4]

### C.       Defendants Fail to Present Adequate Reasons to Disregard the PTO Determination

Defendants do not dispute that the PTO's Final Determination as to the meaning and scope of the

'767 patent claims is part of the intrinsic record, that it is directly contrary to Judge Sprizzo's construction, or

that this new intrinsic evidence of the PTO's conclusion was never considered by Judge Sprizzo in arriving at

his construction. Instead, they try to confuse, gloss over and distract from these actual bases for the request.

First, defendants argue that "Enzo has not pointed to any evidence submitted to the Patent Office that

was not also submitted to this Court" (dkt. 247 at 12). But, defendants know full well that the PTO's Final

Determination is itself part of the prosecution history, and thus constitutes new "intrinsic evidence."

*Vitronics*, 90 at 1582; *Realtime Data, LLC v. Morgan Stanley*, --- F. App'x ---, 2014 WL 278757, at *6 (Fed.

Cir. Jan. 7, 2014) (considering statements made during reexamination as intrinsic evidence for purposes of

claim construction).

For this reason, defendants' other argument that Enzo "withheld from the Patent Office all of the

relevant claim construction evidence and testimony that was developed in this case" (PE Dkt. 247 at 13) is

also misleading. The fact is that the PTO, unlike Judge Sprizzo, had <u>all</u> of the relevant intrinsic evidence

---

reexamination proceedings where the patent was still in force and, thus employed a different claim construction standard ("broadest reasonable construction") than that used in reexaminations like the one at-bar where the '767 patent had already expired (i.e., the same standard employed by district courts). *See, e.g., Geospan Corp. v. Pictometry Int'l Corp.*, 2012 WL 5942005, at *5 (D. Minn. Nov. 28, 2012); *TDM Am., LLC v. United States*, 100 Fed. Cl. 458, 492 (Fed. Cl. 2011); *Ex parte Motorola Corp., Inc.*, 2010 WL 5127448, at *2 (B.P.A.I. December 13, 2010); MPEP § 2258(I)(G) ("In a reexamination proceeding involving claims of an expired patent, claim construction [under the *Phillips* standard for litigation] should be applied since the expired claims are not subject to amendment.")

[4] Defendants complain that the reexamination of the '767 patent was not the product of an adversarial proceeding (PE Dkt. 247 at 11), but none of the intrinsic record considered by a court during claim construction (language of the claims, patent specification, prosecution history) is the product of an adversarial proceeding. *Markman v. Westview Instruments*, 52 F.3d 967, 980 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996). However, we note that in its reexamination request filings, Life Technologies—the privy of both Applera and MPI—attempted to "spin" the competing constructions to its benefit, "playing up" Judge Sprizzo's construction by copious citations to the specification, while "playing down" Judge Arterton's construction by casting it as having "relied upon statements from a consultant hired by the patentee for litigation,"and maintaining that the '767 claims are limited to indirectly detected compounds" (Ex. 1 at 11-12.)

4

before it when reaching a conclusion as to the meaning and scope of the '767 claims.  There is no dispute that the PTO had <u>both</u> Judge Sprizzo's and Judge Arterton's claim construction opinions as well; and, in view of those orders and a complete intrinsic record the PTO concluded that Judge Sprizzo's construction was wrong.

Finally, even though it does not form the basis of the instant reconsideration request (*see supra* n. 2), defendants make much of Enzo's statement that the Federal Circuit was "not … presented with a dispute over construction of the 'A' limitation in the prior appeal."  (PE Dkt. 247 at 1, 3, 13.)  But, the law is clear that a ***dispute*** over claim construction does not have to be presented and ruled on by the Federal Circuit in order for there to be *stare decisis* effect. The only requirement is that the claim construction at issue be "a ***necessary predicate*** to the determination of a prior litigation before this court." *See Miken Composites v. Wilson Sporting Goods Co.*, 515 F.3d 1331, 1338 n.* (Fed. Cir. 2008) (emphasis added).  Claim construction was a "necessary predicate" to the Federal Circuit's validity determination, including that Applera would have been "entitled to judgment as a matter of law" absent countervailing evidence from Enzo.  *Enzo Biochem, Inc. v. Applera Corp.*, 599 F.3d 1325, 1337 (Fed. Cir. 2010).  Thus, Enzo continues to submit that the Federal Circuit's holding is binding as a matter of *stare decisis*.

### D.      Enzo Is Not Collaterally Estopped from Challenging Judge Sprizzo's Construction

In what is essentially a new improper cross-motion for summary judgment, defendants seek to prevent a ruling on the motion for reconsideration by invoking collateral estoppel and asserting that Enzo's voluntary dismissal in two of the actions jointly before the Court for the *Markman* hearing bars Enzo from seeking reconsideration of the claim construction ruling in the remaining jointly heard cases.  Opp. Br. at 14-16.  While defendants correctly depict the governing collateral-estoppel standard in the Second Circuit, they completely ignore governing Federal Circuit law, under which settling with less than all parties in a multi-party case does not allow the remaining parties to invoke collateral estoppel. *In re Cygnus Telecomms. Tech., LLC, Patent Litig.*, 536 F.3d 1343, 1349-50 (Fed. Cir. 2008); *Innovad Inc. v. Microsoft Corp.*, 260 F.3d 1326, 1334-35 (Fed. Cir. 2001); *see also Aspex Eyewear, Inc. v. Zenni Optical, Inc.*, 713 F.3d 1377, 1380 (Fed. Cir. 2013) (since uniform treatment of a given patent claim is an issue having "special or unique application to

patent cases, Federal Circuit [rather than Second Circuit] precedent is applicable.") "[F]or excellent policy reasons, the doctrine of issue preclusion does not require [plaintiff] to include all parties involved below in its appeal, which would preclude the opportunity of settlement with any party before appeal." *Innovad*, 260 F.3d at 1334. The Federal Circuit has rejected the argument that, "if a court enters a judgment of patent invalidity against a patentee in a multi-defendant action, and the patentee appeals that judgment against fewer than all of the defendants, the appellees can invoke collateral estoppel based on the final judgment in favor of the defendant as to whom the patentee did not appeal." *Cygnus*, 536 F.3d at 1349. As the Court held in that case:

> [I]t would not serve the underlying purposes of the collateral estoppel doctrine, which are to give a party one full and fair opportunity to litigate a particular issue, while preventing needless relitigation of that issue. In a case such as this one, the plaintiff is not seeking to obtain a second bite at the apple on an issue decided against it in a previous case; rather, the plaintiff is seeking review of an adverse decision in the first and only case in which the issue has been presented. The fact that the plaintiff has elected not to pursue its appellate rights against all of the defendants should be no basis for holding that it may not pursue those rights against any of them. Accordingly, we decline to apply collateral estoppel against Cygnus.

536 F.3d at 1350. Thus, there is no conceivable basis for invoking collateral estoppel, especially where Enzo settled and dismissed its case against only two of five defendants affected by the consolidated claim construction proceedings before this Court, and prior to entry of an appealable final judgment—and where a sister court, and the PTO, reached a contrary conclusion regarding the exact same claim term. *See* Restatement (Second) Judgments § 29(4) & cmt. f (1982) (exception to collateral estoppel where "[t]he determination relied on as preclusive was itself inconsistent with another determination of the same issue").

Despite this, Defendants argue that the Federal Circuit should be bound by a district court decision that, by its own admission, addresses an issue of first impression. *TM Patents, L.P. v. Int'l Bus. Mach. Corp.*, 72 F. Supp. 2d 370, 376 (S.D.N.Y. 1999) ("[t]he parties have not called my attention to any case in which a court has applied collateral estoppel to bar relitigation of claims construction issues decided at a prior *Markman* hearing, and I have not located any such decisions"); *Badalamenti v. Dunham's, Inc.*, 896 F.2d 1359, 1362 (Fed. Cir. 1990) ("[I]f the regional circuit court has not spoken, we must predict how that court would decide the issue in light of such criteria as the decisions of that circuit's district courts, other circuits'

decisions, and public policy."); *accord TechSearch, L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1378 (Fed. Cir. 2002) ("[w]here the regional circuit has not directly addressed an issue, we must reasonably predict how that court would decide the issue") (internal quotations omitted);

In doing so, defendants neglect to inform this Court that *TM Patents* is a true outlier, and that the weight of authority is to the contrary. Indeed, most courts that have addressed the issue have declined to apply collateral estoppel to interlocutory *Markman* rulings. *E.g., Thermapure, Inc. v. RXHeat™, LLC*, 2014 WL 1304036, *10 (N.D. Ill. Mar. 31, 2014); *Afshari v. John Schaeffer Performance Archery Prods., Inc.*, 2013 WL 4434949, *5 (E.D. Ky. Aug. 15, 2013); *Dey. L.P. v. Teva Parenteral Meds.*, 958 F.Supp.2d 654, 672 (N.D.W.Va. 2013); *Powervip, Inc. v. Static Control Components, Inc.*, 2011 WL 2669059, *6 (W.D. Mich. July 6, 2011); *Tex. Instr., Inc. v. Linear Tech. Corp.*, 182 F.Supp.2d 580, 589 (E.D. Tex. 2002). In the absence of controlling regional circuit precedent, the Court should follow the great weight of district court authority.

Even if a *Markman* order could suffice to invoke collateral estoppel when a case is concluded by a final judgment that, in the words of the governing Second Circuit standard, "the resolution of the issue was necessary to support a valid and final judgment on the merits," *Proctor v, LeClaire,* 715 F.3d 402, 414 (Fed. Cir. 2013), that should not be the case where, as here, the parties settled the case short of an appealable final judgment and the Federal Circuit never reviewed the *Markman* ruling. *Kollmorgen Corp. v. Yaskawa Elec.Corp.*, 147 F.Supp.2d 464, 469 (W.D. Va. 2001); *accord Graco Children's Prods., Inc. v. Regalo Int'l, LLC*, 77 F.Supp.2d 660, 663-65 (E.D. Pa. 1999); *Lectrolarm Custom Servs., Inc. v. Vicon Indus., Inc.*, 2005 WL 2177000, *3 (W.D. Tenn. Sept. 2, 2005). The rationale for this rule is clear and compelling:

> Under clear Federal Circuit guidance, this Court may only apply collateral estoppel if it finds that [the prior] interpretation … was essential to a final judgment on the question of the patents' infringement. The Federal Circuit has further advised that a Court may also look "'to the facts of the particular case in deciding whether justice, expediency, and the public interest are served by collateral estoppel.'" *Masco Corp. v. Mas–Hamilton Group*, 49 Fed.Cl. 337, 343–44 (2001)(*quoting Comair Rotron, Inc. v. Nippon Densan Corp.*, 49 F.3d 1535, 1538 (Fed.Cir.1995)); *see also Abbott Laboratories v. Dey, L.P.*, 110 F.Supp.2d 667, 670 (N.D.Ill.2000) (noting that even when the conditions for collateral estoppel are met, the court may still decline to apply issue preclusion).

* * * *

Courts need not blindly apply the doctrine of collateral estoppel to a prior *Markman* ruling that construes a patent's scope and claim. The Federal Circuit's review of a lower court's ruling is crucial to providing the public with a uniform and proper patent claim construction. *See Markman*, 517 U.S. at 390, 116 S.Ct. 1384. Based upon the policy concerns in *Markman* and the applicable precedent, this Court holds that [the prior] *Markman* ruling was not essential to a determination of patent infringement.

*Kollmorgen*, 147 F.Supp.2d at 469-70.

### E.      The New Intrinsic Evidence Confirms the Errors in this Court's Claim Construction

Defendants do not deny that the PTO's conclusions as to the proper meaning and scope of the '767 patent claims are directly contrary to Judge Sprizzo's claim construction. By itself, the new intrinsic evidence confirms at least these legal errors in Judge Sprizzo's *Markman* ruling:

*First*, the PTO's conclusions fully comport with the actual language of the claim calling for "***at least one***" component of a signaling moiety to mean that "A" can be one (or the sole) component, or more than one of the components, as opposed to being "a ***multi-component*** signaling moiety" (PE Dkt. 20 at 9). This further confirms that Judge Sprizzo's construction violates the "well-established rule" that "claims are interpreted with an eye toward giving effect to all terms in the claim," and are to be construed "in light of the surrounding claim language, such that words in a claim," like *at least one*, "are not rendered superfluous." *See Digital-Vending Servs. Int'l, LLC v. Univ. of Phoenix, Inc.*, 672 F.3d 1270, 1275 (Fed. Cir. 2012).

*Second*, the PTO explicitly found that the "A" limitation of the claims of the '767 patent encompasses direct detection. This conclusion is directly at-odds with Judge Sprizzo's ruling that the same claim language is limited to only indirect detection. By this, Judge Sprizzo improperly imported a limitation of indirect detection from the specification into the claims, where nothing in the patent requires it. *See Phillips*, 415 F.3d at 1323; *Kinetic Concepts, Inc. v. Blue Sky Med. Group, Inc.*, 554 F.3d 1010, 1027 (Fed. Cir. 2009); *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004) ("Even when the specification describes only a single embodiment, the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction.") The PTO's reliance on the actual language of the patent claims in determining that they

explicitly encompass direct detection – a fact which defendants do not deny – versus Judge Sprizzo's conflicting "extrinsic" testimony of experts concerning whether any examples are consistent with direct detection (PE Dkt. 247 at 19-20) warrant reconsideration by the Court. *See Vitronics*, 90 F.3d at 1584 (extrinsic expert testimony "may not be used to vary or contradict the claim language").

*Third*, the PTO's Final Determination that the actual language of dependent claims of the '767 (or '824) patent encompasses direct detection further bolsters the "presumption" that these dependent claims are "of narrower scope than the independent claims from which they depend." *AK Steel Corp. v. Sollac & Ugine*, 344 F.3d 1234, 1242 (Fed. Cir. 2003). That means that if the dependent claims encompass direct detection, as the PTO found, then the independent claims must encompass direct detection and more. *See Alcon Research, LTD v. Apotex, Inc.,* 687 F.3d 1362, 1367 (Fed. Cir. 2012) ("Therefore if claim 2 covers the range from 0.0001% w/v-5% w/v, claim 1 must cover at least that range."); *Wright Medical Tech. v. Osteonics Corp.*, 122 F.3d 1440, 1445 (Fed. Cir. 1997) ("[W]e must not interpret an independent claim in a way that is inconsistent with a claim which depends from it."); *Laitram Corp. v. NEC Corp.,* 62 F.3d 1388, 1392-93 (Fed. Cir. 1995) (noting that an embodiment specified by a dependent claim is within the scope of the claim from which it depends).  Under Judge Sprizzo's construction, however, the dependent claims fall ***wholly outside*** the scope of the independent claims. Judge Sprizzo's *Markman* order never references, let alone analyzes or explains away, the actual language of the '767 claims, Enzo's arguments concerning them, or how his construction fails to comply with the Patent Act. The PTO conclusions confirm this legal error as violative of the statutory requirement that a dependent claim "shall be construed to incorporate by reference all the limitations of the claim to which it refers." 35 U.S.C. § 112(d).

To be clear, Enzo submits that the PTO Determination constitutes new evidence that warrants reconsideration and revision of Judge Sprizzo's claim construction, independent of the errors in Judge Sprizzo's construction and analysis of the '767 patent.  But these errors, along with the *Applera* decisions at the Federal Circuit and in the District of Connecticut, further reinforce the "strong

likelihood that [Judge Sprizzo's] decision would ultimately be reversed on appeal." *Amerindo*, 2014 WL 405339, at *3.  For these reasons, Enzo's motion should be granted.

### F.   Reconsideration Would Promote Judicial Economy and Efficiency

Simply put, the additional expert and damages discovery (PE Dkt. 247 at 22-23) that defendants point to would have to be done if Judge Sprizzo's construction is reversed on appeal, and pales in comparison to the significant inefficiencies and burdens on this Court of having to conduct two separate full-blown trials should there be a reversal.[5]  Where reversal is likely, as here, "reconsideration saves the parties' (and the Circuit's) time by avoiding a second, unnecessary battle in the Court of Appeals." *Amerindo*, 2014 WL 405339, at *3. Thus, Defendants' purported concerns of "judicial economy" are unfounded and should not deter this Court from granting Enzo's motion.[6]

### CONCLUSION

For the foregoing reasons, Enzo respectfully requests that the Court grant its motion for reconsideration of Judge Sprizzo's construction of the '767 patent claims in view of the new intrinsic evidence of the PTO's final determination as to the proper meaning and scope of those claims.

---

[5] Enzo's conditional stipulated dismissal of its patent claims and defenses with PE (PE Dkt. 185) clearly reserves the right to reassert those claims upon reversal.  Since grant of Enzo's motion would effectively put the parties in the same position as if an appeal and reversal had occurred, there would be nothing "extraordinary" about permitting Enzo to reassert those claims. Likewise, putting aside Roche's attempt to unduly narrow the issues remaining in the case, both Roche and PE neglect to mention that reconsideration and reversal would resolve their primary defense to Enzo's breach of contract claims, i.e., that Products subject to the Court's non-infringement ruling cannot be covered by the Agreement despite being listed.

[6] Defendants are wrong in arguing that the Federal Circuit's reaffirmation and confirmation of Judge Arterton's construction would not impact its ability to argue for a different construction in a later appeal. The Federal Circuit's ruling would be *stare decisis* for all purposes and as against all future appellants regardless of whether they were party to the *Applera* litigation.  *See, e.g., Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 391 (1996); *Key Pharms. v. Hercon Labs. Corp.*, 161 F.3d 709, 716 (Fed. Cir. 1998); *Amgen, Inc. v. F. Hoffmann-La Roche Ltd.*, 494 F. Supp. 2d 54, 60-61 (D. Mass. 2007); *Pass & Seymour, Inc. v. Hubbell Inc.*, 2011 WL 32433, at *2 (N.D.N.Y. Jan. 5, 2011).

Dated:  May 5, 2014

/s/Anna D. DiGabriele
Enzo Biochem, Inc.
527 Madison Avenue
New York, NY 10022
(212) 583-0100

*Attorney for Plaintiffs*